

Search for Cases by: Select Search Method... ▼

**Judicial Links**   |   **eFiling**   |   **Help**   |   **Contact Us**   |   **Print**          GrantedPublicAccess  **Logoff CHRISLAROSE**

### 2011-CC01079 - GUNAPT DEVELOPMENT LLC V PEINE LAKES LP ET AL (E-CASE)

| Case Header | Parties & Attorneys | Docket Entries | Charges, Judgments & Sentences | Service Information | Filings Due | Scheduled Hearings & Trials | Civil Judgments | Garnishments/Execution |

**Click here to eFile on Case**
Click here to Respond to Selected Documents

Sort Date Entries:  ● Descending  ○ Ascending

Display Options: All Entries ▼

---

**12/08/2020**  ☐ **Corporation Served**

Document ID - 20-SMOS-207; Served To - CENTERLINE AFFORDABLE HOUSING ADVISORS LLC; Server - ; Served Date - 20-NOV-20; Served Time - 10:17:00; Service Type - Sheriff Department; Reason Description - Served; Service Text - SERVED TO AMY MCLAREN

☐ **Notice of Service**

Affidavit of Service re Defendant Centerline Affordable Housing Advisors LLC; Electronic Filing Certificate of Service.
  **Filed By:** JOHN JOSEPH GAZZOLI JR
  **On Behalf Of:** GUNAPT DEVELOPMENT, L.L.C.

☐ **Corporation Served**

Document ID - 20-SMOS-206; Served To - CENTERLINE CORPORATE PARTNERS XXVII LP; Server - ; Served Date - 20-NOV-20; Served Time - 10:17:00; Service Type - Sheriff Department; Reason Description - Served; Service Text - SERVED TO AMY MCLAREN.

☐ **Notice of Service**

Affidavit of Service re Defendant Centerline Corporate Partners XXVII LP; Electronic Filing Certificate of Service.
  **Filed By:** JOHN JOSEPH GAZZOLI JR
  **On Behalf Of:** GUNAPT DEVELOPMENT, L.L.C.

☐ **Corporation Served**

Document ID - 20-SMOS-208; Served To - RELATED CORPORATE XXVI SLP, LLC; Server - ; Served Date - 20-NOV-20; Served Time - 10:17:00; Service Type - Sheriff Department; Reason Description - Served; Service Text - SERVED TO AMY MCLANEN.

☐ **Notice of Service**

Affidavit of Service re Defendant Related Corporate XXVI SLP, LLC; Electronic Filing Certificate of Service.
  **Filed By:** JOHN JOSEPH GAZZOLI JR
  **On Behalf Of:** GUNAPT DEVELOPMENT, L.L.C.

**11/17/2020**  ☐ **Agent Served**

Document ID - 20-SMCC-2056; Served To - 2010 PEINE ROAD LLC; Server - JACK EISEN, SPECIAL PROCESS SERVER; Served Date - 16-NOV-20; Served Time - 11:00:00; Service Type - Special Process Server; Reason Description - Served; Service Text - SERVED AMANDA BRANDON, CT CORP AGENT.

☐ **Agent Served**

Document ID - 20-SMCC-2055; Served To - PEINE LAKES, L.P.; Server - JACK EISEN, SPECIAL PROCESS SERVER; Served Date - 16-NOV-20; Served Time - 11:00:00; Service Type - Special Process Server; Reason Description - Served; Service Text - SERVED AMANDA BRANDON, CT CORP AGENT.

**Notice of Service**

Return of Service of Summons upon Amanda Brandon CT Corp Agent for 2010 Peine Road LLC; Electronic Filing Certificate of Service.
    **Filed By:** JOHN JOSEPH GAZZOLI JR
    **On Behalf Of:** GUNAPT DEVELOPMENT, L.L.C.

**Notice of Service**
Return of Service of Summons upon Amanda Brandon CT Corp Agent for Peine Lakes LP; Electronic Filing Certificate of Service.
    **Filed By:** JOHN JOSEPH GAZZOLI JR
    **On Behalf Of:** GUNAPT DEVELOPMENT, L.L.C.

**11/13/2020**    **Order - Special Process Server**
    **Associated Entries: 11/12/2020 - Motion Special Process Server**

**Summons Issued-Circuit**
Document ID: 20-SMOS-208, for RELATED CORPORATE XXVI SLP, LLC. ALL OUT-OF-STATE SUMMONS SAVED AND ATTACHED IN PDF FORM FOR ATTORNEY TO RETRIEVE FROM SECURE CASE.NET. AMS

**Summons Issued-Circuit**
Document ID: 20-SMOS-207, for CENTERLINE AFFORDABLE HOUSING ADVISORS LLC.

**Summons Issued-Circuit**
Document ID: 20-SMOS-206, for CENTERLINE CORPORATE PARTNERS XXVII LP.

**Summons Issued-Circuit**
Document ID: 20-SMCC-2056, for 2010 PEINE ROAD LLC. ALL MISSOURI SUMMONS SAVED AND ATTACHED IN PDF FORM FOR ATTORNEY TO RETRIEVE FROM SECURE CASE.NET.

**Summons Issued-Circuit**
Document ID: 20-SMCC-2055, for PEINE LAKES, L.P..

**11/12/2020**    **Filing Info Sheet eFiling**
    **Filed By:** JOHN JOSEPH GAZZOLI JR

**Note to Clerk eFiling**
    **Filed By:** JOHN JOSEPH GAZZOLI JR

**Motion Special Process Server**
Request for Appointment of Special Process Server.
    **Filed By:** JOHN JOSEPH GAZZOLI JR
    **Associated Entries: 11/13/2020 - Order - Special Process Server**

**Pet Filed in Circuit Ct**
Petition; Exhibit 1; Exhibit 2; Exhibit 3; Exhibit 4.
    **On Behalf Of:** GUNAPT DEVELOPMENT, L.L.C.

**Judge Assigned**

Case.net Version 5.14.12        Return to Top of Page        Released 11/10/2020

**2011-CC01079**

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

**IN THE CIRCUIT COURT FOR THE ELEVENTH JUDICIAL CIRCUIT
ST. CHARLES COUNTY, MISSOURI**

GUNAPT DEVELOPMENT, L.L.C.,                    )
                                               )
              Plaintiff,                    )
                                               )
v.                                             )
                                               )   Case No._____
PEINE LAKES, L.P.,                             )
                                               )
**Serve: CT Corporation System**              )   Division _____
       **120 S. Central**                   )
       **Clayton, MO 63105**                )
                                               )
       and                                  )
                                               )
2010 PEINE ROAD LLC,                           )
                                               )
**Serve: CT Corporation System**              )
       **120 S. Central**                   )
       **Clayton, MO 63105**                )
                                               )
       and                                  )
                                               )
CENTERLINE CORPORATE PARTNERS                  )
XXVII LP,                                      )
                                               )
**Serve: The Corporation Trust Company**      )
       **Corporation Trust Center**         )
       **1209 Orange Street**               )
       **Wilmington, DE 19801**             )
                                               )
       and                                  )
                                               )
CENTERLINE AFFORDABLE HOUSING                  )
ADVISORS LLC,                                  )
                                               )
**Serve: The Corporation Trust Company**      )
       **Corporation Trust Center**         )
       **1209 Orange Street**               )
       **Wilmington, DE 19801**             )
                                               )
       and                                  )
                                               )
RELATED CORPORATE XXVI SLP, LLC,               )

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

|                                                    |     |
| -------------------------------------------------- | --- |
|                                                    | )   |
| **Serve: The Corporation Trust Company**           | )   |
| **Corporation Trust Center**                       | )   |
| **1209 Orange Street**                             | )   |
| **Wilmington, DE 19801**                           | )   |
|                                                    | )   |
| Defendants.                                         | )   |

## PETITION

Plaintiff Gunapt Development, LLC, by its attorneys, for its claims for relief against Defendants Peine Lakes, L.P., Peine Road, LLC, Centerline Corporate Partners XXVII, LP, Centerline Affordable Housing Advisors, LLC, and Related Corporate XXVI SLP LLC (collectively, "Defendants"), avers and states as follows:

1.      Plaintiff Gunapt Development, LLC. ("Gunapt" or "Plaintiff") is a Missouri limited liability company with its office located in St. Louis County, Missouri.

2.      Defendant Peine Lakes, L.P. ("Peine Lakes") is a Missouri limited partnership and was, at all relevant times prior to October 2018, the owner of a residential project located in St. Charles County, Missouri commonly known as the Estates at Peine Lake (the "Project").

3.      Defendant 2010 Peine Road LLC ("2010 Peine"), is, upon information and belief, a Delaware limited liability corporation and served at all relevant times as the General Partner of Peine Lakes.

4.      Defendant Centerline Corporate Partners XXVII LP ("Centerline Corporate") is, upon information and belief, a Delaware limited partnership and was, at all relevant times, a limited partner of Peine Lakes.

5.      Defendant Centerline Affordable Housing Advisors LLC ("Centerline Affordable") is, upon information and belief, a Delaware limited liability company and was, at all relevant times, an affiliate of Centerline Corporate.

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

6.      Defendant Related Corporate XXVI SLP LLC ("Related") is, upon information and belief, a Delaware limited partnership and was, at all relevant times, Special Limited Partner of Peine Lakes.

7.      Defendants are all affiliated and/or related entities.

8.      This court has jurisdiction over Defendants in that they transacted business within Missouri, made contracts within Missouri and owned and/or used real estate situated in Missouri.

9.      Venue is proper in this Court in that Gunapt was first injured in St. Charles County, Missouri.

10.     Effective January 13, 2006, Gunapt was named Developer of the Project pursuant to a Second Amended and Restated Agreement of Limited Partnership of Peine Lakes, L.P.  A true and correct copy of the Second Amended and Restated Agreement of Limited Partnership is attached hereto and incorporated herein by reference as Exhibit 1.

11.     Effective January 13, 2006, Gunapt and Peine Lakes entered into an Amended and Restated Development Agreement for the Project.  A true and correct copy of the Amended and Restated Development Agreement is attached hereto and incorporated herein by reference as Exhibit 2.  Upon the performance of certain obligations under this agreement, Gunapt was entitled to certain development fees.

12.     Effective September 22, 2010, 2010 Peine became General Partner of Peine Lakes pursuant to an Amendment to the Second Amended and Restated Agreement of Limited Partnership of Peine Lakes, L.P.  A true and correct copy of the Amendment to Second Amended and Restated Agreement of Limited Partnership is attached hereto and incorporated herein by reference as Exhibit 3.

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

13.     Gunapt performed all of its obligations as Developer of the Project and is entitled to payment of the Development Fee and accrued interest thereon.

14.     As detailed below, Defendants intended to and did in fact sell the Project after Gunapt became entitled to the Development Fee and accrued interest thereon and embarked on a course of conduct designed to prevent payment of the Development Fee and accrued interest to Gunapt and instead to distribute the funds so that Defendants would benefit financially.

15.     Peine Lakes' audited financial statements for the period January 1, 2018 to October 17, 2018 indicate that the amount of the Developer (sic) Fee owed to Gunapt as of December 31, 2017 was $2,547,209.00, plus $1,940,550.00 in accrued unpaid interest.

16.     According to the audited financial statements, the Project held unrestricted cash of $418,814 as of December 31, 2016 and $542,863 as of December 31, 2017.

17.     In anticipation of the future sale of the Project, Peine Lakes and 2010 Peine failed and refused to use the unrestricted cash to pay down their affiliates' limited partner and general partner advances and the Development Fee or its accrued interest in 2016 and 2017, as required by Section 9.2A of Exhibit 1.  By doing so, Peine Lakes and 2010 Peine intended to and did in fact keep the affiliates' advances at high levels sufficient to prevent Gunapt from receiving its Development Fee and accrued interest at the time of sale of the Project pursuant to Section 9.2B of Exhibit 1.

18.     On March 23, 2018, Defendants, through their affiliates Centerline Corporate and Related, served notice purporting to require Gunapt to forfeit its rights to the Development Fee and accrued interest.  A true and correct copy of the March 23, 2018 notice is attached hereto and incorporated herein by reference as Exhibit 4.  The March 23, 2018 notice was not authorized factually or as a matter of law.  At the time of the March 23, 2018 notice, Peine Lakes had reached

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

an agreement in principle to sell the Project for an amount anticipated to exceed $19,000,000, and the notice was issued in bad faith so that Defendants could strip from Gunapt the Development Fee and accrued interest it had earned and instead distribute the fee among Defendants.

19.      In October 2018, the Project was sold to an affiliate of Defendants for a price of $19,360,000.00.  At the time of the sale, in addition to the proceeds from the sale, Peine Lakes had $739,099.00 in unrestricted cash on hand.  As General Partner of Peine Lakes, 2010 Peine was obligated to distribute the sale proceeds and cash on hand pursuant to Section 9.2B of Exhibit 1, including distribution of the Development Fee and accrued interest thereon, to Gunapt.

## <u>COUNT I</u>
### (Breach of Contract)
### (Plaintiff vs. Peine Lakes and 2010 Peine)

20.      Gunapt restates and incorporates herein by reference the averments contained in Paragraphs 1 through 19 above as if fully set forth herein.

21.      Exhibits 1 and 2 constitute valid and binding contracts.

22.      Peine Lakes has refused and continues to refuse to pay the Development Fee and accrued interest to Gunapt as required by Exhibits 1 and 2.

23.      As General Partner of Peine Lakes, 2010 Peine has refused and continues to refuse to pay the Development Fee and accrued interest to Gunapt as required by Exhibits 1 and 2.

24.      The refusal of Peine Lakes and 2010 Peine to pay the Development Fee and accrued interest to Gunapt constitutes a material breach of Exhibits 1 and 2 by Peine Lakes and 2010 Peine.

25.      Gunapt has performed its obligations under Exhibits 1 and 2 and has performed all conditions precedent to Peine Lakes and 2010 Peine's performance under Exhibits 1 and 2.

26.      As a direct and proximate result of the actions of Peine Lakes and 2010 Peine, Gunapt has been damaged in an amount to be proven at trial and presently believed to be in excess

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

of $4,500,000, in that Gunapt has been deprived of payment of the Development Fee and accrued interest to which Gunapt is entitled under Exhibits 1 and 2.

WHEREFORE, Gunapt prays for the entry of judgment in its favor against Peine Lakes and 2010 Peine, jointly and severally, in an amount to be proven at trial and presently believed to be in excess of $4,500,000, for pre-judgment interest, for its attorneys fees and costs incurred herein, and for such other and further relief as the Court deems proper.

### COUNT II
**(Action for an Accounting)**
**(Plaintiff vs. All Defendants)**

27.     Gunapt restates and incorporates herein by reference the averments in Paragraphs 1 through 26 above as if fully set forth herein.

28.     Under applicable law, Gunapt has a right to an accounting with respect to the distribution of the proceeds from the sale of the Project.

29.     Gunapt has been, and is being, denied access to financial documents necessary to determine whether the sale proceeds and unrestricted cash were properly distributed pursuant to the provisions of Exhibits 1 and 2.

30.     A complete accounting of the financial condition of the Project from the date on which Gunapt became entitled to payment of the Development Fee and accrued interest thereon, including the distribution of the sale proceeds and unrestricted cash, is necessary and proper under the circumstances.

31.     Gunapt has no adequate remedy at law.

WHEREFORE, Gunapt prays that the Court enter an order directing Defendants to provide a complete accounting of the use of the Project's unrestricted cash from January 1, 2016 through the present, including a complete accounting of the distribution of the sale proceeds and

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

unrestricted cash for the Project, for an award of Gunapt's attorneys fees and costs incurred herein, and for such other and further relief as the Court deems proper.

<div align="center">

**COUNT III**
**(Unjust Enrichment)**
**(Plaintiff vs. All Defendants)**

</div>

32.     Gunapt restates and incorporates herein by reference the averments in Paragraphs 1 through 31 above as if fully set forth herein.

33.     Gunapt performed services as Developer of the Project, with an expectation and understanding that Gunapt would be paid for the services performed by Gunapt in the amount of the Development Fee and accrued interest.

34.     At Defendants' request, Plaintiff provided services to Defendants and the Project for the benefit of Defendants and the Project.

35.     Plaintiff reasonably expected to be paid for the services performed in the amount of the Development Fee and accrued interest.

36.     Defendants benefited from the services that Plaintiff performed.

37.     Defendants have unreasonably failed and refused and continue to fail and refuse to remit payment to Plaintiff for the services performed by Plaintiff.

38.     Plaintiff has not been paid for the services that Plaintiff performed for Defendants and the Project, and the reasonable value of these services is in excess of $4,500,000, the amount of the Development Fee and accrued interest thereon

39.     As a direct and proximate result of Defendants' actions, Plaintiff has been damaged in the amount of in excess of $4,500,000, plus prejudgment interest at the applicable statutory rate. Plaintiff has also been forced to expend attorneys' fees and costs in seeking to enforce its rights herein.

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

40.     Upon information and belief, Defendants distributed the Development Fee, accrued interest and unrestricted cash among themselves directly or indirectly, rather than distributing the funds to Gunapt as payment for the developer services performed by Gunapt on the Project.

41.     It would be unfair, unjust and against good conscience to permit Defendants to receive and utilize the funds and their benefits without properly compensating Gunapt for the value of the developer services performed by Gunapt for Defendants and the Project.

WHEREFORE, Gunapt prays for the entry of judgment in its favor and against Defendants, jointly and severally, in such an amount to be determined after an accounting of the Project, as prayed for in Count II, for pre-judgment interest, for an award of Gunapt's attorneys fees and costs, and such other and further relief as the Court deems proper.

<u>COUNT IV</u>
**(Constructive Trust)**
**(Plaintiff vs. All Defendants)**

42.     Gunapt restates and incorporates herein by reference the averments in Paragraphs 1 through 41 above as if fully set forth herein.

43.     Upon the sale of the Project, Defendants received and held the Development Fee and accrued interest in trust, for the benefit of Gunapt.

44.     Allowing Defendants to retain and/or distribute the Development Fee and accrued interest to persons or entities other than Gunapt has prevented Gunapt from enjoying the beneficial interest in the Development Fee and accrued interest, which funds are rightfully Gunapt's property, thereby violating established principles of equity.

45.     The Court should impose a constructive trust upon the Development Fee and accrued interest thereon, and/or upon the proceeds from the sale of the Project which proceeds

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

were distributed to Defendants, and order that Defendants must transfer and pay over to Gunapt the full amount of the Development Fee and accrued interest.

WHEREFORE, Gunapt prays for an order imposing a constructive trust on the funds consisting of the Development Fee and accrued interest and/or upon the proceeds from the sale of the Project which proceeds were distributed to Defendants in an amount to be proven at trial but currently estimated to exceed $4,500,000, plus pre-judgment interest, awarding Gunapt its attorneys' fees and costs incurred herein, and for such other and further relief as the Court deems proper.

### COUNT V
#### (Tortious Interference with Contract)
#### (Plaintiff vs. 2010 Peine, Centerline Corporate, Centerline Affordable and Related)

46.     Gunapt restates and incorporates herein by reference the averments in Paragraphs 1 through 45 as if fully set forth herein.

47.     Gunapt and Peine Lakes are parties to Exhibits 1 and 2, and Gunapt had a contract and/or business expectancy with respect to Exhibits 1 and 2 and the Project.

48.     Defendants 2010 Peine, Centerline Corporate, Centerline Affordable, and Related (the "Count V Defendants") knew of Gunapt's contract and/or business expectancy described above.

49.     The Count V Defendants improperly and wrongfully induced Peine Lakes to breach its contractual obligations owed to Gunapt in Exhibits 1 and 2 by, among other actions, failing to distribute the Development Fee and accrued interest thereon to Gunapt at the time of sale of the Project pursuant to Exhibits 1 and 2.

50.     The actions of the Count V Defendants described above were without justification, excuse, or privilege.

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

51.     As a direct and proximate result of the actions of the Count V Defendants, Gunapt was damaged in that Gunapt was deprived of payment of the Development Fee and accrued interest thereon in the amount presently estimated to exceed $4,500,000.  Plaintiff has also been forced to expend attorneys' fees and costs in seeking to enforce its rights herein.

52.     The actions of the Count V Defendants as alleged herein were intentional, outrageous, willful, wanton and guided by evil motive or reckless indifference to the rights of Plaintiff and justify the imposition of punitive damages against Defendants.

WHEREFORE, Gunapt prays for the entry of judgment against the Count V Defendants, jointly and severally, for Gunapt's actual damages in an amount that is fair and reasonable in excess of $25,000, for an award of punitive damages, for an award of Gunapt's attorneys' fees and costs incurred herein, and such other and further relief as the Court deems proper.

## COUNT VI
### (Civil Conspiracy)
### (Plaintiff vs. All Defendants)

53.     Gunapt restates and incorporates herein by reference the averments in Paragraphs 1 through 52 as if fully set forth herein.

54.     Defendants had a meeting of the minds and agreed to engage in the wrongful conduct set forth above in order to rob Plaintiff of the Development Fee and accrued interest to which Plaintiff was entitled.

55.     Defendants engaged in such conduct in furtherance of their conspiracy by, among other things, embarking on a course of conduct designed to prevent payment of the Development Fee and accrued interest to Gunapt so that Defendants could themselves benefit financially. Among other things, Defendants failed to use unrestricted cash on the Project to pay down affiliate advances and the Developer Fee and accrued interest and kept affiliate advances at high levels so

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

as to prevent Gunapt from receiving the Development Fee and accrued interest; Defendants served in bad faith a notice purporting to require Ganapt to forfeit its rights to the Development Fee and accrued interest; and Defendants failed to pay to Gunapt the Development Fee from the proceeds of the sale of the Project, all in an effort to financially benefit themselves.

56.     Defendants acted unlawfully and with an unlawful objective.

57.     As a direct result of Defendants' actions, Plaintiff has been damaged in an amount in excess of $25,000.  Plaintiff has also been forced to expend attorneys' fees and costs in seeking to enforce its rights herein.

58.     The actions of Defendants as alleged herein were intentional, outrageous, willful, wanton and guided by evil motive or reckless indifference to the rights of Plaintiff and justify the imposition of punitive damages against Defendants.

WHEREFORE, Gunapt prays for the entry of judgment against Defendants, jointly and severally, for Gunapt's actual damages in an amount that is fair and reasonable in excess of $25,000, for an award of punitive damages, for an award of Gunapt's attorneys' fees and costs incurred herein, and such other and further relief as the Court deems proper.

Respectfully submitted,

**ROSENBLUM GOLDENHERSH, P.C.**

BY:    /s/ John J. Gazzoli, Jr.

John J. Gazzoli, Jr., #24781
Theresa A. Phelps, #55023
Jessica C. Gittemeier, #65924
7733 Forsyth Blvd., 4th Floor
St. Louis, MO 63105
(314) 726-6868
(314) 726-6786 (facsimile)
jgazzoli@rosenblumgoldenhersh.com
tphelps@rosenblumgoldenhersh.com
jgittemeier@rosenblumgoldenhersh.com

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

*Attorneys for Plaintiff Gunapt Development,
LLC*

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

**PEINE LAKES, L.P**

### SECOND AMENDED AND RESTATED
### AGREEMENT OF LIMITED PARTNERSHIP

W669J25.5

**EXHIBIT 1**

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

## TABLE OF CONTENTS

Page

**ARTICLE I DEFINED TERMS** ........................................................................................ 1

**ARTICLE II GENERAL** ................................................................................................. 18

2.1 Continuation of the Partnership. ........................................................ 18
2.2 Principal Office ................................................................................... 18
2.3 Principal Place of Business; Resident Agent ..................................... 18
2.4 Term .................................................................................................... 18
2.5 Purpose................................................................................................ 18

**ARTICLE III CAPITAL CONTRIBUTIONS**.................................................................. 20

3.1 General Partner .................................................................................. 20
3.2 Withdrawal of Withdrawing Limited Partner; Admission of Investor Limited Partners
3.3 Special Limited Partner...................................................................... 20
3.4 Limited Partner. ................................................................................. 20
3.5 Delivery of Capital Note.................................................................... 23
3.6 Treatment of Other Advances ........................................................... 23
3.7 Capital Accounts; No Interest; Withdrawal ...................................... 23
3.8 Liability of Limited Partners.............................................................. 24
3.9 Provision of Other Amount................................................................ 24

**ARTICLE IV COMPLIANCE WITH AUTHORITY REQUIREMENTS; PARTNERSHIP
BORROWINGS** ....................................................................................... 28

4.1 Authority Requirements...................................................................... 28
4.2 Authorization to the General Partner. ................................................ 28
4.3 Right to Mortgage. ............................................................................. 29
4.4 Loans .................................................................................................. 29

**ARTICLE V RIGHTS, POWERS AND OBLIGATIONS OF THE GENERAL
PARTNERS AND LIMITATIONS THEREON**........................................... 31

5.1 Exercise of Management..................................................................... 31
5.2 Duties and Authority of General Partner. .......................................... 31
5.3 Delegation of General Partner's Authority; Tax Matters Partner. ..... 34
5.4 Lease, Conveyance or Refinancing of Assets of the Partnership. ..... 36
5.5 Restrictions on Authority ................................................................... 39
5.6 Activities of Partners.......................................................................... 41
5.7 Dealing with Affiliates........................................................................ 41
5.8 Indemnification and Liability of the General Partner. ....................... 41
5.9 Representations and Warranties.......................................................... 42
5.10 Additional Covenants of General Partner ......................................... 43

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

5.11 Obligation to Repair and Rebuild Apartment Complex ............................................. 44

**ARTICLE VI CERTAIN PAYMENTS** ....................................................................... 45

6.1 Development Fee ........................................................................................... 45
6.2 GP Supervisory Management Fee ................................................................. 46
6.3 Annual Local Administrative Fee .................................................................. 46
6.4 Lease-Up  Fee ................................................................................................ 46

**ARTICLE VII ACCOUNTING, REPORTS, BOOKS, BANK ACCOUNTS AND FISCAL
YEAR** ............................................................................................................. 48

7.1 Bank Accounts ............................................................................................... 48
7.2 Books of Account; Fiscal Year ..................................................................... 48
7.3 Reports. ......................................................................................................... 48
7.4 Tax Returns and Tax Treatment ................................................................... 50

**ARTICLE VIII MANAGEMENT AGENT** .................................................................. 51

8.1 Management Agent and Management Fee. ................................................... 51

**ARTICLE IX PROFITS AND LOSSES; DISTRIBUTIONS** ........................................ 53

9.1 Allocations of Profits and Losses ................................................................ 53
9.2 Distribution and Application of Cash Flow and Proceeds From Sale or Refinancing
Transactions .............................................................................................. 55
9.3 Overriding Allocations of Profits and Losses. ............................................. 60
9.4 Certain Additional Allocations. .................................................................... 64

**ARTICLE X TRANSFER OF LIMITED PARTNER INTERESTS** .............................. 66

10.1 Assignment of Limited Partner Interests. ................................................... 66
10.2 Substituted Partners; Admission. ................................................................ 68
10.3 Assignees. ..................................................................................................... 68

**ARTICLE XI WITHDRAWAL OF A GENERAL PARTNER; NEW GENERAL
PARTNER** ...................................................................................................... 70

11.1 Withdrawal. ................................................................................................... 70
11.2 Effect of Withdrawal; Election to Continue Business ................................. 71
11.3 Formation of New Partnership. ..................................................................... 71
11.4 Special Removal Rights. ............................................................................... 73
11.5 Additional General Partners. ........................................................................ 76
11.6 Amendment of Schedule and Agreement .................................................... 76
11.7 Survival of Liabilities ................................................................................... 76

**ARTICLE XII DISSOLUTION AND TERMINATION OF THE PARTNERSHIP** ........... 77

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

12.1 Events Which Cause a Dissolution ................................................................. 77
12.2 Actions of Liquidating Agent Upon Dissolution ............................................ 77
12.3 Statements on Termination .......................................................................... 77
12.4 Priority on Liquidation; Distribution of Non-Liquid Assets ........................... 78
12.5 Orderly Liquidation ..................................................................................... 79
12.6 No Goodwill Value ...................................................................................... 79

**ARTICLE XIII FOREIGN PARTNERS** ................................................................ 80

13.1 Certification of Non-Foreign Status ............................................................. 80
13.2 Withholding of Certain Amounts Attributable to Interests of Foreign Partners ....... 80

**ARTICLE XIV MISCELLANEOUS** ..................................................................... 81

14.1 Law Governing ........................................................................................... 81
14.2 Power of Attorney ....................................................................................... 81
14.3 Counterparts .............................................................................................. 81
14.4 Partners Independently Bound .................................................................... 82
14.5 Separability of Provisions ........................................................................... 82
14.6 Address and Notice ..................................................................................... 82
14.7 Computation of Time ................................................................................... 82
14.8 Titles and Captions ..................................................................................... 82
14.9 Entire Agreement ........................................................................................ 82
14.10 Agreement Binding .................................................................................... 82
14.11 Parties in Interest ...................................................................................... 83
14.12 Amendments; Other Actions ...................................................................... 83
14.13 Survival of Representations, Warranties and Agreements ........................... 83
14.14 Further Assurances .................................................................................... 83
14.15 Remedies Cumulative ............................................................................... 84
14.16 Meetings ................................................................................................... 84

**ARTICLE XV LENDER REQUIREMENTS** ......................................................... 85

Exhibits

Exhibit A - Pledge Agreement
Exhibit A-1 – Pledge Agreement (State)
Exhibit B - Capital Note
Exhibit B-1 – Capital Note (State)
Exhibit C - Form of Budget
Exhibit D - Form of Weekly Occupancy Report
Exhibit E - Form of Assignment and Assumption Agreement

W669125.5

**PEINE LAKES, L.P.**

**SECOND AMENDED AND RESTATED
AGREEMENT OF LIMITED PARTNERSHIP**

Second Amended and Restated Agreement of Limited Partnership, dated as of January 13, 2006, by and among **Gunapt Peine GP, L.L.C.**, a Missouri limited liability company, as General Partner, **Related Corporate XXVI SLP LLC**, a Delaware limited liability company, as Special Limited Partner, **Related Corporate Partners XXVI, L.P.**, a Delaware limited partnership, as Limited Partner, **Missouri Tax Partners V, L.P.**, a Missouri limited partnership, as State Limited Partner.

## W I T N E S S E T H :

**WHEREAS**, the Partnership was formed as a limited partnership under the laws of the State pursuant to the Original Certificate and the Initial Agreement. The Original Certificate was filed with the Filing Office on January 14, 2004, and

**WHEREAS**, the Initial Agreement was amended and restated pursuant to that certain Amended and Restated Agreement of Limited Partnership, dated as of February 1, 2004, as subsequently amended (the "Existing Agreement"); and

**WHEREAS**, the parties hereto desire to enter into this Agreement to provide for, among other things, (i) the continuation of the Partnership, (ii) the respective rights, obligations and interests of the parties hereto to each other and to the Partnership and (iii) certain other matters;

**NOW, THEREFORE**, in consideration of the covenants and agreements hereinafter set forth, the parties hereto agree that the Existing Agreement is hereby amended and restated in its entirety to read as follows:

## ARTICLE I

## DEFINED TERMS

Capitalized terms used in this Agreement shall, unless the context otherwise requires, have the meanings specified in this Article I. Certain additional defined terms are set forth elsewhere in this Agreement.

"**Accountants**" means such firm or firms of independent certified public accountants as may be engaged by the General Partner with the Consent of the Special Limited Partner not to be unreasonably withheld from time to time, and shall initially be Reznick, Fedder & Silverman of Atlanta, Georgia.

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

"**Actual State Credits**" means the amount of State Credits actually allocated in any year to the State Limited Partner.

"**Additional Development Deficit Loan**" shall have the meaning provided in Section 4.6 hereof.

"**Adjusted Capital Account Deficit**" means, with respect to any Partner, the deficit balance, if any, in such Partner's Capital Account as of the end of any fiscal year of the Partnership, after giving effect to the following adjustments:

(i)     credit to such Capital Account any amounts which such Partner is obligated to restore thereto pursuant to any provision of this Agreement or is deemed to be obligated to restore thereto pursuant to the penultimate sentences of Sections 1.704-2(g)(1) and 1.704-2(i)(5) of the Regulations; and

(ii)     debit to such Capital Account the items described in Sections 1.704-1(b)(2)(ii)(d)(4), 1.704-1(b)(2)(ii)(d)(5), and 1.704-1(b)(2)(ii)(d)(6) of the Regulations.

The foregoing definition of Adjusted Capital Account Deficit is intended to comply with the provisions of Section 1.704-1(b)(2)(ii)(d) of the Regulations and shall be interpreted consistently therewith.

"**Admission Date**" means the day on which the Limited Partner acquires its Interest pursuant to the terms of the Contribution Agreement.

"**Affiliate**" means, when used with reference to a specified Person, any (i) Person that directly or indirectly controls or is controlled by or is under common control with the specified Person, (ii) Person that is an officer of, partner in or trustee of, or serves in a similar capacity with respect to, the specified Person or of which the specified Person is an officer, partner or trustee, or with respect to which the specified Person serves in a similar capacity and (iii) Person that, directly or indirectly, is the beneficial owner of 10% or more of any class of equity securities of the specified Person or of which the specified Person is directly or indirectly the owner of 10% or more of any class of equity securities. "Affiliate" of the Partnership or a General Partner does not include a Person who is a partner in one or more partnerships or joint ventures with the Partnership or any other Affiliate of the Partnership if such Person is not otherwise an Affiliate of the Partnership or such General Partner.

"**Agreement**" means this Second Amended and Restated Agreement of Limited Partnership, as it may be amended from time to time.

"**Apartment Complex**" means the real property consisting of a fee interest in a parcel of land located in the City of Wentzville, Missouri (the "Land") and in the buildings and all furnishings, equipment and personal property used in connection with the operation thereof, as well as all easements appurtenant thereto (the "Improvements").

"**Architect**" means Morton M. Gruber AIA Architects, and its successors and assigns.

W669125.5

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

"**Assignment**" (including the verb form "**Assign**" and the adjectival form "Assigned") means a valid sale, exchange, transfer or other disposition of all or any portion of an Interest.

"**Assignor**" means a Partner who makes an Assignment and "**Assignee**" means a Person who receives an Assignment.

"**Authority**" means any housing credit agency under Section 42 of the Code or applicable housing finance authority, which is a public body corporate and politic created by the State, or other agency authorized to allocate Credits, State Credits or issue bonds or other evidence of indebtedness to finance residential housing development.  To the extent applicable, Authority shall also mean HUD, any government mortgage insurance or coinsurance agency, or any other governmental body or agency having jurisdiction over the operations of the Apartment Complex or that provides assistance to the Partnership, the Apartment Complex and/or its tenants and imposes requirements in connection with such assistance.

"**Authority Insurance Obligation**" means the obligation of any Authority to insure the Mortgage.

"**Bankruptcy**" or "**Bankrupt**" means, with respect to any Partner, such Partner making an assignment for the benefit of creditors, becoming a party to any liquidation or dissolution action or proceeding with respect to such Partner or any bankruptcy, reorganization, insolvency or other proceeding for the relief of financially distressed debtors with respect to such Partner, or a receiver, liquidator, custodian or trustee being appointed for such Partner or a substantial part of such Partner's assets and, if any of the same occur involuntarily, the same not being dismissed, stayed or discharged within 90 days; or the entry of an order for relief against such Partner under Title 11 of the United States Code.  A Partner shall be deemed Bankrupt if the Bankruptcy of such Partner shall have occurred and be continuing.

"**Bond Loan Documents**" shall have the meaning provided in the Contribution Agreement.

"**Bonds**" means collectively (a) the $12,900,000 The Industrial Development Authority of St. Charles County, Missouri, Multifamily Housing Revenue Bonds (the Estates at Peine Lake Apartments Project) Series 2004 and (b) the $270,000 Taxable Multifamily Housing Revenue Bonds (The Estate at Peine Lakes Apartments Project) Series 2004-T.

"**Break-Even Date**" has the meaning ascribed thereto in the Development Deficit Guaranty Agreement.

"**Capital Account**" means, with respect to any Partner, the Capital Account maintained for such Partner in accordance with the following provisions:

(i)     to each Partner's Capital Account there shall be credited such Partner's Capital Contributions, such Partner's distributive share of Profits, and any items in the nature of income or gain which are specially allocated pursuant to Article IX hereof, and the amount of any Partnership liabilities assumed by such Partner or which are secured by any property distributed to such Partner;

W669125.5

- 3 -

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

(ii)    to each Partner's Capital Account there shall be debited the amount of cash and the Gross Asset Value of any property distributed to such Partner pursuant to any provision of this Agreement, such Partner's distributive share of Losses, and any items in the nature of expenses or losses which are specially allocated pursuant to Article IX hereof, and the amount of any liabilities of such Partner assumed by the Partnership or which are secured by any property contributed by such Partner to the Partnership;

(iii)    in the event any Interest is Assigned in accordance with the terms of this Agreement, the Assignee shall succeed to the Capital Account of the Assignor to the extent it relates to the Assigned Interest; and

(iv)    in determining the amount of any liability for purposes of clauses (i) and (ii) above, there shall be taken into account Section 752(c) of the Code and any other applicable provisions of the Code and the Regulations.

The foregoing provisions and the other provisions of this Agreement relating to the maintenance of Capital Accounts are intended to comply with Section 1.704-1(b) of the Regulations, and shall be interpreted and applied in a manner consistent with such Regulations. In the event the General Partner shall determine that it is prudent to modify the manner in which the Capital Accounts, or any debits or credits thereto (including, without limitation, debits or credits relating to liabilities which are secured by contributed or distributed property or which are assumed by the Partnership or the Partners), are computed in order to comply with such Regulations, the General Partner may make such modification with the Consent of the Special Limited Partner, provided that it is not likely to have a material effect on the amounts distributable to any Partner pursuant to Section 12.4 hereof upon the dissolution of the Partnership. The General Partner, with the Consent of the Special Limited Partner, also shall (a) make any adjustments that are necessary or appropriate to maintain equality between the aggregate Capital Accounts of the Partners and the aggregate amount of Partnership capital reflected on the Partnership's balance sheet, as computed for book purposes in accordance with Section 1.704-1(b)(2)(iv)(q) of the Regulations, and (b) make any appropriate modifications in the event unanticipated events might otherwise cause this Agreement not to comply with Section 1.704-1(b) of the Regulations.

"**Capital Contributions**" means, with respect to any Partner, the amount of money and the initial Gross Asset Value of any property (other than money) contributed to the Partnership with respect to the Interest held by such Partner pursuant to the terms of this Agreement in accordance with Schedule A attached hereto. The Deferred Contributions or the principal amount of a promissory note which is not readily traded on an established securities market and which is contributed to the Partnership by the maker of such note shall not be included in the Capital Contribution of any Person until the Partnership makes a taxable disposition of such obligations or until (and to the extent) such Deferred Contributions or principal payments on such note are made, as the case may be, all in accordance with Section 1.704-1(b)(2)(iv)(d)(2) of the Regulations. Any reference in this Agreement to the Capital Contribution of a then Partner shall include the contributions to the capital of the Partnership made by any predecessor in interest of such Partner in respect of such Interest of such Partner provided that such contributions are made or deemed to have been made on or subsequent to the Admission Date.

W669125.5

- 4 -

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

"**Capital Note**" means the promissory note issued by the Limited Partner to the Partnership pursuant to Section 3.5 hereof.

"**Cash Expenditures**" means all disbursements of cash during the year (excluding distributions to Partners), including, without limitation, payment of operating expenses, the regular payment of debt service, including principal and interest on the Partnership's indebtedness (excluding payments of principal and interest on Voluntary Loans, Operating Loans or the Deferred Development Fee), cost of repair and restoration of the Apartment Complex, and amounts allocated to reserves by the General Partner.  In addition, the net increase during the year in any escrow account or reserve maintained by or for the Partnership shall be considered a cash expenditure during the year.  Cash Expenditures payable to Partners or Affiliates of Partners shall be paid after Cash Expenditures payable to third parties, except for payments to a Management Agent which may be an Affiliate of a Partner to the extent such fees are payable and are not subject to deferral.  Cash Expenditures shall not include expenses incurred in connection with a Sale or Refinancing Transaction or any expenses or payments to be distributed or paid pursuant to Section 9.2.A hereof.

"**Cash Flow**" means the excess of Cash Receipts over Cash Expenditures.  Cash Flow shall be determined separately for each fiscal year or portion thereof.

"**Cash Receipts**" means all cash receipts of the Partnership from whatever source derived other than from a Sale or Refinancing Transaction, including, without limitation, cash from operations, any amounts attributable to construction or development savings, interest earned on reserves held by or for the benefit of the Apartment Complex and/or the Partnership, net insurance recoveries (other than proceeds from title insurance recoveries and other than condemnation or casualty proceeds), and Capital Contributions.  In addition, the net reduction in any year in the amount of any escrow account or reserve maintained by or for the Partnership shall be considered a cash receipt of the Partnership for such year.  Notwithstanding the foregoing, at the election of the General Partner, Cash Receipts received near the end of a fiscal year and intended for use in meeting the Partnership's obligations (including the cost of acquiring assets or paying debts or expenses) in the subsequent fiscal year shall not be deemed received until such following year.

"**Certificate**" means the Original Certificate or any other instrument filed in the Filing Office as the Certificate of Limited Partnership of the Partnership in accordance with the Uniform Act, as amended from time to time.

"**Class**" means a specific class or grouping of Partners (i.e., the General Partners, the Limited Partner, the State Limited Partner, the Investor Limited Partners or the Special Limited Partner).

"**Code**" means the Internal Revenue Code of 1986, as amended from time to time, or any successor statute.

"**Collateral Assignment**" means that certain Collateral Assignment of General Partner Interest and Deferred Development Fee, dated as of even date herewith, by and between

W669125.5

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

the General Partner, the Limited Partner and the Special Limited Partner, which shall be annexed to the Contribution Agreement as Exhibit Q.

"**Completion**" shall mean such time as the satisfaction of the requirements constituting Completion as defined in the Fourth Contribution Payment Conditions as defined in the Contribution Agreement, have occurred.

"**Completion Date**" shall have the meaning provided in the Contribution Agreement.

"**Compliance Period**" shall have the meaning provided in Section 42(i)(1) of the Code.

"**Consent of the Special Limited Partner**" means the prior written consent or approval of the Special Limited Partner, which may be granted or withheld in its sole discretion, unless otherwise provided herein.

"**Consent of the State Limited Partner**" means the prior written consent or approval of the State Limited Partner, which may be granted or withheld in its sole discretion, unless otherwise provided herein.

"**Construction Contract**" means the construction contract to construct the Apartment Complex dated July 25, 2005, between the Partnership and the Contractor, as it may be amended from time to time.

"**Contractor**" means Gundaker Commercial Group, Inc., and its successors and assigns.

"**Contribution Agreement**" means the Amended and Restated Contribution Agreement dated of even date herewith, among the General Partner, the Limited Partner and the Special Limited Partner.

"**Credit**" or "**Credits**" means the low income housing tax credit allowable under Section 42 of the Code.

"**Credit Conditions**" means, for the duration of the Compliance Period, any and all restrictions including, but not limited to, applicable Federal, state and local laws, rules and regulations, which must be complied with in order to qualify for the Credits or the State Credits or to avoid an event of recapture in respect of the Credits or the State Credits.

"**Credit Period**" shall have the meaning specified in Section 42 of the Code or Sections 33-1-18 or 48-7-29.6 of the Official Code of Missouri Annotated, as applicable.

"**Deed**" means the deed from L.A.D. Properties, L.L.C., a Missouri limited liability company, to the Partnership expected to be dated as of February 18, 2004 conveying fee title to the Land.

W669125.5

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

"**Deferred Development Fee**" shall have the meaning specified in Section 6.1 hereof.

"**Depreciation**" means, for each fiscal year of the Partnership or other period, an amount equal to the depreciation, amortization, or other cost recovery deduction allowable with respect to an asset for such fiscal year or other period, except that if the Gross Asset Value of an asset differs from its adjusted basis for Federal income tax purposes at the beginning of such fiscal year or other period, Depreciation shall be an amount which bears the same ratio to such beginning Gross Asset Value as the Federal income tax depreciation, amortization, or other cost recovery deduction for such fiscal year or other period bears to such beginning adjusted tax basis; provided, however, that if the Federal income tax depreciation, amortization, or other cost recovery deduction for such fiscal year is zero, Depreciation shall be determined with reference to such beginning Gross Asset Value using any reasonable method selected by the General Partners.

"**Developer**" means, Gunapt Development, L.L.C., a Missouri limited liability company.

"**Developer's Overhead**" shall have the meaning specified in Section 6.1 hereof.

"**Development Agreement**" means the Amended and Restated Development Agreement, dated as of January 13, 2006, between the Partnership and the Developer.

"**Development Budget**" shall mean the Construction Budget attached to the Contribution Agreement as Schedule 8.

"**Development Deficit**" shall have the meaning provided in the Development Deficit Guaranty Agreement.

"**Development Deficit Guaranty Agreement**" means the agreement of the Guarantor to guaranty Completion and to fund Development Deficits, which runs in favor of the Limited Partners, which shall be substantially in the form of Exhibit E annexed to the Contribution Agreement.

"**Development Expenditures**" means the costs incurred or to be incurred to (a) acquire, construct and equip the Apartment Complex through Completion in conformity with the Project Documents and the Plans and Specifications (other than the Development Fee), (b) pay all other expenses and costs associated with respect to financing the Construction of the Apartment Complex through the Break-Even Date, and (c) pay all other costs incident to the Construction of the Apartment Complex through the Break-Even Date (other than the normal operating expenses of the Apartment Complex and costs incurred by the Partnership in connection with the litigation of administrative determinations regarding Federal tax matters).

"**Development Fee**" has the meaning specified in Section 6.1 hereof.

"**Development Sources**" means the aggregate of (i) the proceeds of the Mortgage Notes (which to the extent of any proceeds received from a refinancing of any construction financing shall include only the net proceeds of such refinancing) and any grants received by the

W669125.5

- 7 -

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

Partnership, (ii) the Capital Contributions actually paid or agreed to be paid and (iii) available operating income of the Apartment Complex prior to the Break-Even Date (other than rental income distributed as Lease-Up Fee).

"**Development Surplus**" means the excess of Development Sources over Development Expenditures.

"**Eligible Unit**" has the meaning specified in Section 5.2.B hereof.

"**Entity**" means any general partnership, limited partnership, limited liability company, limited liability partnership, corporation, joint venture, trust, business trust, cooperative or association.

"**Excess Development Cash Flow**" has the meaning specified in Section 6.4 hereof.

"**Fifth Contribution Payment Date**" shall have the meaning set forth in the Contribution Agreement.

"**Fifth State Contribution Date**" shall have the meaning set forth in the State Contribution Agreement.

"**Fifth Contribution**" or "**Fifth Installment**" has the meaning specified in Section 3.4.A hereof.

"**50% Completion**" shall mean such time as the satisfaction of the Second Contribution Payment Conditions and delivery to the Limited Partner of the Second Contribution Payment Documents, each as defined in the Contribution Agreement, have occurred.

"**Filing Office**" means the Office of the Secretary of State of the State.

"**Foreign Partner**" means a Partner who at the time of acquisition of such Partner's Interest is a United States citizen or a resident alien of the United States and whose status subsequently changes to that of a non-resident alien of the United States.

"**Foreign Person**" means a non-resident alien, foreign corporation, foreign partnership, foreign trust or foreign estate, within the meaning of Sections 897, 1445 and 1446 of the Code.

"**Fourth Contribution Payment Date**" shall have the meaning set forth in the Contribution Agreement.

"**Fourth State Contribution Date**" shall have the meaning set forth in the State Contribution Agreement.

"**Fourth Contribution**" or "**Fourth Installment**" has the meaning specified in Section 3.4.A hereof.

W669125.5

- 8 -

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

"**General Partner**" or "**General Partners**" means any or all Persons designated as General Partners in Schedule A, including, without limitation, the Managing General Partner, and any Person or Persons who, at the time of reference thereto, have been admitted as additional or successor General Partners, in each such Person's capacity as a general partner of the Partnership.  If there is only one General Partner of the Partnership, the term "General Partners" shall be deemed to refer to such General Partner.

"**GP Supervisory Management Fee**" has the meaning specified in Section 6.2 hereof.

"**Governmental Agreements**" means all agreements between the Partnership and any Authority with respect to the Apartment Complex and relating to insuring, supplementing, subsidizing, endorsing or otherwise affecting a Mortgage on the Apartment Complex (including, without limitation, any Regulatory Agreement); bond financing secured by any such Mortgage; Authority Insurance Obligation; Rental Assistance Contract; or tax abatements, concessionary financing or grants, or other governmental assistance to the Apartment Complex or its tenants, regardless of its nature, in each case as the same may be amended from time to time.

"**Gross Asset Value**" means, with respect to any asset owned by the Partnership, the asset's adjusted basis for Federal income tax purposes, except as follows:

(i)        the initial Gross Asset Value of any asset contributed by a Partner to the Partnership shall be the gross fair market value of such asset, as determined by the contributing Partner and the General Partners;

(ii)       the Gross Asset Value of each asset shall be adjusted to equal its respective gross fair market value, as determined by the General Partners, as of the following times:  (a) the acquisition of an additional Interest by any new or existing Partner in exchange for more than a de minimis Capital Contribution; (b) the distribution by the Partnership to a Partner of more than a de minimis amount of property as consideration for an Interest; and (c) the liquidation of the Partnership within the meaning of Section 1.704-1(b)(2)(ii)(g) of the Regulations; provided, however, that adjustments pursuant to clauses (a) and (b) above shall be made only if the General Partners reasonably determine that such adjustments are necessary or appropriate to reflect the relative economic interests of the Partners in the Partnership;

(iii)      the Gross Asset Value of any asset distributed to any Partner shall be the gross fair market value of such asset on the date of distribution; and

(iv)      the Gross Asset Value of each asset shall be increased (or decreased) to reflect any adjustments to the adjusted basis of such asset pursuant to Section 734(b) or Section 743(b) of the Code, but only to the extent that such adjustment is taken into account in determining Capital Accounts pursuant to Section 1.704-1(b)(2)(iv)(m) of the Regulations and Article IX hereof; provided, however, that Gross Asset Values shall not be adjusted pursuant to this clause (iv) to the extent the General Partners determine that an adjustment pursuant to clause (ii) above is necessary or appropriate in connection with a transaction that would otherwise result in an adjustment pursuant to this clause (iv).

W669125.5

- 9 -

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

If the Gross Asset Value of an asset has been determined or adjusted pursuant to clause (i), (ii) or (iv) above, such Gross Asset Value shall thereafter be adjusted by the Depreciation taken into account with respect to such asset for purposes of computing Profits and Losses.

"**Gross Effective Income**" means the gross income from all sources from the normal operation of the Apartment Complex received on a cash basis (including all public subsidy payments due and payable at such time but not yet received by the Partnership), but excluding (i) tenant security or other deposits, (ii) Capital Contributions and interest thereon, (iii) interest on reserves not available for distribution, and (iv) the proceeds of insurance payments, except rental interruption insurance.

"**Gross Revenues**" has the meaning ascribed thereto in each Development Deficit Guaranty Agreement.

"**Guarantor**" means the General Partner; provided however that with respect to the Operating Deficit Guaranty and the State Operating Deficit Guaranty, the term Guarantor shall also include the following in addition to the General Partner: Gordon A. Gundaker, Jr. as Trustee of the Gordon A. Gundaker, Jr. Revocable Trust dated January 6, 1997, Michael J. Hejna, Gregory A. Lee, Mary E. Mercurio, Michael A. Seidel, Connie F. Boehle, Rudy C. Stinnett, Mark A. Hejna, Todd A. Ellmo, and David A. Morris.

"**Guaranty Period**" means the period during which the Guarantor is obligated to fund any Operating Deficit pursuant to the Operating Deficit Guaranty Agreement and the State Operating Deficit Guaranty Agreement.

"**Gundaker Loan**" shall have the meaning provided in the Contribution Agreement.

"**HUD**" means the United States Department of Housing and Urban Development, or any successor Federal agency.

"**Improvements**" shall have the meaning specified in the definition of Apartment Complex.

"**Initial Agreement**" means the Limited Partnership Agreement dated as of January 14, 2004, among the General Partner as general partner and the Withdrawing Limited Partner as limited partner, as amended and restated pursuant to that certain Amended and Restated Agreement of Limited Partnership dated as of February 1, 2004, among the General Partner as general partner, and the Investor Limited Partners as limited partners.

"**Initial Contribution**" or "**Initial Installment**" has the meaning specified in Section 3.4.A hereof.

"**Interest**" means the entire ownership interest of a Partner in the Partnership at any particular time, including the right of such Partner to any and all benefits to which a Partner may be entitled as provided in this Agreement, together with the obligations of such Partner to comply with all terms and provisions of this Agreement. Except as provided in this Agreement,

W669125.5

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

a Partner's Interest shall not include any interest that such Partner may otherwise have as a creditor of the Partnership.

"**Installment**" has the meaning specified in Section 3.4.A hereof.

"**Investor Limited Partners**" means the Limited Partner, the State Limited Partner and the Special Limited Partner and any Substituted Investor Limited Partner.

"**Involuntary Assignment**" means any Assignment caused by the death, adjudication of insanity or incompetence of a shareholder or beneficial holder of a General Partner.

"**Involuntary Withdrawal**" means any Withdrawal caused by the death, adjudication of insanity or incompetence, or Bankruptcy of a General Partner, or the removal of such General Partner pursuant to Section 11.4.A(i)(d) hereof but shall not include an Involuntary Assignment.

"**Land Documents**" means the Deed and the Title Policy.

"**Lease-Up Fee**" has the meaning set forth in Section 6.4 hereof.

"**Lender**" means any lender under any mortgage constituting the Mortgage.

"**Loans**" shall have the meaning ascribed thereto in the Contribution Agreement.

"**Limited Partner**" means Related Corporate Partners XXVI, L.P., a Delaware limited liability company, and any person who becomes a Substituted Limited Partner in respect of any portion of the Limited Partner Interest of the Limited Partner as provided in Article X hereof. The term does not include the Special Limited Partner or State Limited Partner.

"**Liquidating Agent**" shall have the meaning provided in Section 12.2 hereof.

"**Management Agent**" means Gundaker Commercial Group, Inc., or the person approved by each Authority and selected to provide management services to the Apartment Complex from time to time in accordance with Article VIII hereof.

"**Management Agreement**" means the agreement between the Partnership and the Management Agent in connection with management of the Apartment Complex entered into pursuant to the authority granted by Article VIII hereof.

"**Managing General Partner**" means Gunapt Peine GP, L.L.C., initially, and its successors and assigns as Managing General Partner pursuant to the provisions of Section 5.3 hereof.

"**Mortgage**" means any mortgage or deed of trust securing an indebtedness of the Partnership evidenced by the Mortgage Note and encumbering the Apartment Complex, as such indebtedness may be increased, decreased or refinanced in accordance with this Agreement and the Project Documents. Where the context admits, the term "Mortgage" shall include any

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

mortgage, deed, deed of trust, note, regulatory agreement, security agreement, assumption agreement or other instrument executed in connection with a Mortgage Note which is binding on the Partnership; and in case any Mortgage is replaced or supplemented by any subsequent mortgage or mortgages, the "Mortgage" shall refer to any such subsequent mortgage or mortgages.

"**Mortgage Note**" means any promissory note held by a Lender evidencing the indebtedness secured by the Mortgage.

"**Nonrecourse Deductions**" shall have the meaning set forth in Section 1.704-2(b)(1) of the Regulations.

"**Nonrecourse Liability**" shall have the meaning set forth in Section 1.704-2(b)(3) of the Regulations.

"**Operating Deficit**" shall have the meaning provided in the Operating Deficit Guaranty Agreement.

"**Operating Deficit Guaranty Agreement**" means the agreement of the Guarantor to fund Operating Deficits, which shall be substantially in the form of Exhibit F annexed to the Contribution Agreement.

"**Operating Loans**" means loans made by the Guarantor to the Partnership pursuant to the Operating Deficit Guaranty Agreement and the State Operating Deficit Guaranty Agreement to fund Operating Deficits occurring during the Guaranty Period and loans made by the Guarantor to the Partnership pursuant to the Replacement Reserve Guaranty Agreement, which loans do not bear interest and are repayable only as provided in Article IX hereof.

"**Original Certificate**" means the Certificate of Limited Partnership filed in the Filing Office on January 14, 2004, naming the General Partner as general partner.

"**Partner**" or "**Partners**" means any or all of the General Partner, the Limited Partner, the State Limited Partner and the Special Limited Partner.

"**Partner Nonrecourse Debt**" shall have the meaning set forth in Section 1.704-2(b)(4) of the Regulations.

"**Partner Nonrecourse Debt Minimum Gain**" shall have the meaning set forth in Section 1.704-2(i)(2) of the Regulations.

"**Partner Nonrecourse Deductions**" shall have the meaning set forth in Section 1.704-2(i)(2) of the Regulations.

"**Partnership**" means the limited partnership governed by this Agreement, as such limited partnership may from time to time be amended or reconstituted.

"**Partnership Minimum Gain**" shall have the meaning set forth in Section 1.704-2(b)(2) of the Regulations.

W669125.5

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

"**Person**" means any individual or Entity, and the heirs, executors, administrators, legal representatives, successors and assigns of such Person as the context may require.

"**Pledge Agreement**" means the Pledge Agreement, in substantially the same form as attached hereto as Exhibit A, executed by the Partnership, the Limited Partner and the Special Limited Partner, and all amendments thereto.

"**Prime Rate**" means the rate of interest publicly announced from time to time by Chase Manhattan Bank, New York, New York, as its prime rate.

"**Profits**" and "**Losses**" means, for each fiscal year of the Partnership or other period, an amount equal to the Partnership's taxable income or loss for such year or period, determined in accordance with Section 703(a) of the Code (for this purpose, all items of income, gain, loss, or deduction required to be stated separately pursuant to Section 703(a)(1) of the Code shall be included in taxable income or loss), with the following adjustments:

(i)     any income of the Partnership that is exempt from Federal income tax and not otherwise taken into account in computing Profits or Losses shall be added to such taxable income or loss;

(ii)     any expenditures of the Partnership described in Section 705(a)(2)(B) of the Code or treated as Section 705(a)(2)(B) expenditures pursuant to Section 1.704-1(b)(2)(iv)(i) of the Regulations and not otherwise taken into account in computing Profits or Losses, shall be subtracted from such taxable income or loss;

(iii)     in the event the Gross Asset Value of any Partnership asset is adjusted pursuant to clause (ii) or (iii) of the definition thereof, the amount of such adjustment shall be taken into account as gain or loss from the disposition of such asset for purposes of computing Profits or Losses;

(iv)     gain or loss resulting from any disposition of Partnership property with respect to which gain or loss is recognized for Federal income tax purposes shall be computed by reference to the Gross Asset Value of the property disposed of, notwithstanding that the adjusted tax basis of such property differs from its Gross Asset Value;

(v)     in lieu of the depreciation, amortization, and other cost recovery deductions taken into account in computing such taxable income or loss, there shall be taken into account Depreciation for such fiscal year or other period; and

(vi)     notwithstanding any other provisions hereof, any items which are specially allocated pursuant to Article IX hereof shall not be taken into account in computing Profits or Losses.

"**Project Documents**" means the Construction Contract, the Governmental Agreements, the Land Documents, the Development Agreement, the Management Agreement, the Mortgage, the Mortgage Note, the Contribution Agreement, the State Contribution Agreement and all guarantees issued in connection therewith, and any other document related to

W669125.5

- 13 -

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

the financing, development, construction, rehabilitation or operation of the Apartment Complex, as any such documents may be amended from time to time.

"**Recapture Guaranty Agreement**" means the guaranty given by the Guarantor to the Limited Partner in the form of Exhibit H annexed to the Contribution Agreement.

"**Regulations**" means the Income Tax Regulations (including Temporary Regulations) promulgated under the Code.

"**Related Development Cost Loan**" shall mean any loan made by the Limited Partner or Special Limited Partner pursuant to the terms of Section 4.5 hereof.

"**Rental Achievement**" shall mean such time as the satisfaction of the Fifth Contribution Payment Conditions and delivery to the Limited Partner and the State Limited Partner of the Fifth Contribution Payment Documents, each as defined in the Contribution Agreement and/or the State Contribution Agreement, have occurred.

"**Rental Assistance Contract**" means any contract between the Partnership and HUD or other Authority providing for annual rental subsidies for the Apartment Complex or tenants therein.

"**Replacement Reserve Guaranty Agreement**" means the agreement of the Guarantor to fund reserves required to be maintained by the Partnership pursuant to Section 5.2.D hereof in the form of Exhibit G annexed to the Contribution Agreement.

"**Return Amount**" shall have the meaning ascribed to such term in Section 9.2.D hereof.

"**Sale or Refinancing Transaction**" means any of the following items or transactions not in the ordinary course of business: a sale, transfer, exchange or other disposition of all or substantially all of the assets of the Partnership, a condemnation of or casualty at the Apartment Complex or any part thereof (other than an event which produces business interruption insurance proceeds or other similar payments), a claim against a title insurance company, the refinancing of any Mortgage Note or other indebtedness of the Partnership and any similar item or transaction; provided, however, that neither distributions which are deemed returns of capital for Federal income tax purposes nor the payment of Capital Contributions by the Partners shall be included within the meaning of the term "Sale or Refinancing Transaction."

"**Sale or Refinancing Transaction Proceed**" means all cash receipts of the Partnership arising from a Sale or Refinancing Transaction (including, without limitation, principal and interest received on a debt obligation received as consideration, in whole or in part, on a Sale or Refinancing Transaction).

"**Second Contribution**" or "**Second Installment**" has the meaning specified in Section 3.4.A hereof.

"**Second Contribution Payment Date**" shall have the meaning set forth in the Contribution Agreement.

W669125.5

- 14 -

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

"**Second State Contribution Date**" shall have the meaning set forth in the State Contribution Agreement.

"**75% Completion**" shall mean such time as the satisfaction of the Third Contribution Payment Conditions and delivery to the Limited Partner of the Third Contribution Payment Documents, each as defined in the Contribution Agreement, have occurred.

"**Special Limited Partner**" means Related Corporate XXVI SLP LLC, a Delaware limited liability company, and its successors and assigns.

"**State**" means the state of Missouri.

"**State Capital Note**" means the promissory note issued by the State Limited Partner to the Partnership pursuant to Section 3.11 hereof.

"**State Contribution Agreement**" means the Amended and Restated State Contribution Agreement dated of even date herewith, among the General Partner, the Partnership and the State Limited Partner

"**State Credits**" means the low income housing tax credit allocable under Sections 135.350 et. seq. of the Revised Statutes of Missouri.

"**State Credit Reduction Payments**" shall mean an amount equal to the present value cost to the State Limited Partner (assuming a 13% discount rate) of a difference (a "**State Credit Reduction**") between the amount of State Credits received by the Partnership and allocated to the State Limited Partner and the amount of State Credits set forth in Exhibit A to the State Recapture Guaranty Agreement, as such amounts are adjusted pursuant to Section 3.10.B.(iii) hereof, which arises as a result of a State Credit Reduction (other than in connection with a Tax Credit Recapture Event (as such term is defined in the State Recapture Guaranty Agreement), a change in law or actions by the State Limited Partner) which occurs after the last Note Payment Date (as such term is defined in the State Contribution Agreement). State Credit Reduction Payments shall not be required to the extent amounts equal to such payments have been paid previously to the State Limited Partner pursuant to the State Recapture Guaranty Agreement or pursuant to Section 9.2.D. hereof.

"**State Development Deficit Guaranty Agreement**" means the agreement of the Guarantor to guaranty Completion and to fund Development Deficits, which runs in favor of the State Limited Partner, which shall be substantially in the form of Exhibit E annexed to the State Contribution Agreement

"**State Eligibility Certificate**" means a certificate issued by the Credit Agency in accordance with the provisions of Chapter 135 of the Revised Statutes of Missouri certifying that the Apartment Complex qualifies for the State Credits.

"**State Limited Partner**" means Missouri Tax Partners V, L.P., a Missouri limited partnership, and its successors and assigns.

W669125.5

"**State Operating Deficit Guaranty Agreement**" means the agreement of the Guarantor running in favor of the State Limited Partner to fund Operating Deficits.

"**State Pledge Agreement**" means the Pledge Agreement, in substantially the same form as attached hereto as Exhibit A-1, executed by the Partnership and the State Limited Partner, and all amendments thereto.

"**State Recapture Guaranty Agreement**" means the agreement of the Guarantor to make payments to the State Limited Partner with respect to Tax Credit Recapture Events (as such term is defined in said Agreement).

"**State Return Amount**" shall have the meaning ascribed to such term in Section 9.2.D.

"**Substituted Partner**" means any transferee of the Interest of a Partner who is admitted to the Partnership as a successor partner in respect of the Interest of such Partner.

"**Tax Matters Partner**" means the Partner designated from time to time as the Tax Matters Partner of the Partnership pursuant to Section 5.3.D hereof.

"**Third Contribution**" or "**Third Installment**" has the meaning specified in Section 3.4.A hereof.

"**Third Contribution Payment Date**" shall have the meaning set forth in the Contribution Agreement.

"**Third State Contribution Date**" shall have the meaning set forth in the State Contribution Agreement.

"**Title Policy**" means the Policy of Title Insurance issued by U.S. Title Guaranty Company, as agent for Stewart Title Guaranty Company pursuant to proforma policy No. OPRO-FORMA M, and all the documents relating thereto.

"**Total State Credit Amount**" means $7,000,000 of State Credits.

"**Unavoidable Events**" means strikes, acts of God, governmental restrictions (other than those contained in Governmental Agreements), severe or unusual shortages of labor or materials, enemy action, riot, civil commotion, fire, unavoidable casualty or other causes beyond the reasonable control of a party.  Lack of funds shall not be deemed a cause beyond the control of a party.

"**Uniform Act**" means the Uniform Limited Partnership Act, or its equivalent, as it may be adopted or amended from time to time by the State, or any successor statute governing the operation of limited partnerships.

"**United States Real Property Interest**" means any direct or indirect interest in United States real property as defined in Section 897(c) of the Code and the Income Tax Regulations promulgated thereunder.

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

"**Voluntary Loan**" means a voluntary, unsecured interest-bearing loan of any Partner to the Partnership as described in Section 4.4 hereof.

"**Withdrawing**" or "**Withdrawal**" (including the verb form "**Withdraw**" and the adjectival forms "**Withdrawing**" and "**Withdrawn**") means, as to a General Partner, the occurrence of the death, adjudication of insanity or incompetence, Bankruptcy, dissolution or liquidation of such Partner, or the withdrawal, removal or retirement from the Partnership of such Partner for any reason, including any Assignment of its Interest and those situations when a General Partner may no longer continue as a General Partner by reason of any law or pursuant to any terms of this Agreement.

\* \* \*

Each definition or pronoun herein shall be deemed to refer to the singular, plural, masculine, feminine or neuter as the context requires.  Words such as "herein," "hereinafter," "hereof," "hereto" and "hereunder," when used with reference to this Agreement, refer to this Agreement as a whole, unless the context otherwise requires.

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

## ARTICLE II

## **GENERAL**

2.1  <u>Continuation of the Partnership.</u>

A.  The Partnership shall be continued as a limited partnership pursuant to this Agreement.  The name of the Partnership shall continue to be "Peine Lakes, L.P." or such other name selected by the General Partner with the Consent of the Special Limited Partner as may be acceptable to the appropriate recording officials of the State.

B.  As soon after the execution of this Agreement as is practicable, the General Partner shall file (if required by the Uniform Act) an amendment to the Certificate thereto reflecting the provisions of this Agreement in accordance with the Uniform Act.  The General Partner shall from time to time file such other documents required by law to (i) effectuate and permit the continuation of the Partnership as a limited partnership under the laws of the State, (ii) enable the Partnership to do business in the State and (iii) protect the limited liability of the Investor Limited Partners under the laws of the State including the preparation and filing of such amendments to this Agreement and any other certificate, document or instrument as may be required under the laws of the State.  The Partners shall execute such certificates, documents and instruments and take such other action as may be necessary to enable the General Partner to fulfill its responsibilities under this Section 2.1.B.  The power of attorney granted in Section 14.2 hereof may be exercised by the General Partner to effect the provisions of this Section 2.1.B.

2.2  <u>Principal Office.</u>  The principal office of the Partnership shall be located at c/o Michael J. Hejna, 2458 Old Dorsett Road, Suite 110, St. Louis, Missouri, 63043.  The General Partner may maintain such other offices on behalf of the Partnership in the State as they may from time to time deem advisable.  The Partnership's books and records will be made available to the Investor Limited Partners or their representatives at its principal office for Partnership Purposes during normal business hours and upon at least three days prior notice.  The principal office of the Partnership may be changed by the General Partner, in which event written notice thereof shall be given by the General Partner to all the other Partners.

2.3  <u>Principal Place of Business; Registered Agent.</u>  The principal place of business of the Partnership shall be c/o Gundaker Commercial Group, Inc., 2458 Old Dorsett Road, Suite 110, St. Louis, Missouri 63043, Attn: Michael J. Hejna.  Michael J. Hejna, c/o Gundaker Commercial Group, Inc., 2458 Old Dorsett Road, Suite 110, St. Louis, Missouri 63043, has been appointed the Partnership's registered agent for the service of process in the State.

2.4  <u>Term</u>.   The Partnership shall continue in full force and effect until the dissolution and termination of the Partnership pursuant to Article XII hereof.

2.5  <u>Purpose.</u>

W669125.5

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

A. The specific business and purpose of the Partnership is investment in real property and the provision of low income housing through the Construction, operation and leasing of the Apartment Complex and any commercial space located therein, and in connection therewith, subject to and in accordance with the permission of each applicable Authority and all Governmental Agreements, to make and perform contracts and other undertakings and to engage in any and all activities and transactions as may be necessary or advisable in connection therewith, including, but not limited to, the purchase, transfer, mortgage, pledge and exercise of all other rights, powers, privileges and other incidents of ownership with respect to the Apartment Complex and to borrow money without limitation as to amount or manner and to carry on any and all activities related to any of the foregoing.

B. In order to carry out its business and purpose under Section 2.5.A hereof, subject to the terms and conditions hereof, the Partnership is hereby authorized to:

(i)  acquire, own, lease and sublease real property, and to hold such property for investment purposes;

(ii)  construct, renovate, rehabilitate, own, maintain and operate the Apartment Complex;

(iii)  mortgage, lease, transfer and exchange or otherwise convey and encumber such property and the improvements thereon (including conversion to cooperative or condominium form of ownership and the sale of apartment units) in furtherance of any and all of the objects of its business in connection with the Apartment Complex;

(iv)  enter into, perform and carry out contracts of any kind necessary to, or in connection with or incidental to, the construction, renovation, rehabilitation, ownership, financing, maintenance and operation of the Apartment Complex, including, but not by way of limitation, any contracts with any Authority which may be desirable or necessary to comply with the requirements of such Authority, including any agreements relating to regulations or restrictions contained in any Mortgages as to rents, sales, charges, capital structure, rate of return and methods of operation;

(v)  rent dwelling units and commercial space, if any, therein from time to time, collect the rents therefrom, pay the expenses incurred in connection therewith, and distribute the net proceeds, if any, to the Partners, subject to any requirements which may be imposed by any Authority;

(vi)  purchase, transfer, mortgage, pledge and exercise all other rights, powers, privileges and other incidents of ownership with respect thereto and borrow or raise money without limitation as to amount or manner and carry on any and all activities incidental and appropriate to effectuate the purposes of the Partnership; and

(vii)  take all other actions permitted by law.

W669125.5

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

# ARTICLE III

## **CAPITAL CONTRIBUTIONS**

3.1 <u>General Partner</u>.  The Capital Contribution of the General Partner is set forth in Schedule A.  The General Partner shall not be required to make any additional Capital Contributions to the Partnership except to the extent provided in Sections 3.7 and 6.1 hereof. The General Partner has received its Interest in the Partnership as consideration for locating the Land and obtaining the agreement of the Investor Limited Partners to invest in the Partnership.

3.2 [Intentionally Omitted].

3.3 <u>Special Limited Partner</u>.  The Capital Contribution of the Special Limited Partner is set forth in Schedule A.  The Special Limited Partner shall be in a different class from the Limited Partner and State Limited Partner and, except as otherwise expressly stated in this Agreement, shall not participate in any rights allocable to or exercisable by the Limited Partner under this Agreement.

3.4 <u>Limited Partner.</u>

A.  Subject to compliance with the terms and conditions hereinafter set forth, the Limited Partner has made and shall continue to make Capital Contributions of $5,647,000 payable in five installments (each an "Installment" and in the aggregate, the "Installments") as follows:

(i)  $1,129,400 (the "Initial Contribution") was previously made.

(ii)  $847,050 (the "Second Contribution" or "Second Installment") was paid on the Second Contribution Payment Date.

(iii)  $2,541,150 (the "Third Contribution" or "Third Installment") was paid on the Third Contribution Payment Date.

(iv)  $564,700 (the "Fourth Contribution" or "Fourth Installment") was paid on the Fourth Contribution Payment Date.

(v)  $564,700 (the "Fifth Contribution" or "Fifth Installment"), $256,614 of which was previously funded by the Limited Partner, and the remainder of which shall be payable upon the Fifth Contribution Payment Date.

B.  (i)  The amount of Limited Partner's Capital Contributions were determined in part upon the amount of Credits that are expected to be available to the Partnership and were based upon the assumption that the qualified basis of the Property will be sufficient to enable the Partnership to claim annual Credits of not less than $676,417 (not taking into account the provisions of Section 42(f)(2) of the Code).  The amount of the qualified basis of the Apartment

W669125.5

- 20 -

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

Complex will not be known until the end of the first year in which the Partnership initially claims Credits. Therefore, if the annual amount of Credits which the Partnership will be entitled to claim, as certified to the Limited Partner by the Accountants upon the Fourth Contribution Payment Date is (a) less than $676,417, the amount of the Fourth Contribution, shall be reduced by $0.86 for each $1.00 by which $676,214 exceeds the annual Credits which the Accountants certify upon the Fourth Contribution Payment Date that the Limited Partner will be entitled to claim (the "Downward Basis Adjuster"), or (b) more than $676,417, the amount of the Fourth Contribution shall be increased by $0.86 for each $1.00 by which the annual Credits which the Accountants certify upon the Fourth Contribution Payment Date that the Limited Partner will be entitled to claim exceeds $676,214, up to a maximum Credit increase of $67,641 per year. If the Limited Partner does not have funds available ("Available Funds") to increase its Capital Contribution in order to purchase in excess of the $67,641 additional annual Credit per year (the "Additional Credits") at the time of the notification of such increase, the Limited Partner may procure a third party to purchase the Additional Credits at a price no less than $0.86 for each $1.00 of Credits annually, which third party will act as a Class B Limited Partner. For these purposes, any funds theretofore previously earmarked by the Limited Partner to make other investments, or to be held as reserves, shall not be considered Available Funds. If [a] within 20 days from receipt of the Accountant's certification, the Limited Partner fails to increase its Capital Contribution in order to purchase the Additional Credits or [b] the Limited Partner fails to procure a third party which will purchase the Additional Credits at a price no less than $0.86 for each $1.00 of Credits and act as a Class B Limited Partner (which Class B Limited Partner shall have the right to receive the Adjusted Allocation (as defined below) but shall not have the right to exercise any other rights granted to the Investor Limited Partners under this Agreement or pursuant to the Uniform Act, except as may be required by the Uniform Act, and which Class B Limited Partner shall grant to the Special Limited Partner upon its admission to the Partnership its exclusive proxy to take any and all actions which may be taken by the Investor Limited Partners on behalf of the Class B Limited Partner), then, the General Partner shall have the right to require that the Limited Partner's percentage interest in allocations of Profits, Losses and Credits and distributions of Cash Flow and Sale or Refinancing Transaction Proceeds shall be decreased in proportion to the amount that the increased Capital Contribution not made by the Limited Partner above bears to the amount of Capital Contribution made by the Limited Partner (adjusted to include the increased Capital Contribution not paid by the Limited Partner), and such decrease (the "Adjusted Allocation") shall be reallocated to the General Partner or, with the Consent of the Special Limited Partner, an Assignee of the General Partner.

(ii) In addition to any other adjustment to Capital Contributions pursuant to Section 3.4.B(i), if the amounts of Credits which the Partnership will be entitled to claim in 2004, 2005, 2006 or 2007, as certified to the Limited Partner by the Accountants on the Fifth Contribution Payment Date, are less than $11,890 for 2004, or $345,475 for 2005, $662,765 for 2006, or $676,417 for 2007, the payment of the Fifth Contribution shall be reduced by $.71 for each dollar by which $11,887 for 2004, or $345,371 for 2005, $662,567 for 2006, or $676,214 for 2007, exceeds the amount of Credits allocated to the Limited Partner for 2004, 2005, 2006 or 2007 (the "Downward Timing Adjuster"). Conversely, in the event that the amount of Credits allocable to the Investor Limited Partner for 2004 is greater than $11,887, the Fifth Capital Contribution shall be increased by $0.50 for each dollar of Credits above such amount.

W669125.5

- 21 -

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

(iii)  The $11,887, $345,371, $662,567, and $676,214 amounts specified in Section 3.4.B(ii) and the $676,214 amount specified in Section 9.2.D shall be adjusted in proportion to any adjustment to the amount made pursuant to Section 3.4.B(i).  The $676,417 amount specified in Section 11.4.A shall be adjusted to the amount of Credits which the Accountants certify pursuant to Section 3.4.B(i) hereof.  The Partners hereby agree that, as of the date hereof, the $676,214 amount specified in Section 9.2D has been adjusted to a higher amount pursuant to the provisions of 3.4.B(i); such adjustment shall not prevent any future adjustments under this subsection.

(iv)  If the Special Limited Partner shall disagree as to the amount of Credits to which the Accountants certify upon the Fourth Contribution Payment Date, the Special Limited Partner shall notify the General Partner (with a copy to the State Limited Partner) of such disagreement within 20 days after delivery of such certification to the Limited Partner, and the Limited Partner shall pay that portion of the Fourth Contribution based on that portion of Credits not in dispute.  With respect to the amount of such Credits in dispute, within five days after the giving of the notice specified in this Section 3.4.B(iv), the General Partner and the Special Limited Partner shall each designate a certified public accountant as an arbitrator and such two arbitrators shall designate a third arbitrator (or if the first two arbitrators cannot agree upon a third arbitrator within 20 days, such third arbitrator shall be chosen by the American Arbitration Association).  The designation of arbitrators hereunder shall automatically delay the due date for payment of that portion of the Fourth Contribution in dispute until ten days after the conclusion of such arbitration (unless prior to the expiration of such period the General Partner and the Special Limited Partner agree upon the amount of Credits which the Partnership is entitled to claim).  Such arbitrators shall be directed to promptly conduct, at the expense of the Partnership, an arbitration to determine by majority vote the amount of Credits which the Partnership is entitled to claim on a basis that is prudent and defensible in light of the obligations of the Limited Partner to its investors.  Such arbitrators shall be directed to give notice of their determination within 60 days after the giving of the notice specified in this Section 3.4.B(iv), and upon the giving of such notice of determination the amount determined by majority vote of such arbitrators shall be deemed the amount of Credits which the Partnership is entitled to claim for all purposes hereof.  Upon the determination of the amount of Credits which the Partnership is entitled to claim, the amount of the Fourth Contribution, if any, remaining to be paid shall be adjusted accordingly.

(v)  To the extent that the adjustments to be made to the Limited Partner's Capital Contribution pursuant to this Section 3.4.B as calculated pursuant to Section 3.4.B are insufficient to compensate the Limited Partner for [a] any reductions to the amount of Credits anticipated to be claimed by the Limited Partner or [b] any delays in the anticipated timing for claiming such Credits as set forth in this Section 3.4.B, the General Partner shall be required to promptly repay such difference to the Limited Partner within thirty (30) days of written demand for such payment.  The repayment obligation of the General Partner pursuant to the preceding sentence shall be guaranteed by the Guarantor.

(vi)  Notwithstanding anything herein to the contrary, the Limited Partner acknowledges and agrees that it shall not enforce the provisions of Section 3.4.B until such time as the amount of any Downward Timing Adjuster exceeds, in the aggregate, $200,000.

W669125.5

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

(vii) The Partners agree that the Limited Partner, pursuant to the provisions of Section 3.4.B(i), has funded an additional $1,305,128 in additional Contributions and is increasing its Fifth Contribution by $139,989 as a result of the $138,157 in Additional Credits expected to be claimed by the Limited Partner annually. The Fifth Installment shall now total $704,689 (of which $256,614 was previously funded by the Limited Partner), and the total Capital Contributions of the Limited Partner shall equal $6,835,503; provided, however, that if the amount of Additional Credits expected to be claimed by the Limited Partner, as certified to the Limited Partner by the Accountants upon the Fourth Contribution Payment Date, is less than $138,157 annually, then the amount of the Fourth and/or Fifth Installments shall be reduced by $0.86 for each dollar of Additional Credits less than $138,157.

C. The Limited Partner's obligation to pay each Installment after the Initial Contribution is non-recourse to the Limited Partner except to the extent of (i) the Limited Partner's Interest, which shall be pledged as security for such obligation pursuant to a Pledge Agreement in substantially the form of Exhibit A attached hereto and (ii) the rights of the Partnership or any assignee under the Capital Note. The Limited Partner's obligation to make Deferred Contributions is subject to satisfaction of the respective conditions to such payments as are set forth in the Contribution Agreement.

D. The Limited Partner's Capital Contributions shall be applied first to the satisfaction of the costs of the Development Expenditures (subject to the consent of the Lender), and then to the payment of the Development Fee specified in Section 6.1 hereof.

3.5 Delivery of Capital Note.       The obligation of the Limited Partner to pay the Second, Third, Fourth and Fifth Contributions shall be evidenced by the delivery by the Limited Partner of the Capital Note on the Admission Date, in substantially the form of Exhibit B annexed hereto. After the Fifth Installment of its Capital Contribution has been paid by the Limited Partner, its Capital Note will be returned to it, marked "paid in full" and subject to any requirement of law that such payments be returned to the Limited Partner, shall constitute satisfaction in full of any obligations of the Limited Partner to make capital contributions to the Partnership.

3.6 Treatment of Other Advances.    If any Partner shall advance funds to the Partnership other than the amount of its Capital Contribution, the amount of such advance shall not be considered a contribution to the capital of the Partnership, but shall be deemed either an Operating Loan or a Voluntary Loan and shall be subject to the provisions of Section 4.4 hereof.

3.7 Capital Accounts; No Interest; Withdrawal.      No Partner shall have the right to demand a return of his Capital Contribution, except as otherwise provided in this Agreement. No Partner shall have priority over any other Partner, either as to return of its Capital Contribution or as to profits, losses or distributions, except as otherwise specifically provided herein. Moreover, except for any claim of rescission by reason of breach under the Contribution Agreement or State Contribution Agreement and except as provided in the Development Deficit Guaranty Agreement, no General Partner shall be personally liable for the return of the Capital Contribution of any Limited Partner or State Limited Partner, or any portion thereof, it being expressly understood that any such return shall be made solely from assets of the Partnership, nor shall any General Partner be required to pay the Partnership or any Partner any

W669125.5

- 23 -

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

deficit in its or any other Partner's Capital Account upon dissolution or otherwise, it being understood and agreed that any deficit in any Capital Account shall not be treated as an asset of the Partnership.  Further, neither any Limited Partner, any State Limited Partner nor any Special Limited Partner shall be required to pay to the Partnership any deficit in its Capital Account upon dissolution or otherwise, except as provided by law, with respect to third-party creditors of the Partnership; provided, however, that if the Special Limited Partner has a deficit balance in its Capital Account following the liquidation of its Interest, as determined after taking into account all adjustments to its Capital Account for the taxable year of the Partnership during which such liquidation occurs, the Special Limited Partner is unconditionally obligated to restore the amount of such deficit balance to the Partnership by the end of such taxable year, or, if later, within 90 days after the date of such liquidation.  No interest shall be paid on any Capital Account or Capital Contribution.  No Partner shall have the right to demand or receive property other than cash for its Interest.  Each of the Partners does hereby agree to, and does hereby, waive any right such Partner may otherwise have to cause any asset of the Partnership to be partitioned or to file a complaint or institute any proceeding at law or in equity seeking to have any such asset partitioned.  No Partner shall be entitled to any return of capital or distribution, upon withdrawal or otherwise, except as expressly set forth in this Agreement, the Contribution Agreement, the State Contribution Agreement, the State Development Deficit Guaranty Agreement or the Development Deficit Guaranty Agreement.

3.8  Liability of Limited Partners.    Neither any Special Limited Partner nor any Limited Partner nor any State Limited Partner shall be liable for any debts, liabilities, contracts or obligations of the Partnership, except as provided by law.  The Limited Partner, State Limited Partner and the Special Limited Partner shall be liable only to make payments of their Capital Contributions as and when due under this Agreement.

3.9  Provision of Other Amount.    The Partners acknowledge that, pursuant to the Contribution Agreement and the exhibits thereto and the State Contribution Agreement and the exhibits thereto, the General Partner is obligated to indemnify the Partnership against any and all liability in respect of any and all transfer, gains, income, sales or other taxes and transfer fees of any kind imposed or asserted with respect to the acquisition by the Investor Limited Partners of their Interests.  Such amounts shall not be deemed to be either a capital contribution or a loan from the General Partner, neither the Partnership nor any Investor Limited Partners shall be under any obligation to repay any such amount provided by the General Partner, and the provision of such amounts shall not affect the allocations and distributions provided for in Article IX hereof in any way whatsoever.

3.10  State Limited Partner.

A.  Subject to compliance with the terms and conditions hereinafter set forth, the State Limited Partner shall make Capital Contributions of $2,019,070 payable in five installments (each a "State Installment" and in the aggregate "State Installments") as follows:

(i)  $386,400 (the "Initial State Contribution") was previously made.

(ii)  $100,800 (the "Second State Contribution") was paid on the Second State Contribution Date.

W669125.5

- 24 -

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

(iii) $840,000 (the "Third State Contribution") was paid on the Third State Contribution Date.

(iv) $354,335 (the "Fourth State Contribution") shall be payable on the Fourth State Contribution Date.

(v) $337,535 (the "Fifth State Contribution") shall be payable on the Fifth State Contribution Date.

B. (i) The amount of the State Limited Partner's Capital Contributions was determined in part upon the amount of State Credits that are expected to be available to the Partnership, and was based upon the assumption that the Partnership would be eligible to recognize State Credits of no less than the Total State Credit Amount. The amount of the qualified basis of the Apartment Complex and the annual amount of the State Credits which the Partnership will be able to recognize with respect thereto will not be known until Cost Certification. Therefore, if the total amount of State Credits which the Partnership will be entitled to recognize and allocate to the State Limited Partner, as certified to the State Limited Partner by the Accountants upon Cost Certification (or a subsequent audit thereof), is (x) less than the Total State Credit Amount, then the amount of the Capital Contributions described in Section 3.10 hereof (beginning with the installment next due) shall be reduced by $0.30 for each $1.00 by which the Total State Credit Amount exceeds the total State Credits which the Accountants certify as aforesaid that the Partnership will be entitled to claim and allocate to the State Limited Partner or (y) more than the Total State Credit Amount, then the amount of the State Capital Note shall be increased (subject to the availability of funds) by $0.30 for each $1.00 by which the Total State Credit Amount is less than the total State Credits which the Accountants certify as aforesaid that the Partnership will be entitled to claim and allocate to the State Limited Partner. In the event the Partnership receives State Credits in excess of the Total State Credit Amount and the State Limited Partner (or any of its Affiliates) does not have funds available to purchase such State Credits (the "Additional State Credits"), the State Limited Partner's allocation of State Credits shall be reduced (and the General Partner's allocation of State Credits shall be increased by the same amount) to the percentage which allows the State Limited Partner to receive the return on its investment that was projected assuming no additional State Credits were received by the Partnership. Notwithstanding anything to the contrary herein, in the event a downward adjustment to the amount of the State Limited Partner's Capital Contributions is required hereunder or under the State Contribution Agreement in excess of the unpaid balance of the State Capital Note, then the Partnership shall reduce the State Limited Partner's Capital Contribution by making a distribution to the State Limited Partner in the amount described in clause (x) of this Section 3.10.B(i). The General Partner shall make a contribution to the Partnership in an amount sufficient to enable the Partnership to make the distribution required to the State Limited Partner pursuant to the preceding sentence. The amounts set forth on Exhibit A to the State Recapture Guaranty Agreement shall be revised to reflect the total amount of State Credits which the Accountants certify pursuant to Section 3.10.B.(i) hereof

(ii) [Intentionally Omitted].

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

(iii) If the State Limited Partner shall disagree as to the amount of State Credits to which the Accountants certify, the State Limited Partner shall notify the General Partner (with a copy to the Special Limited Partner) of such disagreement within 20 days after delivery of such certification to the State Limited Partner, and the State Limited Partner shall pay that portion of the Second State Contribution based on that portion of State Credits not in dispute. With respect to the amount of such State Credits in dispute, within five days after the giving of the notice specified in this Section 3.10.B(iii), the General Partner and the State Limited Partner shall each designate a certified public accountant as an arbitrator and such two arbitrators shall designate a third arbitrator (or if the first two arbitrators cannot agree upon a third arbitrator within 20 days, such third arbitrator shall be chosen by the American Arbitration Association). The designation of arbitrators hereunder shall automatically delay the due date for payment of that portion of the Second State Contribution in dispute until ten days after the conclusion of such arbitration (unless prior to the expiration of such period the General Partner and the State Limited Partner agree upon the amount of State Credits which the Partnership is entitled to claim). Such arbitrators shall be directed to promptly conduct, at the expense of the Partnership, an arbitration to determine by majority vote the amount of State Credits which the Partnership is entitled to claim on a basis that is prudent and defensible in light of the obligations of the State Limited Partner to its investors. Such arbitrators shall be directed to give notice of their determination within 60 days after the giving of the notice specified in this Section 3.10.B(iii), and upon the giving of such notice of determination the amount determined by majority vote of such arbitrators shall be deemed the amount of State Credits which the Partnership is entitled to claim for all purposes hereof. Upon the determination of the amount of State Credits which the Partnership is entitled to claim, the amount of the State Installments remaining to be paid shall be adjusted accordingly.

(iv) The Partners agree that the State Limited Partner, pursuant to the provisions of Section 3.10B(i), is increasing its total State Installments by $339,070 as a result of the $1,000,000 in Additional State Credits expected to be claimed by the State Limited Partner annually, and such increase is reflected in the State Installment amounts in Section 3.10A.

(C). The State Limited Partner's obligation to pay each Installment after the Initial State Contribution is non-recourse to the State Limited Partner except to the extent of (i) the State Limited Partner's Interest, which shall be pledged as security for such obligation pursuant to a State Pledge Agreement in substantially the form of Exhibit A-1 attached hereto and also pledged to the State Limited Partner's warehouse lender as set forth in Section 10.1.D hereof and (ii) the rights of the Partnership or any assignee under the State Capital Note.

(D). The obligation of the State Limited Partner to pay the Second State Contribution shall be evidenced by the delivery by the State Limited Partner of the State Capital Note on the Admission Date, in substantially the form of Exhibit B-1 annexed hereto. After the Second State Contribution has been paid by the State Limited Partner, its State Capital Note will be returned to it, marked "paid in full" and subject to any requirement of law that such payments be returned to the State Limited Partner, shall constitute satisfaction in full of any obligations of the State Limited Partner to make capital contributions to the Partnership.

(E). **[Intentionally Omitted]**

W669125.5

- 26 -

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

(F). To the extent that the adjustments to be made to the State Limited Partner's Capital Contribution pursuant to this Section 3.10 as calculated pursuant to Section 3.10 are insufficient to compensate the State Limited Partner for [a] any reductions to the amount of State Credits anticipated to be claimed by the State Limited Partner or [b] any delays in the anticipated timing for claiming such State Credits as set forth in this Section 3.10, the General Partner shall be required to promptly repay such difference to the State Limited Partner within ten (10) days of written demand for such payment.

W669125.5

ARTICLE IV

## COMPLIANCE WITH AUTHORITY REQUIREMENTS; PARTNERSHIP BORROWINGS

4.1 <u>Authority Requirements</u>.          During the Compliance Period, the following provisions shall apply:  (i) each of the provisions of this Agreement shall be subject to, and the General Partner covenants to act in accordance with, the Credit Conditions and to act in accordance with all applicable Federal, state and local laws and regulations; (ii) the Credit Conditions and all such laws and regulations, as amended or supplemented, shall govern the rights and obligations of the Partners, their heirs, executors, administrators, successors and assigns, and they shall control as to any terms in this Agreement which are inconsistent therewith, and any such inconsistent terms in this Agreement shall be unenforceable by or against any of the Partners; (iii) upon any dissolution of the Partnership or any transfer of the Apartment Complex, no title or right to the possession and control of the Apartment Complex and no right to collect rent therefrom shall pass to any Person who is not, or does not become, bound by the Credit Conditions in a manner that, in the opinion of counsel to the Partnership, would not adversely affect the ability of the owner(s) of the Apartment Complex to utilize the Credits and the State Credits or avoid a recapture thereof; and (iv) any conveyance or transfer of title to all or any portion of the Apartment Complex required or permitted under this Agreement shall in all respects be subject to the Credit Conditions and all conditions, approvals or other requirements of the rules and regulations of any Authority applicable thereto.

4.2 <u>Authorization to the General Partner.</u>

A. Without in any way limiting the right or authority of the General Partner under this Article IV or Article V hereof, the General Partner is specifically authorized to execute all documents required by any Authority or any Lender in connection with the acquisition, construction or financing of the Apartment Complex; provided that the terms and conditions of the related Governmental Agreement in connection with the granting of Credits and/or Mortgage and Mortgage Note were disclosed to the Limited Partner and State Limited Partner pursuant to the Contribution Agreement and State Contribution Agreement or such requirement arises out of an amendment to such Governmental Agreement, Mortgage or Mortgage Note made with the Consent of the Special Limited Partner which consent shall not unreasonably be withheld. Further, the General Partner is hereby authorized to amend this Agreement without the consent of the Limited Partner or the Special Limited Partner to effectuate any amendments required by any Authority or any Lender pursuant to applicable law and/or the terms and conditions of a Governmental Agreement and/or Mortgage and Mortgage Note, provided that the terms and conditions whereof were disclosed to the Limited Partner and State Limited Partner pursuant to the Contribution Agreement and State Contribution Agreement or such requirement arises out of an amendment to such Governmental Agreement, Mortgage or Mortgage Note made with the Consent of the Special Limited Partner.  The General Partner may exercise the power of attorney granted in Section 14.2 hereof to effect the provisions of this Section 4.2.

W669125.5

- 28 -

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

B.  The General Partner shall, at no time, do or cause to be done any act directly or indirectly affecting the Apartment Complex except pursuant to the requirements of each Authority if such approval is required.

### 4.3  Right to Mortgage.

A.  The Partnership has obtained financing for the Construction and acquisition of the Apartment Complex and has secured the same by the Mortgage securing the Loans.  Except for (i) the usual and customary exceptions to non-recourse loans as may be specifically set forth in the Mortgage securing the Loans and (ii) the completion guarantees specifically set forth in the Loans, each and every loan secured by the Mortgage which has been or shall be entered into by the Partnership provides and shall continue to provide that no Person, including, but not limited to, the Partnership, any party holding a partnership interest in the Partnership, or any of their Affiliates, shall have any personal liability for the payment of all or any part of the debt secured by such Mortgage.

B.  The execution by the General Partner on behalf of the Partnership of the Project Documents is hereby ratified.

C.  The General Partner may modify, refinance or repay the debt secured by the Mortgage with the approval of each Lender and each Authority, if required, including without limitation any required transfer or conveyance of Partnership assets for security or mortgage purposes; provided, however, that the terms of any such modification, refinancing or repayment must receive the Consent of the Special Limited Partner before such transaction shall be binding on the Partnership.

4.4  Loans.     All borrowings by the Partnership shall be subject to the terms of this Agreement, the Project Documents and applicable rules, regulations and directives of any Authority.  To the extent borrowings are permitted, they may be made from any source, including any Partner or an Affiliate thereof; provided, however, that any borrowings from the General Partner or its Affiliates shall require the Consent of the Special Limited Partner, which consent shall not be unreasonably withheld or delayed.  The Limited Partner or Special Limited Partner may make Voluntary Loans to the Partnership with the consent of the General Partner, which consent shall not be unreasonably withheld, provided, however, any Voluntary Loan made by the Limited Partner which is made for the purpose of curing any default under a Mortgage or paying any fine or penalty assessed against the Apartment Complex shall not require the consent of the General Partner.  The Limited Partner shall notify the General Partner prior to making a Voluntary Loan.  Except as may be otherwise specifically set forth in this Agreement, if any Partner or Affiliate thereof shall lend any monies to the Partnership, such loan shall be unsecured and the amount of any such loan shall not be an increase of such Partner's Capital Contribution nor affect in any way such Partner's share of the profits and losses or distributions of the Partnership.  Any loan by a Partner or its Affiliate, other than an Operating Loan, shall be a Voluntary Loan, shall bear interest per annum at a rate equal to two percent in excess of the Prime Rate (but not in excess of the lawful maximum rate) and shall be repayable as set forth in Article IX hereof (to the extent permitted by each Authority), but in any event only out of the assets of the Partnership; provided, however, that any Voluntary Loan shall be made solely for the benefit of the Partnership.  No Voluntary Loans by the General Partner or its Affiliates may

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

be made to the Partnership without the consent of the Special Limited Partner which consent shall not be unreasonably withheld so long as the Guarantor is obligated to make Operating Loans to the Partnership pursuant to the Operating Deficit Guaranty Agreement.

4.5  Related Development Cost Loan.        If funds in excess of the Gundaker Loan are required to pay Development Deficits, then the Limited Partner or the Special Limited Partner shall make a loan to the Partnership in an amount not to exceed $200,000 for the purpose of funding such Development Deficits (a "Related Development Cost Loan"). Each advance on the Related Development Cost Loan shall bear interest at the long-term AFR in effect at the time of such advance, and shall be repaid out of Cash Flow in the priority set forth in Section 9.2A hereof.

4.6  Additional Development Deficit Loans. If, after funding of the Gundaker Loan and the Related Development Cost Loan, a Development Deficit still exists, then the General Partner may fund such Development Deficit by making an additional loan to the Partnership.  In addition, the General Partner may request that the Limited Partner (or an Affiliate) also fund such Development Deficits by making an additional loan to the Partnership. If such a request is made, then (i) the Limited Partner (or an Affiliate) shall loan $1.00 for every $1.00 loaned by the General Partner pursuant to this Section 4.6, and (ii) the provisions of the Collateral Assignment shall apply.  Such loans shall be termed "Additional Development Deficit Loans", shall bear interest at the long-term AFR then in effect, and shall be repaid out of Cash Flow in the priority set forth in Section 9.2A hereof.  If the General Partner declines to fund any such Development Deficit, then the provisions of the Collateral Assignment shall apply.  For purposes of this Section 4.6, the definition of "Development Deficit" in the Development Deficit Guaranty Agreement shall be revised by deleting the phrase "Break-Even Date" and inserting in its place the phrase "Stabilization, as that term is defined in the Bond Loan Documents".  Furthermore, if there is a mandatory redemption of the Bonds pursuant to Section 4.01b of the Trust Indenture, then the payment of such mandatory redemption shall be made pursuant to a Development Cost Loan under this Section 4.6.

W669125.5

ARTICLE V

## RIGHTS, POWERS AND OBLIGATIONS OF THE
## GENERAL PARTNERS AND LIMITATIONS THEREON

5.1 Exercise of Management. The overall management and control of the business, assets and affairs of the Partnership shall be vested in the General Partner and, subject to the specific limitations and restrictions set forth in this Article V and in Article IV hereof, the General Partner, in extension of and not in limitation of the powers given it by law, shall have full, exclusive and complete charge of the management of the business of the Partnership in accordance with its purpose stated in Section 2.5 hereof. Neither any Special Limited Partner nor any Limited Partner nor any State Limited Partner shall take part in the management or control of the business of the Partnership or have authority to bind the Partnership; provided, however, that the Special Limited Partner may exercise any and all of the rights granted to it under this Agreement. In the event there shall be more than one General Partner, the Special Limited Partner shall appoint (after consultation with the State Limited Partner, which consultation shall not last longer than five business days) from such of them the Managing General Partner. In the event there shall be no general partners, the Person who becomes general partner if the Partnership is continued shall become the General Partner.

5.2 Duties and Authority of General Partner.

A. The General Partner shall devote to the Partnership such time as may be necessary for the proper performance of the duties of the General Partner. The General Partner shall at all times exercise its responsibilities as General Partner in a fiduciary manner. The signature of a General Partner shall be needed on any instrument, document or agreement to bind the Partnership, and third parties may rely fully on any such instrument, document or agreement signed by a General Partner. The Limited Partner and Special Limited Partner agree to deliver such certificates or affidavits as may be requested by the General Partner affirming that actions taken or to be taken by the General Partner which are authorized under this Agreement have been so authorized. Subject to the terms and conditions hereof, the General Partner shall be obligated, and is hereby authorized and directed, to:

(i) Take all commercially reasonable actions that may be necessary or appropriate to carry out the purposes of the Partnership as described in this Agreement;

(ii) Cause the Partnership to acquire the Land and obtain the Credits and State Credits;

(iii) Arrange for the permanent financing of the Apartment Complex and syndication of the Credits and State Credits;

(iv) Make inspections of the Apartment Complex and make commercially reasonable efforts to assure that the Apartment Complex is being properly maintained in accordance therewith and necessary repairs are being made;

W669125.5

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

(v)  Prepare or cause to be prepared in conformity with good business practice all reports that are to be furnished to the Partners or that are required by taxing bodies or other governmental agencies, including operations reports of the Apartment Complex or by or on behalf of the General Partner, and the financial statements and reports referred to in Section 7.3 hereof;

(vi)  Cause the property of the Partnership at all times to be insured in a manner similar to other property of like kind in the same locality and in such amounts and on such terms as agreed upon under the Contribution Agreement (provided that such insurance must be in an amount at least sufficient to satisfy the provisions of Section 5.11 hereof), but, in any event, no less than that required under the Project Documents nor less than that existing as of the Admission Date;

(vii)  Obtain and maintain in force or cause to be obtained and maintained in force Worker's Compensation Insurance and such other insurance as may be required by applicable law or governmental regulation, but, in any event, no less than that required under the Project Documents;

(viii)  Obtain and maintain in force or cause to be obtained and maintained in force public liability insurance in amounts agreed upon pursuant to the Contribution Agreement; but, in any event, no less than that required under the Project Documents nor less than that existing as of the Admission Date;

(ix)  Comply with all Governmental Agreements;

(x)  Promptly report to the Investor Limited Partners any (a) material variance from the qualification standards for Credits or State Credits of which the General Partner becomes aware or (b) failure to comply with the Governmental Agreements which would give rise to any event specified in Section 11.4.A(ii)(a) hereof of which the General Partner becomes aware; and

(xi)  Do all other things (subject to the restrictions contained herein) that the General Partner may deem necessary or desirable in order properly and efficiently to administer and carry on the affairs, assets and business of the Partnership, including, but not limited to, the execution of all conveyances, deeds, notes, mortgages or other documents.

B.  The General Partner shall use its best efforts to operate the Apartment Complex and shall cause the Management Agent to manage the Apartment Complex in such a manner that the Apartment Complex will be eligible to receive Credits and State Credits with respect to not less than 100% of the apartment units in the Apartment Complex (such units being referred to herein as the "Eligible Units").  To that end, the General Partner agrees, without limitation, to make all elections requested by the Special Limited Partner under Section 42 of the Code to allow the Partnership or its Partners to claim the Credits, and to make all elections requested by the State Limited Partner under Chapter 135 of the Missouri Revised Statutes to allow the Partnership or its Partners to claim the State Credits, to file Form 8609 and the State Eligibility Certificate with respect to the Apartment Complex as required, to operate the Apartment Complex and cause the Management Agent to manage the Apartment Complex so as

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

to comply with the requirements of Sections 42(g) and 42(i)(3) of the Code, and to make all certifications required by Section 42 of the Code.

    C.  The General Partner agrees that it shall prepare or cause to be prepared an annual budget in the form of Exhibit C annexed hereto in connection with the operations of the Apartment Complex for each succeeding fiscal year of the Partnership and shall deliver the same to the Special Limited Partner (with a copy to the State Limited Partner) not later than November 15 of the fiscal year preceding the fiscal year to which such budget relates. Each such budget shall contain an amount to be added to separate reserves for payment of real estate taxes, insurance and replacements in an amount with respect to each such reserve equal to the greater of (i) the amount required to be added to such reserve during such year by any Lender or (ii) the amount that is reasonable in the circumstances, which, in the case of the reserve for replacements, shall not be less than $6,400 per month, (less such amounts as may be required by a Lender or Authority to be set aside as reserves for such purpose). Such budget shall not be adopted until the Special Limited Partner shall have approved the same in writing; provided, however, that if a Budget for a fiscal year of the Partnership is delivered to the Special Limited Partner and the Special Limited Partner does not approve such Budget prior to the start of such fiscal year, the Budget for the prior fiscal year increased in each line item by the increase in the national Consumer Price Index calculated from the beginning of the then current fiscal year shall be deemed to be the Budget for such fiscal year deemed approved by the Special Limited Partner unless and until the Special Limited Partner notifies the General Partner in writing (with a copy to the State Limited Partner) that it has approved such Budget, as the same may be modified by the General Partner and approved by the Special Limited Partner. Notwithstanding anything to the contrary contained herein, the Partnership shall not make any expenditure of funds, or commit to make any such expenditure, other than in response to an emergency, except as provided for in an annual budget so approved or deemed approved by the Special Limited Partner; provided, however, that the General Partner shall have the authority to cause the Partnership to expend in any fiscal year of the Partnership on any group of line items which form a major category on a budget approved by the Special Limited Partner under this Section 5.2.C with respect to such fiscal year, an amount equal to 115% of the amount provided on such budget for such group on any or all items within that group during such fiscal year without seeking the further approval of the Special Limited Partner.

    D.  The General Partner shall cause the Partnership to deposit into a reserve for replacements each month starting with the month following the Break-Even Date the amount of $6,400, less such amount as shall be required to be set aside (and is actually set aside) for such purpose by any Lender (the "Mandatory Reserve"); provided, however, that in the event that with respect to any month after the termination of the Guaranty Period and prior to the end of the Compliance Period the Partnership does not have Cash Flow (as determined prior to any reduction for amounts allocated to reserves) available to make the required deposit in the Mandatory Reserve, the Guarantor shall, pursuant to and subject to the limitations contained in the Replacement Reserve Guaranty Agreement, make such deposit on behalf of the Partnership as an Operating Loan repayable pursuant to Article IX hereof. Any interest earned on the reserve for replacements shall become a part of that reserve. Anything to the contrary contained in Section 7.1 hereof notwithstanding, the reserve for replacements shall be maintained in the name of the Partnership in an account with a bank acceptable to the Special Limited Partner, and withdrawals from such account shall require the approval of the Special Limited Partner. The

W669125.5

General Partner shall cause the Partnership to deliver to the Special Limited Partner (with a copy to the State Limited Partner) a copy of the monthly statements received with respect to that account.

### 5.3  Delegation of General Partner's Authority; Tax Matters Partner.

A.  The General Partners hereby delegate all of their powers to the Managing General Partner.  For all purposes of this Agreement, including, without limitation, the delivery of certificates and the granting or withholding of all consents and approvals, the Managing General Partner shall have the sole right to act in the name of and on behalf of the General Partners and the Partnership.  Subject to the terms and conditions hereof, the Managing General Partner is hereby fully authorized, without the requirement of any act or signature of the other Partners, to take any action of any type and to do anything and everything which a general partner of a limited partnership organized under the Uniform Act may be authorized to take or do thereunder, and specifically, without limitation of such authority, to execute, sign, seal and deliver in the name and on behalf of the Partnership:

(i)  any note, mortgage, commitment, application or other instrument or document in connection with the Mortgage, the Mortgage Note or any Governmental Agreement, and all other agreements, contracts, certificates, instruments or documents required by any Authority and/or any Lender in connection therewith or with the acquisition, development, construction, improvement, operation or leasing of the Apartment Complex or otherwise required by any Authority and/or any Lender under the Project Documents in connection with the Apartment Complex;

(ii)  any deed, lease, mortgage, mortgage note, bill of sale, contract or any other instrument purporting to convey or encumber the real or personal property of the Partnership;

(iii)  any rent supplement or leasing or other contract or agreement providing for public or non-public financial assistance, directly or indirectly, to tenants of the Apartment Complex;

(iv)  any and all agreements, contracts, documents, certificates and instruments whatsoever involving the acquisition, financing, development, construction, construction, improvement, management, maintenance, leasing and operation of the Apartment Complex, including the employment of such Persons as may be necessary therefor; and

(v)  any and all instruments, agreements, contracts, certificates or documents requisite to carrying out the intention and purpose of this Agreement, including, without limitation, the filing of all business certificates, this Agreement and all amendments thereto, and documents required pursuant to the Project Documents or by any Authority and/or any Lender or deemed advisable by the Managing General Partner in connection with any financing.

B.  Every contract, agreement, certificate, document or other instrument executed by the Managing General Partner shall be conclusive evidence in favor of every person relying thereon or claiming thereunder that, at the time of the delivery thereof, (i) the Partnership was in

W669125.5

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

existence, (ii) this Agreement had not been terminated or canceled or amended in any manner so as to restrict such authority (except as shown in any instrument duly filed in the Filing Office) and (iii) the execution and delivery thereof was duly authorized. Any Person dealing with the Partnership or the Managing General Partner may always rely on a certificate signed by the Managing General Partner hereunder:

    (a) as to who are the Partners hereunder;

    (b) as to the existence or nonexistence of any fact or facts which constitute conditions precedent to acts by the General Partner or are in any other manner germane to the affairs of the Partnership;

    (c) as to who is authorized to execute and deliver any instrument, contract, agreement, certificate or document for the Partnership;

    (d) as to the authenticity of any copy of this Agreement and amendments thereto; or

    (e) as to any act or failure to act by the Partnership or as to any other matter whatsoever involving the Partnership or the Apartment Complex.

C. The Partners hereby consent to the exercise by the Managing General Partner of the powers conferred on it by this Agreement.

D. All of the Partners hereby agree that the Managing General Partner shall be the "Tax Matters Partner" pursuant to the Code and in connection with any audit of the Federal income tax returns of the Partnership; provided, however, that if the Managing General Partner shall withdraw from the Partnership, become Bankrupt or be dissolved or if it shall be determined that the Managing General Partner cannot serve as Tax Matters Partner, the Special Limited Partner shall thereafter have the right to designate itself or any other General Partner as the "Tax Matters Partner." So long as a General Partner is the Tax Matters Partner, in discharging its duties and responsibilities, it shall act as a fiduciary to the Investor Limited Partners and shall obtain the Consent of the Special Limited Partner, which Consent shall not be unreasonably withheld or delayed, in connection with all material decisions and determinations to be made by the Partnership with respect to income tax matters including decisions to be made in each administrative and judicial proceeding in which the Partnership is a party and all elections to be made by the Partnership in connection therewith and shall obtain the Consent of the State Limited Partner, which Consent shall not be unreasonably withheld or delayed, in connection with all corresponding State income tax matters.

E. So long as a General Partner is the Tax Matters Partner, the Special Limited Partner shall have the right to determine to litigate any administrative determination relating to Federal income tax matters, and shall have the right to litigate such matter in such court and to settle such matters as the Special Limited Partner shall decide in its sole discretion, provided, however, that if the settlement of any such matter would require the General Partner to make any payments or result in any reallocation of Cash Flow or Sale or Refinancing Proceeds under Section 9.2.D (an "Adjustment Event"), such settlement shall require the consent of the General Partner and the State Limited Partner (but only to the extent that the allocation of State Credits

W669125.5

- 35 -

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

would be affected) which consent shall not be unreasonably withheld.  Notwithstanding the foregoing, if there is any litigation which would, if unfavorably determined, result in an Adjustment Event or require the payment of any amounts under the Recapture Guaranty Agreement or State Recapture Guaranty Agreement and the General Partner provides reasonable assurances to the Special Limited Partner and the State Limited Partner that it has the ability to pay any costs or damages of such litigation and acknowledges its liability in the event of an unfavorable determination, the Special Limited Partner and State Limited Partner agree (i) not to exercise its right to settle such litigation and (ii) to allow the General Partner to control the course of such litigation at its own expense, with counsel reasonably satisfactory to the Special Limited Partner and State Limited Partner, including negotiation and settlement of such litigation, provided the Special Limited Partner and State Limited Partner shall have the right to reasonably consent to the any settlement of such litigation.

5.4  Lease, Conveyance or Refinancing of Assets of the Partnership.

A.  Except as may be otherwise expressly provided in Section 4.1 hereof and elsewhere in this Agreement, the General Partner, with the approval of each Authority (if required), is hereby authorized to sell, lease, sublease, exchange, refinance or otherwise transfer, convey or encumber all or substantially all of the assets of the Partnership; provided, however, that the terms of any such sale, exchange, refinancing or other transfer, conveyance or encumbrance of the Property must receive the Consent of the Special Limited Partner before such transaction shall be binding on the Partnership.  Notwithstanding the foregoing, no such consent shall be required for the leasing of apartments to residential tenants in the normal course of operations, the leasing of all or substantially all of the apartments to a public housing authority at rents satisfactory to each Authority or leases or concessions of facilities related to the operation of the Apartment Complex (including but not limited to the leasing of laundry machines).

B.  Notwithstanding any provision of this Agreement to the contrary, the provisions of this Section 5.4.B shall apply if, in order to claim Credits or State Credits with respect to the Apartment Complex, the Partnership is required by applicable law or any Project Document to comply with the procedure specified in the next sentence as a condition of the right of the Partnership to dispose of the Apartment Complex free of the restrictions imposed thereby to continue to lease apartment units to low-income tenants (as defined in such law or document) unless such right has been waived by the General Partner or the Partnership.  Subject to the rights of the General Partner under the Purchase Option Agreement, attached to the Contribution Agreement as Exhibit O (the "**Purchase Option**"), the Special Limited Partner shall have the right at any time after the beginning of the last year of the Compliance Period to require, by written notice to the General Partner (with a copy to the State Limited Partner), that the General Partner promptly submit a written request to the applicable state housing credit agency pursuant to Section 42(h)(6)(I) of the Code that such agency endeavor to locate within one year from the date of such written request a purchaser for the Apartment Complex who will continue to operate the Apartment Complex as a qualified low income property, at a purchase price that is not less than the sum of (a) the outstanding balance of all Mortgage Notes plus (b) the Partnership's equity in the Apartment Complex (adjusted for cost of living increases as permitted by Section 42(h)(6)(G) of the Code).  In the event that the state housing credit agency obtains an offer satisfying the conditions of the preceding sentence, the General Partner shall promptly notify the

W669125.5

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

Special Limited Partner (with a copy to the State Limited Partner) in writing with respect to the terms and conditions of such offer, and, if the Special Limited Partner notifies the General Partner (with a copy to the State Limited Partner) that such offer should be accepted, if the General Partner has chosen not to exercise its Purchase Option, the General Partner shall cause the Partnership promptly to accept such offer and to proceed to sell the Apartment Complex pursuant to such offer or the General Partner shall have the right exercisable upon sixty days notice of receipt of the offer of such buyer, to purchase the Apartment Complex on the same terms and conditions as such offer, in which event the General Partner shall purchase the Apartment Complex within 180 days following its delivery of the notice of its exercise of such right on the terms and conditions set forth in the offer and subject to any restrictions, including affordable housing restrictions.

C.   (i)   Subject to the provisions of Section 5.4.B hereof, but notwithstanding any other provision of this Agreement to the contrary, the Special Limited Partner shall have the right at any time after the first anniversary following the end of the Compliance Period to require, by written notice to the General Partner (with a copy to the State Limited Partner) (the "Required Sale Notice"), that the General Partner promptly use its commercially reasonable efforts to obtain a buyer for the Apartment Complex on the most favorable terms then obtainable.  The General Partner shall submit the terms of any proposed sale to the Special Limited Partner (with a copy to the State Limited Partner) for its approval as provided in Section 5.4.A hereof.  If the General Partner shall fail to so obtain a buyer for the Apartment Complex within one year of the Required Sale Notice or if the Special Limited Partner in its reasonable discretion shall withhold its consent to any proposed sale to such buyer, then the Special Limited Partner shall have the right at any time thereafter to obtain a buyer for the Apartment Complex on terms acceptable to the Special Limited Partner (but not less favorable to the Partnership than any proposed sale previously rejected by the Special Limited Partner).  In the event that the Special Limited Partner so obtains a buyer, it shall notify the General Partner (with a copy to the State Limited Partner) in writing with respect to the terms and conditions of the proposed sale and the General Partner shall cause the Partnership promptly to sell the Apartment Complex to such buyer or the General Partner shall have the right exercisable upon sixty days notice of receipt of the offer of such buyer, to purchase the Apartment Complex on the same terms and conditions as such offer, in which event the General Partner shall purchase the Apartment Complex within 120 days following its exercise of such right on the terms and conditions set forth in the offer.  Any sale under this Section 5.4.C shall be made subject to any other then existing rights of tenants under applicable law.  Notwithstanding the foregoing, upon the receipt of any such offer, the General Partner shall have the right to object to any such sale if the net proceeds from such sale would be insufficient to return to the General Partner all of its Capital Contributions (including any amount required to be paid upon such sale) and pay any federal and state taxes owed by the General Partner as a result of such sale, or on the grounds that the purchase price for the Apartment Complex is below the fair market value of the Apartment Complex (taking into account the burdens of any restrictions imposed by the Authority and any benefits of any below market financing encumbering the Property).  In such event, the General Partner shall not be required to sell the Apartment Complex on the terms of such offer or any subsequent offer presented by the Special Limited Partner unless its purchase price is at least equal to the fair market value.  If there is a dispute as to fair market value, then such value shall be determined by appraisal, as follows:

W669125.5

- 37 -

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

(a) The Special Limited Partner shall select an independent real estate appraiser and the General Partner shall select another independent real estate appraiser within 30 days after the need for such appraisal arises. If either party fails to appoint a real estate appraiser within ten days after the other party has given notice of the name of its real estate appraiser, the single real estate appraiser appointed shall be the sole appraiser and shall establish the fair market value of the Partnership's assets. If the two real estate appraisers are appointed by the parties as above provided, they shall meet promptly and attempt to establish the fair market value of the Apartment Complex.

(b) The fair market value of the Apartment Complex shall be the average of the appraisals rendered by each of the two real estate appraisers so selected; provided, however, that if one of the appraisals so rendered shall reflect a fair market value that is more than 10% greater or more than 10% less than the other appraisal so rendered, the two real estate appraisers shall promptly select a third independent real estate appraiser (or, if such real estate appraisers cannot agree on the selection of a third independent real estate appraiser, the third real estate appraiser shall be selected by (i) the senior (in terms of service) judge of the United States District Court located in St. Louis or (ii) the President of the St. Louis Chapter of the American Arbitration Association upon application by either the Special Limited Partner or the General Partner), which real estate appraiser shall establish fair market value hereunder by designating the appraisal of the real estate appraiser of the Special Limited Partner or the General Partner as fair market value.

(c) Any real estate appraiser engaged to render an appraisal hereunder must be experienced in valuing real estate such as the Apartment Complex. Each party will bear the expenses of its own real estate appraiser, and the Special Limited Partner shall bear 50% and the General Partner shall bear 50% of the expenses incurred in engaging a third real estate appraiser.

(ii) A sale of the Apartment Complex prior to the end of the Compliance Period may only take place if the conditions of Section 42(j)(6) of the Code will be satisfied upon such sale either (a) by having the purchaser of the Apartment Complex post the required bond on behalf of the Partnership or (b) with the Consent of the Special Limited Partner, having the Partnership post such bond.

(iii) At any time after the end of the 10 year State Credit period, (a) the State Limited Partner shall have the right to put its Interest to the General Partner and the General Partner shall then be required to, within thirty (30) days of such notice, purchase the Interest of the State Limited Partner for $100 and (b) the General Partner shall have the right to purchase the Interest of the State Limited Partner and the State Limited Partner shall, within thirty (30) days of such notice, sell its Interest to the General Partner for fair market value. Fair market value for purposes of this Section 5.4C(iii) shall be shall be determined by valuing the estimated cash flow, excluding capital proceeds, to be received by State Limited Partner pursuant to the Partnership Agreement in its capacity as Partner (using actual income and expenses for the prior calendar year, and using an appropriate time value of money discount rate reasonably acceptable to State Limited Partner, but not more than 12%), from the date of Admission through the end of the Partnership's term, taking into consideration (x) use of the income approach to valuation based upon the actual rental income received by the Partnership

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

(and not comparable sales method of valuation), and (y) use of an aggregate valuation and marketability discount rate (of not more than 12%) for interest illiquidity, any restrictions on transferability and any minority non-voting characteristics thereof.  In the event the General Partner and State Limited Partner cannot agree on a fair market valuation of the State Limited Partner's Interest, then the State Limited Partner and General Partner shall select an independent third party appraiser, who shall determine the fair market value of the State Limited Partner's Interest using the above-referenced methods.

D.  In the event that any proposed purchaser of the Apartment Complex has required that in lieu of acquiring fee title to the Apartment Complex such purchaser desires to acquire the partnership interests of the Partners, the Partnership may compel the Partners to convey their Interests to such purchaser, provided that the Investor Limited Partners are paid in cash an amount at least equal to the amount they would have received had the Apartment Complex been sold and the Partnership was liquidated in accordance with Article XII hereof and the Investor Limited Partners are not required to make any representations other than that their ownership of their Interests are free and clear of liens, claims and encumbrances (other than under this Agreement) and they have authority to sell their Interests.

5.5  Restrictions on Authority.  Notwithstanding any other provisions of this Agreement:

A.  No General Partner shall have authority to perform any act in violation of any applicable laws or regulations, the Project Documents or any agreement between the Partnership and any Authority or any Lender, or to take any action which under the Uniform Act or this Agreement requires the approval, ratification or consent of some or all of the Partners without first obtaining such approval, ratification or consent, as the case may be.

B.  The General Partner shall not have authority to do any of the following acts, except with the Consent of the Special Limited Partner (such Consent to be granted only after consultation with the State Limited Partner, which consultation shall not last longer than two business days, it being agreed that if the Special Limited Partner and State Limited Partner disagree, then the determination of the Special Limited Partner shall control) which consent in the case of (i) or (ii) shall not be unreasonably withheld and the approval, to the extent required, of any Authority and any Lender, and the reasonable approval of the State Limited Partner in the case of (iv), (x), (xii), (xiv) or (xv) (but only as (xv) pertains to the State Credits):

(i)  acquire any real or personal property (tangible or intangible) in addition to the Apartment Complex the aggregate value of which shall exceed $10,000 or as otherwise provided in the Budget (other than easements or similar rights necessary or appropriate for the operation of the Apartment Complex);

(ii)  except as provided herein, become personally liable on or in respect of, or guarantee, a Mortgage Note or a Mortgage or any other indebtedness of the Partnership (other than for obligations to trade creditors or others incurred in connection with day to day operation of the Project or with respect to the Deferred Development Fee or as set forth in Section 4.3.A hereof);

W669125.5

- 39 -

(iii)  pay any salary, fees or other compensation to a General Partner or any Affiliate thereof, except as authorized by Section 5.7 or Articles VI and VIII hereof or specifically provided for in this Agreement or the Management Agreement;

(iv)  sell all or any portion of the Apartment Complex or modify or refinance the Mortgage or incur any indebtedness for borrowed money except as specifically provided in this Agreement or the Contribution Agreement and subject to the provisions contained in Section 5.4 hereof;

(v)  terminate the services of the Accountant, the Architect, the Contractor or the Management Agent, or terminate, amend or modify the Construction Contract or any other Project Document (individual change orders under the Construction Contract of $25,000 or less up to an aggregate of $100,000 shall not require the Consent of the Special Limited Partner, however, any change orders above the aggregate amount of $100,000 shall require the Consent of the Special Limited Partner) or grant any material waiver or consent thereunder;

(vi)  engage a substitute Management Agent or approve the delegation by the Management Agent of all or a substantial portion of its duties to a third party, provided, however that the consent of the Special Limited Partner shall not be unreasonably withheld;

(vii)  amend or terminate the Operating Deficit Guaranty Agreement, or grant any waiver or consent thereunder;

(viii)  cause the Partnership to redeem or repurchase all or any portion of the Interest of a Partner;

(ix)  accept additional Capital Contributions other than those expressly provided for in this Agreement;

(x)  admit additional General Partners or Limited Partners to the Partnership except in accordance with the express terms hereof;

(xi)  cause the Partnership to convert the Apartment Complex to cooperative or condominium ownership;

(xii)  cause or permit the Partnership to be merged with any other entity;

(xiii)  cause or permit the Partnership to make loans to the General Partner or any Affiliate;

(xiv)  grant any waivers or consents under any Project Documents which are likely to materially adversely affect the Partnership; or

(xv)  cause or permit the Partnership to take or omit or suffer any action that would result in a recapture of Credits or State Credits previously recognized by the Partnership or a reduction or disallowance of any Credits or State Credits anticipated to be recognized by the Partnership as contemplated by Section 3.4.B hereof, other than an Unavoidable Event.

W669125.5

- 40 -

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

The enumeration of the foregoing rights shall not diminish or affect the existence or exercise of other rights expressly granted to the Special Limited Partner elsewhere herein.

5.6   <u>Activities of Partners</u>.  Any Partner and its Affiliates may engage in and have an interest in other business ventures of every nature and description, independently or with others, including, but not limited to, the ownership, financing, leasing, operating, construction, renovation, improvement, management and development of real property whether or not such real property is directly or indirectly in competition with the Apartment Complex.  Neither the Partnership nor any other Partner shall have any rights by virtue of this Agreement in and to such independent ventures or the income or profits derived therefrom, regardless of the location of such real property and whether or not such venture was presented to such Partner as a direct or indirect result of its connection with the Partnership or the Apartment Complex.

5.7   <u>Dealing with Affiliates</u>.  Subject to the restrictions contained in this Agreement, the General Partner may, for, in the name and on behalf of, the Partnership, enter into agreements or contracts for performance of services for the Partnership as an independent contractor with a General Partner or an Affiliate thereof and the General Partner may obligate the Partnership to pay compensation for and on account of any such services; <u>provided, however,</u> that unless the terms of such compensation and/or services are specified in this Agreement, (A) such compensation and services shall be on terms not less favorable to the Partnership than if such compensation and services were paid to and/or performed by a person who was not a General Partner or an Affiliate thereof and (B) after disclosure to the Special Limited Partner and the State Limited Partner of the interest of the General Partner, the Consent of the Special Limited Partner to the provision of such services by such Affiliate shall have been obtained, which consent shall not be unreasonably withheld, delayed or conditioned.  The Special Limited Partner has consented to the Management Agreement and such other agreements with the General Partner and its Affiliates as are specifically referenced herein.  The Partners acknowledge and agree that the interest and rights of the State Limited Partner in the Partnership and pursuant to this Agreement shall not be deemed subject to the restrictions of this Section 5.7.

5.8   <u>Indemnification and Liability of the General Partner.</u>

A.  To the maximum extent permitted by law, the Partnership, its receiver or its trustee, shall indemnify and hold harmless the General Partner and its Affiliates from and against any liability, loss or damage incurred by them by reason of any act performed or omitted to be performed by them, including costs and reasonable attorneys' fees (which attorneys' fees may be paid as incurred) and any amount expended in the settlement of any claim of liability, loss or damage; <u>provided, however,</u> that (i) if such liability, loss or damage arises out of any action or inaction of any Affiliate, such action or inaction must have occurred while such party was engaged in activities which could have been engaged in by the General Partner in its capacity as such or which otherwise was intended in good faith to be in the best interests of the Partnership; (ii) if such liability, loss or damage arises out of any action or inaction of the General Partner or its Affiliates, (a) the General Partner or its Affiliates must have determined, in good faith, that such course of conduct was in the best interests of the Partnership and (b) such course of conduct did not constitute fraud, willful misconduct, gross negligence or willful breach of the provisions of this Agreement by the General Partner or its Affiliates; and (iii) any such indemnification shall be recoverable only from the assets of the Partnership and not from the assets of any

W669125.5

- 41 -

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

Partner.  In no event shall the Partnership indemnify the General Partner or its Affiliates for any obligation it has incurred with respect to its Affiliates.  All judgments against the Partnership and the General Partner or its Affiliates, wherein the General Partner or its Affiliates are entitled to indemnification, must first be satisfied from Partnership assets before such General Partner or its Affiliates are responsible for these obligations.  The Partnership shall not pay for any insurance covering liability of the General Partner or its Affiliates for actions or omissions for which indemnification is not permitted hereunder; provided, however, that nothing contained herein shall preclude the Partnership from purchasing and paying for such types of insurance, including extended coverage liability and casualty and workers' compensation, as would be customary for any person owning comparable assets and engaged in a similar business, or from naming the General Partner or its Affiliates as additional insured parties thereunder, if such addition does not add to the premiums payable by the Partnership.  Nothing contained herein shall constitute a waiver by any Investor Limited Partner of any right which it may have against any party under Federal or state securities laws.  Nothing contained herein shall be deemed to contract away the fiduciary duty owed to the Investor Limited Partner by the General Partner or its Affiliates under common law, provided, however, the foregoing shall not diminish the provisions of Section 5.6 hereof.  The provision of advances from the Partnership to the General Partner or its Affiliates for legal expenses and other costs incurred as a result of a legal action is permissible if the following three conditions are satisfied:  (i) The legal action relates to the performance of duties or services by General Partner or its Affiliates on behalf of the Partnership; (ii) the legal action is initiated by a third party who is not an Investor Limited Partner of the Partnership; and (iii) the General Partner or its Affiliates undertake to repay to the Partnership the funds so advanced in cases in which they would not be entitled to indemnification hereunder.  Notwithstanding anything to the contrary contained herein, in no event shall any indemnity under this Section 5.8.A be applicable to any expenditures or obligations of any General Partner or Affiliate thereof which are the subject of a separate obligation or guaranty to the Partnership or State Limited Partner by such General Partner or such Affiliate thereof.

B.  Notwithstanding the provisions of Section 5.8.A hereof, the General Partner and its Affiliates shall not be indemnified or held harmless pursuant to Section 5.8.A hereof from any liability, loss or damage incurred by it in connection with, and shall indemnify and hold harmless the Partnership and the other Partners from and against any liability, loss or damage incurred by it by reason of, (i) any liability arising from fraud, gross negligence, willful misconduct or breach of the provisions of this Agreement by the General Partner or its Affiliates.

5.9  Representations and Warranties.  The General Partner hereby represents and warrants to each of the other Partners that the following are true and accurate in all material respects as of the Admission Date and it is a condition to payment that the following be true and accurate in all material respects on the due date of any payment of Capital Contributions to the Partnership:

A.  The execution and delivery of all instruments and the performance of all acts heretofore or hereafter made or taken pertaining to the Partnership or the Apartment Complex by the General Partner or by each Affiliate of the General Partner which is a corporation, a partnership or a trust have been or will be duly authorized by all necessary corporate or other action and the consummation of any such transactions with or on behalf of the Partnership will not constitute a breach or violation of, or a default under, the charter or by-laws of the General

W669125.5

- 42 -

Electronically Filed · St Charles Circuit Div · November 12, 2020 · 04:00 PM

Partner or any such Affiliate or any material agreement by which the General Partner or such Affiliate or any of its properties is bound, nor constitute a violation of any law, administrative regulation or court decree in a manner which will have a material adverse effect on the Partnership.

B.   No Bankruptcy has occurred with respect to the General Partner or any Affiliates thereof.

C.   As of the Admission Date all accounts of the Partnership required to be maintained under the terms of the Project Documents, including, without limitation, any account for replacement reserves, are currently funded to required levels, including levels required by any Authority.

D.   Neither the General Partner nor its Affiliates have lent or otherwise advanced any funds to the Partnership other than its Capital Contributions and the Partnership has no unsatisfied obligation to make any payments of any kind to the General Partner or their Affiliates thereof outstanding as of the Admission Date.

E.   The Partnership is acquiring the Capital Note and the State Capital Note without a view to the sale or distribution thereof and without any present intention of distributing or selling the same. The Partnership agrees that it (and any holder of any interest in the Capital Note and the State Capital Note) will not sell, assign or otherwise transfer its interest in the Capital Note or State Capital Note (or any fraction thereof) without the Consent of the Special Limited Partner as to the Capital Note and the State Limited Partner as to the State Capital Note and unless such transfer shall be in full compliance with all applicable securities laws and regulations.

F.   The General Partner shall cause the Partnership to construct 13 handicapped-accessible units in the Apartment Complex..

G.   No event has occurred which with the giving of notice, the passage of time, or both, would constitute a material default under any of the Project Documents.

H.   Each of the representations and warranties contained in the Contribution Agreement and the State Contribution Agreement is true and correct on the date hereof as if made on and as of such date.

5.10   <u>Additional Covenants of General Partner</u>. Except in an emergency, upon at least three days prior notice, the General Partner shall permit, and shall cause the Management Agent to permit, the Special Limited Partner and/or the State Limited Partner and their respective representatives to have access to the Apartment Complex and personnel employed by the Partnership and by the Management Agent who are concerned with management of the Apartment Complex at all reasonable times during normal business hours and to examine all agreements and plans and specifications and shall deliver copies and such reports as may reasonably be required by the Special Limited Partner. The Special Limited Partner shall use commercially reasonably efforts in conducting such inspections so as to not interfere with the normal operations of the Apartment Complex. The General Partner shall promptly provide the

W669125.5

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

Special Limited Partner and State Limited Partner with copies of all correspondence, notices and reports sent pursuant to and received under any Authority with respect to the Apartment Complex, together with copies of all other correspondence relating to or affecting the Credits and the State Credits, or any notice of non-compliance received from any lender holding a Mortgage or any governmental authority.

5.11  <u>Obligation to Repair and Rebuild Apartment Complex.</u>  With the approval of any Lender and any Authority, if such approval is required, any insurance proceeds received by the Partnership due to fire or other casualty affecting the Apartment Complex will be utilized to repair and rebuild the Apartment Complex in satisfaction of the conditions contained in Section 42(j)(4) of the Code and to the extent required by any Lender and any Authority.

W669125.5

## ARTICLE VI

## CERTAIN PAYMENTS

6.1 <u>Development Fee.</u>        As consideration for the services of the Developer to the Partnership in connection with the development of the Apartment Complex, the Partnership shall pay the Developer a development fee (the "Development Fee") of $2,865,000 (but in no event in excess of the amount allowed by any Lender or any Authority) in accordance with the Development Agreement, of which approximately $200,000 is attributable to Developer overhead (the "Developer's Overhead"). The Development Fee (other than, subject to the consent of the Lender, Developer's Overhead) shall be payable entirely out of Development Surplus after payment of all costs in connection with the operation and construction of the Apartment Complex through the Break-Even Date and to the extent that the Development Surplus actually received by the Project Partnership prior to the Break-Even Date is not sufficient to pay such fee in its entirety, the balance shall be deferred ("Deferred Development Fee"). Notwithstanding anything to the contrary in this Agreement, Development Surplus existing as of "Completion" (as that term is defined in the Construction Facility Agreement dated as of February 1, 2004, by and between the Partnership, Wachovia Bank and Charter MAC Corporation) shall be released to pay any outstanding amount of the Development Fee; provided, however, that the Partnership shall have received the Accountant's cost certification, and provided further that any amounts owed to the Limited Partner pursuant to Section 3.4B or 9.2D shall be paid out of Development Surplus prior to payment of any Deferred Development Fee hereunder. Any Deferred Development Fee shall bear interest, compounded annually, commencing upon the date (the "Placed-In-Service Date") on which the Apartment Complex is placed in service (within the meaning of Section 42 of the Code) at the Applicable Federal Rate ("AFR"). The entire outstanding principal balance of the Deferred Development Fee shall be due in full on the 15th anniversary of Completion. Such Deferred Development Fee shall be payable out of Cash Flow or Sale or Refinancing Transaction Proceeds as provided in Sections 9.2.A and 9.2.B and, to the extend not otherwise needed to satisfy current obligations of the Partnership, from the proceeds of the Limited Partner's Capital Contributions payable following the Break-Even Date. If any or all of the Deferred Development Fee remains unpaid at the end of the Compliance Period, the General Partner shall be obligated to contribute as capital such unpaid amount to the Partnership for payment thereof. If, in any fiscal year of the Partnership, the Partnership's payments ("Deferred Development Fee Payments") in reduction of the Deferred Development Fee (including principal and unpaid interest thereon) are less than the depreciable portion of such fee for such year then the full amount of such depreciable portion shall be taken into income for federal income tax purposes by the Developer in such year; in all other cases the actual amount of the Deferred Development Fee Payments made during such year shall be taken into income for federal income tax purposes by the Developer upon receipt thereof. Upon request of the Special Limited Partner, the General Partner shall cause the Developer to provide to the Investor Limited Partners such information as it shall request to confirm compliance with the preceding sentence. If the Preliminary Cost Certification indicates that the Apartment Complex will not meet the 50% test for financing development costs from tax-exempt bond proceeds as described in Code Section 42(h)(4)(B) (the "50% Test"), then the

W669125.5

- 45 -

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

Development Fee shall be reduced by the amount necessary for the Apartment Complex to meet the 50% Test, as determined by the Accountants and as approved by the Limited Partner. The General Partner represents and warrants that, should the Limited Partner deem it necessary in its sole reasonable discretion, and within 60 days' notice from the Limited Partner of such determination, the Developer shall not be a "related party" to any Partner of the Partnership for purposes of US Treasury Regulation 1.752-4(b).

   6.2 <u>GP Supervisory Management Fee</u>.  In consideration for the General Partner's assuming the responsibility for managing the Apartment Complex and supervising the performance of the Management Agent, the General Partner shall be paid a non-cumulative fee (the "GP Supervisory Management Fee") equal to 50% of remaining Cash Flow, if any, after making all distributions as described in Sections 9.2.A(i) through 9.2.A(viii). In no event shall the GP Supervisory Management Fee payable in any year exceed an amount, taking into account the amount of GP Supervisory Management Fee paid in any prior year, equal to seven percent (7%) of Gross Effective Income per year determined on a cumulative non-compounded basis (the "Fee Cap"), i.e., to the extent that the amount of the GP Supervisory Management Fee paid in any year is less than 7% of Gross Effective Income for such year, the difference between 7% of Gross Effective Income and the amount of the GP Supervisory Management Fee paid for such year (the "Supervisory Management Fee Shortfall") shall be carried forward to subsequent years and any such Supervisory Management Fee Shortfall shall be payable to the extent of 50% of available Cash Flow, after payment (subject to the Fee Cap) of the GP Supervisory Management Fee for such year. Upon Completion, the Accountants shall provide to the Limited Partner a draft cost certification (the "Preliminary Cost Certification").

   6.3 <u>Annual Local Administrative Fee</u>.  For its services in monitoring the operations of the Partnership, the Special Limited Partner shall receive a cumulative Annual Local Administrative Fee in an initial amount of $5,000 per annum beginning on the Placed-in-Service Date, which amount shall be cumulatively increased each year by the lesser of the increase in the Consumer Price Index or 3% per annum, such amount to be payable only out of Cash Flow available for distribution pursuant to Section 9.2.A hereof and to the extent Cash Flow is insufficient to make such payment, such deficiency shall be deferred and paid out of future Cash Flow in subsequent years or Sale or Refinancing Transaction Proceeds in subsequent years. Notwithstanding anything to the contrary contained herein, proceeds of Operating Loans shall not be used to pay the Annual Local Administrative Fee.

   6.4 <u>Lease-Up Fee</u>.  In consideration for services rendered in connection with the supervision of the lease-up of the Apartment Complex through Breakeven Date, the General Partner shall receive from the Partnership a Lease-Up Fee in the amount equal to the excess of the Cash Receipts from operations in excess of Cash Expenditures from operations of the Apartment Complex provided for in the Development Budget for the period from the date hereof until Breakeven Date to the extent such excess is greater than the amount of Cash Flow from operations that is set forth in the Development Budget to be used for costs of the Construction (as defined in the Contribution Agreement) as increased by any overruns in the Development Budget projected by the Special Limited Partner, if any (such excess being referred to as "Excess

W669125.5

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

Development Cash Flow"). Payment of such fee shall be made pursuant to Section 9.2.A below and shall be subject to any applicable requirements of the Lender.

6.5 <u>State Asset Management Fee</u>. For its services in monitoring the operations of the Partnership, the Partnership shall pay to the State Limited Partner an asset management fee (**"State Asset Management Fee"**) in the amount of $3,500 (increasing by the CPI) per annum beginning on the Placed in Service Date if there is sufficient cash available to pay same provided that, if in any year there are not sufficient funds to pay such fee after payment of all operating expenses of the Project, then, in such event the Guarantor shall make an Operating Loan under the State Operating Deficit Guaranty Agreement to pay such fee. In the event no such loan is made, any unpaid portion of such fee shall accrue and be payable out of available Cash Flow in subsequent years or if there is no available Cash Flow, out of Sale or Refinancing Transaction Proceeds.

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

**ARTICLE VII**

**ACCOUNTING, REPORTS, BOOKS,
BANK ACCOUNTS AND FISCAL YEAR**

7.1 Bank Accounts.   The bank accounts of the Partnership shall be maintained in such banking institutions authorized to do business in the State or such other states as permitted by each Authority and as the General Partner shall determine, and withdrawals shall be made on such signature or signatures as the General Partner shall determine. The Partnership's funds shall not be commingled with the funds of any other Person and shall not be used except for the business of the Partnership. All deposits (including security deposits and other funds required to be placed in escrow by any Authority or any Lender and other funds not needed in the operation of the Partnership's business) shall be deposited, to the extent permitted by each Authority, in interest-bearing accounts or invested in obligations of or guaranteed by the United States, any state thereof, or any agency, municipality or other political subdivision of any of the foregoing, commercial paper (investment grade), certificates of deposit and time deposits in commercial banks with capital in excess of $50,000,000 and in mutual (money market) funds investing in any or all of the foregoing; provided, however, that any funds required to be placed in escrow by any Authority shall be controlled by such Authority and the General Partner shall not be permitted to make any withdrawal from such funds without the express written consent of such Authority to the extent required.

7.2 Books of Account; Fiscal Year.   Complete and accurate books of account, in which shall be entered, fully and accurately, each and every transaction of the Partnership, shall be kept or caused to be kept by the General Partner. The books shall be kept on an accrual basis of accounting, and the fiscal year of the Partnership shall be the calendar year. All of the Partnership's books of account, together with an executed copy of this Agreement and copies of such other instruments as the General Partner may execute hereunder, including amendments thereto, shall at all times be kept at the principal office of the Partnership and, upon at least three days prior written notice, shall be available during normal business hours for inspection by any Partner for partnership purposes or his duly authorized representative or, at the expense of the requesting Partner, for audit by him or his duly authorized representative.

7.3 Reports.

A.  Within 45 days after the end of each of the first three quarters of each fiscal year, the General Partner shall have prepared and shall deliver to the Investor Limited Partners, commencing with the first quarterly period ending after the Admission Date, (i) a balance sheet and statements of income (or loss) and changes in financial position and Cash Flow for, or as of the end of, such quarter in form and substance as reasonably requested by the Limited Partner, none of which need be audited unless required by law, together with a statement of the amount of all fees and other compensation paid by the Partnership during such quarter to the General Partners or any of their Affiliates, and (ii) to the extent true and accurate, a certificate of the General Partner that all of the Eligible Units in the Apartment Complex are then occupied qualify as "low income units" under Section 42 of the Code.

W669125.5

- 48 -

Electronically Filed · St Charles Circuit Div · November 12, 2020 · 04:00 PM

B.  The General Partner shall send to each Investor Limited Partner such tax information as shall be necessary for inclusion by each Investor Limited Partner in its Federal income tax returns and required state income tax and other tax returns.  The General Partner shall send this information within 45 days after the end of each fiscal year.

C.  Within 60 days after the end of each fiscal year of the Partnership, the General Partner shall send to the Investor Limited Partners (i) the balance sheet of the Partnership as of the end of such fiscal year and statements of income (loss), Partners' equity and changes in financial position of the Partnership for such fiscal year, all of which shall be prepared in accordance with generally accepted accounting principles consistently applied and, shall be accompanied by a report of the Accountants for the Partnership, to the extent possible, containing an unqualified opinion of the Accountants, and (ii) a statement of Cash Flow for such fiscal year (which need not be audited), showing distributions in respect of such fiscal year, which statement shall identify distributions from (a) Cash Flow generated during the fiscal year, (b) Cash Flow generated during prior fiscal years, (c) proceeds from the disposition of property and investments and (d) reserves and other sources.

D.  If the General Partner shall fail, for any reason (other than due to acts or omissions of the Accountants, so long as the Accountants are Reznick Fedder & Silverman), to deliver to the Investor Limited Partners when due any of the information or statements required by this Section 7.3, the Partnership shall pay to each of the Investor Limited Partners, upon their written request as liquidated damages for such failure, an amount equal to $200 for each day that elapses, until such information or statements have been delivered to the Investor Limited Partners.  The General Partner hereby guarantees the payment of any amount due to the Investor Limited Partners by the Partnership under this Section 7.3.D provided, however, any payments made hereunder shall not be deemed to be either a capital contribution or a loan from the General Partners, and neither the Partnership nor any Investor Limited Partner shall be under any obligation to repay any such amount paid by the General Partners, and all such payments shall not affect the allocations and distributions provided for in Article IX hereof in any way whatsoever.

E.  Other Reports.      The General Partner shall submit to Related Capital Company Asset Management Group via telecopy not later than close of business each Monday a weekly occupancy report in the form of Exhibit D annexed hereto until lease-up has been completed and thereafter on a monthly basis.  In addition, the General Partner shall from time to time submit to the Partners such other written reports and information regarding the operations of the Partnership (including the Budget) as may be reasonably required and requested by the Limited Partner and/or State Limited Partner to satisfy their respective reporting requirements to their partners or governmental authorities.  During the construction of the Apartment Complex, the General Partner shall send copies of the monthly construction requisitions simultaneously with the delivery or such requisitions to the Lender to the Partners, Related Corporate Partners XXVI, L.P. and Related Corporate XXVI SLP LLC at Related Capital Company, 625 Madison Avenue, New York, New York 10022-1801 and Jones, Hill, McFarland & Ellis at 2735 Villa Creek Drive, Suite 275 Dallas TX 75234, and to Missouri Tax Credit Partners V, L.P., 1100 Main Street, Suite 2700, Kansas City, MO 64105.  The General Partner shall provide to the Partners by November 30 of each fiscal year an estimate of each Partner's share of profits and losses for Federal and state income tax purposes for such fiscal year.

W669125.5

- 49 -

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

7.4 <u>Tax Returns and Tax Treatment</u>. The General Partner shall, for each fiscal year, file on behalf of the Partnership a United States Partnership Return of Income within the time prescribed by law for such filing.  The General Partner shall also file on behalf of the Partnership such other tax returns and other documents from time to time as may be required by the Federal government or by any state or any subdivision thereof.  All tax returns shall be prepared by the Accountants.  The General Partner shall send a copy of Schedule K-1 or any successor or replacement form thereof, and, upon request, such tax return, to each Partner within 45 days after the expiration of each fiscal year.

## ARTICLE VIII

## MANAGEMENT AGENT

8.1 Management Agent and Management Fee.

A. The General Partner shall have the responsibility for managing the Apartment Complex and obtaining a management agent (the "Management Agent"), the choice of which with respect to any successor to the Management Agent at the Admission Date shall be made with the Consent of the Special Limited Partner (such consent to be granted only after consultation with the State Limited Partner, which consultation shall not last longer than five business days; it being agreed that if the Special Limited Partner and the State Limited Partner disagree, then the determination of the Special Limited Partner shall control), which Consent shall not be unreasonably withheld or delayed, after disclosure to the Special Limited Partner of any affiliation between the General Partner and such successor.  The Management Agent shall be Gundaker Commercial Group, Inc., an Affiliate of the General Partner.

B. The Management Agent shall receive a management fee payable by the Partnership on a monthly basis in an amount not to exceed 3.5% of the collected apartment unit rental receipts from the Apartment Complex for management services in accordance with the Management Agreement as approved by each Authority (if such approval is necessary) which is intended to be executed by the Partnership; provided, however, that in the event the Management Agent is an Affiliate of the General Partner 40% of such fees with respect to any fiscal year of the Partnership shall accrue and not become payable unless the Partnership has positive Cash Flow with respect to that fiscal year, and any unpaid portion of such fees may be payable from positive Cash Flow of the Partnership in future fiscal years of the Partnership or from Sale or Refinancing Transaction Proceeds in future fiscal years.  The term of any Management Agreement shall not exceed one year, and no payment or penalty shall be payable by the Partnership for failure to renew any such agreement.

C. The General Partner will have the duty to manage the Apartment Complex during any period when there is no Management Agent and the Partnership will pay the General Partner for such services an annual management fee equal to such amount as each Authority shall approve from time to time or, if no approval is required, a fee equal to the amounts set forth in Section 8.1.B hereof.  If at any time the present Management Agent shall cease to act as the Management Agent, the General Partner shall be authorized, subject to the Consent of the Special Limited Partner (such consent to be granted only after consultation, which consultation shall not last longer than five business days with the State Limited Partner; it being agreed that if the Special Limited Partner and the State Limited Partner disagree, then the determination of the Special Limited Partner shall control), and the approval of each Authority and Lender (if required) to retain and to enter into a Management Agreement with a different Management Agent on terms at least as favorable to the Partnership as the terms and conditions of the Management Agreement with the present Management Agent or on such other prevailing market terms as exist in the locality of the Apartment Complex for residential projects.

W669125.5

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

D.  Subject to the approval of each Authority, if required, the Special Limited Partner shall have the right in the event the General Partner is removed as general partner pursuant to Section 11.4 hereof to cause the Partnership to terminate the Management Agreement and every other contract between the Partnership and Affiliates of the General Partner, upon not less than 30 days' written notice to the party contracting with the Partnership.  All existing contracts between the Partnership and Affiliates of the General Partner have been amended to contain this right and the General Partner covenants not to enter any future contract with any of its Affiliates which does not contain such right.

**ARTICLE IX**

**PROFITS AND LOSSES; DISTRIBUTIONS**

9.1 <u>Allocations of Profits and Losses</u>. For tax and accounting purposes, Profits and Losses of the Partnership for each fiscal year shall be allocated to the respective classes of Partners as follows:

A. Subject to Section 9.3 hereof, Profits shall be allocated to the Partners in the following order of priority:

(i) First to the General Partner until the General Partner has been allocated pursuant to this Section 9.1.A(i) for the current and prior fiscal years an amount equal to the Losses allocated to the General Partner pursuant to the last sentence of Section 9.1.B for all prior fiscal years;

(ii) Second, 99.97% to the Limited Partner, .01% to the State Limited Partner, .01% to the Special Limited Partner and .01% to the General Partner until the Partners have been allocated pursuant to this Section 9.1.A(ii) for the current and prior fiscal years, an amount equal to the lesser of (x) the aggregate Losses previously allocated to the Partners pursuant to Section 9.1.B hereof (other than pursuant to the last sentence thereof) for all prior fiscal years to the extent such Losses are greater than the aggregate allocations of Profits previously allocated to the Limited Partner pursuant to this Section 9.1.A(ii) or (y) an amount necessary to eliminate the Limited Partner's Adjusted Capital Account Deficit, if any; and

(iii) Thereafter, to the Partners in accordance with the cumulative distributions pursuant to Sections 9.2.A(viii) and 9.2.B(xi) hereof with respect to the current and all prior fiscal years until the aggregate amount allocated to each Partner pursuant to this Section 9.1.A(iii) equals the aggregate amount distributed to each Partner pursuant to Sections 9.2.A(viii) and 9.2.B(xi) hereof; provided that if the Profits allocable under this Section 9.1.A(iii) for the current and all prior fiscal years exceed the cumulative distributions pursuant to Sections 9.2.A(viii) and 9.2.B(xi) with respect to the current and all prior fiscal years ("Excess Income"), then the Excess Income derived in the current fiscal year shall be allocated to the Partners in accordance with the distribution that would have been made pursuant to Sections 9.2.A(viii) and 9.2.B(xi) hereof had there been such distribution for the current fiscal year.

B. Subject to Section 9.3 hereof, Losses shall be allocated .01% to the General Partner, 99.97% to the Limited Partner, .01% to the State Limited Partner and .01% to the Special Limited Partner; provided that the Losses allocated pursuant to this Section 9.1.B shall not exceed the maximum amount of Losses that can be so allocated without causing any Investor Limited Partner to have an Adjusted Capital Account Deficit at the end of any fiscal year of the Partnership. All Losses which would have been allocated to the Investor Limited Partners but for the proviso set forth in the preceding sentence shall be allocated to the General Partner.

W669125.5

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

C. Nonrecourse Liabilities of the Partnership shall be specially allocated 99.97% to the Limited Partner, .01% to the State Limited Partner, .01% to the Special Limited Partner and .01% to the General Partner.

D. (i) Nonrecourse Deductions for any fiscal year of the Partnership or other period shall be specially allocated 99.97% to the Limited Partner, .01% to the State Limited Partner, .01% to the Special Limited Partner and .01% to the General Partner.

(ii) Any Partner Nonrecourse Deductions for any fiscal year of the Partnership or other period shall be specially allocated to the Partner who bears the risk of loss with respect to the Partner Nonrecourse Debt to which such Partner Nonrecourse Deductions are attributable in accordance with Section 1.704-2(i) of the Regulations. If with respect to any fiscal year the Guarantor (or the General Partner) shall make Operating Loans or shall otherwise be required to advance money to pay or otherwise satisfy operating deficits on behalf of the Partnership, it shall be deemed that such Operating Loans or such other advances were first applied to the payment of deductible expenses with respect to such fiscal year up to the aggregate amount of such Operating Loans and/or such advances, and the deductions for such expenses shall be allocated to the General Partner. In no event, by reason of the foregoing, shall the General Partner be allocated deductions attributable to Depreciation of the Property. If such Operating Loans or other advances with respect to any fiscal year shall exceed the deductible expenses allocable to the General Partner pursuant to this subparagraph, the General Partner shall be allocated deductible expenses (not attributable to Depreciation) in subsequent fiscal years until the aggregate amount of deductions allocated to the General Partner is equal to the amount of Operating Loans or other operating deficit advances.

E. All Credits shall be allocated 99.97% to the Limited Partner, .01% to the State Limited Partner, .01% to the Special Limited Partner and .01% to the General Partner. In the event there occurs a recapture of Credits previously allocated among the Partners, the responsibility for the recapture of such Credits shall be allocated among the Partners in proportion to the amount of Credits originally allocated to each Partner. All deductions for charitable contributions made by the Partnership shall be allocated 99.97% to the Limited Partner, .01% to the State Limited Partner, .01% to the Special Limited Partner and .01% to the General Partners.

F. Where a distribution of an asset is made in the manner described in Section 734 of the Code, or where a transfer of an Interest permitted by this Agreement is made in the manner described in Section 743 of the Code, the Partnership shall file, upon the request of the Special Limited Partner, an election under Section 754 of the Code, in accordance with the procedures set forth in the applicable Regulations. To the extent an adjustment to the adjusted tax basis of any Partnership asset pursuant to Section 734(b) or 743(b) of the Code is required, pursuant to Section 1.704-1(b)(2)(iv)(m) of the Regulations, to be taken into account in determining Capital Accounts, the amount of such adjustment to the Capital Accounts shall be treated as an item of gain (if the adjustment increases the basis of the asset) or loss (if the adjustment decreases such basis) and such gain or loss shall be specially allocated to the Partners in a manner consistent with the manner in which their Capital Accounts are required to be adjusted pursuant to such Section of the Regulations. Subject to Section 5.2 hereof, all other elections required or permitted to be made by the Partnership under the Code shall be made in

W669125.5

- 54 -

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

such manner as, in the opinion of the General Partner with the Consent of Special Limited Partner and with the advice of the Accountants and legal counsel for the Partnership, will be most advantageous to the Limited Partner.

G.  Except as otherwise provided herein, each Partner shall be allocated Profits and Losses in accordance with this Section 9.1 from the date on which it is admitted to the Partnership.  For purposes of determining the Profits, Losses, or any other items allocable to any period, Profits, Losses, and any such other items shall be determined on a daily, monthly, or other basis, as determined by the General Partners using any permissible method under Section 706 of the Code and the Regulations promulgated thereunder.

H.  Except as otherwise provided in this Agreement, all items of Partnership income, gain, loss, deduction, and any other allocations not otherwise provided for herein shall be divided among the Partners in the same proportions as they share Profits or Losses, as the case may be, for the fiscal year of the Partnership.

I.  During any fiscal year allocation of Profits or Losses which do not arise from a Sale or Refinancing Transaction shall be made before allocation of Profits or Losses arising from a Sale or Refinancing Transaction.

J.  If any fee or other compensation payable from the Partnership to a Partner or an Affiliate of a Partner is treated as a distribution for income tax purposes, there shall be allocated to the recipient Partner or to the Partner affiliated with such Affiliate, an amount of income equal to the amount of such payment in the year in which such payment is made or in the first succeeding year in which the Partnership realizes income.

K.  All State Credits shall be allocated 100% to the State Limited Partner.

9.2  Distribution and Application of Cash Flow and Proceeds From Sale or Refinancing Transactions.  Except as otherwise provided by this Agreement or required by law (including all applicable rules, directives and regulations of each Authority), cash distributions shall be made to the Partners on the following basis within 30 days after the end of each calendar quarter:

A.  Subject to the provisions of Sections 8.1.B and 9.2.D. hereof and except as set forth in the last paragraph of this Section 9.2, Cash Flow shall be applied in the following order of priority:

(i)  To the Partners, other than the General Partner, an amount or amounts equal to the unpaid balance of any Voluntary Loan made by them;

(ii)  To the General Partner, an amount or amounts equal to the unpaid balance of any Voluntary Loan made by it;

(iii)  To the Special Limited Partner to pay the Annual Local Administrative Fee, including any amounts deferred, pursuant to Section 6.3; such fee to be increased annually by 3%;

W669125.5

(iv)  To the State Limited Partner to pay the State Asset Management Fee pursuant to Section 6.5 hereof ;

(v)  To the repayment of any outstanding Related Development Cost Loans;

(vi)  To the Developer, an amount equal to the unpaid principal balance of the Deferred Development Fee with accrued interest at the Applicable Federal Rate ("AFR");

(vii)  To the Developer, an amount equal to all accrued and unpaid interest on the Deferred Development Fee;

(viii)  To the repayment of the Gundaker Loan (as that term is defined in the Contribution Agreement), or any Additional Development Deficit Loan made by the General Partner pursuant to Section 4.6, or any Additional Development Deficit Loan made by the Limited Partner (or an Affiliate) pursuant to Section 4.6, *pari passu*;

(ix)  To the extent of 50% of the remaining Cash Flow, to the Guarantor an amount or amounts equal to the unpaid balance of any Operating Loan made by it;

(x)  To pay any fee to the Management Agent that has been deferred pursuant to Section 8.1.B;

(xi)  To the General Partner, to pay the GP Supervisory Management Fee the lesser of 50% of remaining cash flow, or 7% of Gross Effective Income;

(xii)  To the General Partner as a preferred return,  an amount, which when added to the amount in clause (ix) above, equals 85% of Cash Flow;  and

(xiii)  The balance, 99.98% to the Limited Partner, 0.01% to the State Limited Partner and 0.01% to the Special Limited Partner.

Notwithstanding the foregoing, prior to Breakeven Date, Excess Development Cash Flow shall be applied in the priorities set forth in items (i) through (iv) above and then to the payment of the Lease-Up Fee.  Following Breakeven Date, Excess Development Cash Flow shall be applied as set forth in items (i) through (xi) above.

B.  Subject to the provisions of Sections 9.2.D and 12.4 hereof, Sale or Refinancing Transaction Proceeds shall be applied in the following order of priority:

(i)  To the payment of all of the expenses of such Sale or Refinancing Transaction, and, with regard to damage recoveries or insurance or condemnation proceeds (other than for temporary loss of use), to the payment of all repairs, replacements or renewals resulting from damage to or partial condemnation of the affected property;

(ii)  To the payment of all debts and obligations of the Partnership due upon the occurrence of such Sale or Refinancing Transaction other than amounts owing to Partners;

W669125.5

- 56 -

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

(iii)  To establish such reserves as the General Partner in its sole discretion determines to be reasonably necessary for any contingent or foreseeable liability or obligation of the Partnership; provided, however, that the balance of any such reserve remaining at such time as the General Partner shall reasonably determine that such reserve is no longer necessary shall be distributed in accordance with subparagraphs (iv) through (xi) of this Section 9.2.B;

(iv)  To the Management Agent, an amount equal to any accrued and unpaid management fees pursuant to Section 8.1 hereof;

(v)  To the Special Limited Partner, an amount equal to any accrued and unpaid Annual Local Administrative Fee pursuant to Section 6.3 hereof;

(vi)  To the State Limited Partner, an amount equal to any accrued and unpaid State Asset Management Fee pursuant to Section 6.5 hereof;

(vii)  To the repayment of any outstanding Related Development Cost Loans;

(vii)  To the Developer, an amount equal to the unpaid principal balance of the Deferred Development Fee;

(viii)  To the Developer, an amount equal to all accrued and unpaid interest on the Deferred Development Fee;

(ix)  To the repayment of the Gundaker Loan, or any Additional Development Deficit Loan made by the General Partner pursuant to Section 4.6, or any Additional Development Deficit Loan made by the Limited Partner (or an Affiliate) pursuant to Section 4.6, *pari passu*;

(x)  To the Partners, other than the General Partner, an amount or amounts equal to the unpaid balance of any Voluntary Loan made by them (pari passu between the Limited Partner and the State Limited Partner);

(xi)  To the Guarantor or General Partner, an amount or amounts equal to the unpaid balance of any Operating Loan made by it;

(xii)  To the General Partner, a sale and disposition fee equal to six percent (6%) of the gross proceeds of the sale or disposition, to the extent that the General Partner rendered actual services in connection with such sale or disposition;

(xiii)  The balance, if any, 19.98% to the Limited Partner, .01% to the State Limited Partner, .01% to the Special Limited Partner and 80% to the General Partner.

C.  Except as otherwise provided in this Section 9.2, each Partner shall share in distributions in accordance with this Section 9.2 from the date on which such Partner is admitted to the Partnership.

W669125.5

- 57 -

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

D. In the event that the amount of the Credits finally allowed to the Partnership and allocated to the Limited Partner during any calendar year during the Credit Period with respect thereto starting with 2006 is less than $676,214 for any reason, other than a change in the tax laws enacted after the date of this Agreement or the acts or omissions of the Limited Partner, and the Limited Partner has not otherwise been compensated for such shortfall pursuant to Section 3.4.B hereof, the "Return Amount" shall be calculated.  The "Return Amount" shall be an amount (to the extent such amount is a positive number) equal to the excess of (a)(I) $676,214 less the amount of Credits finally allowed to the Partnership and allocated to the Limited Partner with respect to any such calendar year plus (II) 11% per annum on the amount specified in the immediately preceding clause (I) calculated from the end of the calendar year in question until the Return Amount is paid as provided herein, over (b)(I) the amount of Credits finally allowed to the Partnership and allocated to the Limited Partner with respect to any other calendar year during the Credit Period less $676,214 plus (II) 11% per annum on the amount specified in the immediately preceding clause (II) calculated from the end of the calendar year in question until the Return Amount is paid as provided herein; provided, however, that any Credits with respect to which the Limited Partner has theretofore received a payment pursuant to the Recapture Guaranty Agreement shall be deemed to have been finally allowed for the purposes of this Section 9.2.D.  If the Partnership claims Credits for less than 12 calendar months with respect to any taxable year, then the calculation of the Return Amount with respect to such taxable year shall be made by proportionally prorating the $676,214 amount.  At the time of distribution of any Cash Flow pursuant to Section 9.2.A or Sale or Refinancing Transaction Proceeds pursuant to Section 9.2.B hereof, there shall be distributed to the Limited Partner and to the State Limited Partner (in a ratio of 3.3 to 1), out of any Cash Flow or Sale or Refinancing Transaction Proceeds that would otherwise have been distributed to the General Partner or its Affiliates under such sections, an amount equal to the sum of the Return Amount and any unpaid amounts required to be paid to the State Limited Partner pursuant to Section 3.10 (the "State Return Amount"), before the General Partner or its Affiliates shall be distributed any such proceeds pursuant to such Sections.  Notwithstanding the foregoing, to the extent that the Return Amount is determined with respect to any year prior to the payment of Limited Partner's Capital Contributions and the Limited Partner has not otherwise been compensated for such shortfall pursuant to Section 3.4.B hereof, the Limited Partner shall have the right to offset its final payment of the Capital Contribution by the Return Amount.  For purposes of this Section 9.2.D, a Credit or State Credit, as the case may be, with respect to a taxable year shall be deemed finally allowed if claimed on an income tax return filed by the Partnership and which remains allowed upon the latest to occur of the following: (I) the period for assessment of a deficiency for such taxable year shall have expired without a deficiency being assessed by the Internal Revenue Service or the Missouri Department of Revenue, as the case may be, against any Partner with respect to the Credit claimed by the Partnership for such taxable year; or (II) if such deficiency is so assessed, the determination by the Internal Revenue Service or the Missouri Department of Revenue, as the case may be,  as to the amount of the Credit or State Credit, as the case may be, for such taxable year is no longer subject to petition to the United States Tax Court, or Missouri Tax Court in the case of the State Credit; or (III) if a petition with respect to such determination is filed with such court, a decision by such court as to the amount of the Credit for such taxable year becomes final and not subject to appeal; or (IV) if an appeal from such decision is filed, a decision of a court upon such appeal becomes final and not subject to further appeal.  Except as otherwise provided in this Section 9.2.D, any Credits which are recaptured pursuant to Section

W669125.5

- 58 -

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

42 of the Code, other than due to an Assignment of an Interest or a disposition of the Apartment Complex that occurs with the Consent of the Special Limited Partner, shall be deemed not to have been finally allowed for purposes of this Section 9.2.D.

        E.  In the event that the amount of the State Credits finally allowed to the Partnership and allocated to the State Limited Partner during any calendar year during the State Credit Period with respect thereto is less than the amount specified on Exhibit A to the State Recapture Guaranty Agreement for such year for any reason other than a change in law or the acts or omissions of the State Limited Partner (other than acts or omissions resulting from a breach by the General Partner or Guarantor of any of their obligations hereunder or under the State Contribution Agreement (after the expiration of any applicable grace, notice or cure periods)), including, without limitation, the failure of the Partnership to operate the Apartment Complex so as to have 100% of the Apartment Units therein eligible for State Credits for any such year, the "**State Return Amount**" shall be calculated.  The "**State Return Amount**" shall be an amount equal to the excess of (a)(I) the amount, if any, by which the State Credit Amount exceeds the amount of State Credits finally allowed to the Partnership and allocated to the State Limited Partner with respect to any such calendar year plus (II) 11% per annum thereon calculated from the end of the calendar year in question until the State Return Amount is paid as provided herein, over (b)(I) the amount, if any, by which the State Credits finally allowed to the Partnership and allocated to the State Limited Partner with respect to any other calendar year during the State Credit Period exceeds of the State Credit Amount plus (II) 11% per annum thereon calculated from the end of the calendar year in question until the State Return Amount is paid as provided herein.  At the time of distribution of any Sale or Refinancing Transaction Proceeds pursuant to Section 9.2.B hereof, there shall be distributed to the State Limited Partner, out of any Sale or Refinancing Transaction Proceeds that would otherwise have been distributed to the General Partner, the Guarantor or their respective Affiliates under such section (pari passu with any Return Amount distributed to the Investor Limited Partner), an amount equal to the State Return Amount, before the General Partner, the Guarantor or their respective Affiliates shall be distributed any such proceeds pursuant to such section, and an appropriate adjustment to the allocation of Profits and Losses shall be made.  A distribution pursuant to the preceding sentence shall not be required to the extent that it would duplicate an amount previously paid to the State Limited Partner pursuant to the State Recapture Guaranty Agreement or as a State Credit Reduction Payment hereunder and will not delay amounts otherwise available for distribution.  For purposes of this Section 9.2.D, a State Credit with respect to a taxable year shall be deemed finally allowed upon the latest to occur of the following:  (I) the period for assessment of a deficiency for such taxable year shall have expired without a deficiency being assessed by the Internal Revenue Service or Missouri Department of Revenue against any Partner with respect to the State Credit claimed by the Partnership for such taxable year; or (II) if such deficiency is so assessed, the determination by the Internal Revenue Service or the Missouri Department of Revenue as to the amount of the State Credit for such taxable year is no longer subject to petition to the United States Tax Court or any Missouri courts; or (III) if a petition with respect to such determination is filed with such court, a decision by such court as to the amount of the State Credit for such taxable year becomes final and not subject to appeal; or (IV) if an appeal from such decision is filed, a decision of a court upon such appeal becomes final and not subject to further appeal.  Any State Credits which are recaptured pursuant to Chapter 135 of the Revised Statutes of Missouri, other than due to an Assignment of an Interest

W6691255

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

or a disposition of the Apartment Complex, shall be deemed not to have been finally allowed for purposes of this Section 9.2 E.

### 9.3   Overriding Allocations of Profits and Losses.

A.   (i)   Notwithstanding anything contained in Section 9.1 hereof or this Section 9.3 to the contrary, if there is a net decrease in Partnership Minimum Gain during a taxable year of the Partnership, then there shall be allocated to each Partner, before any other allocation of any item of income, gain, loss, deduction or credit is made for such taxable year, items of income and gain for such taxable year (and, if necessary, for subsequent taxable years), in the order provided in Section 1.704-2(j)(2) of the Regulations, equal to such Partner's share of the net decrease in Partnership Minimum Gain during such year as specified in Section 1.704-2(g)(2) of the Regulations, unless an exception specified in Section 1.704-2(f) of the Regulations applies. The allocation contained in this Section 9.3.A(i) is intended to comply with the minimum gain chargeback requirement in Section 1.704-2(f) of the Regulations, and shall be interpreted consistently therewith. Thereafter, subject to Section 9.3.F hereof, all Profits and Losses shall be allocated as provided for in Sections 9.1, 9.3.A(ii), 9.3.B, 9.3.D and 9.3.E hereof.

(ii)   Notwithstanding anything contained in Section 9.1 hereof or this Section 9.3 to the contrary, except Section 9.3.A(i) hereof, if there is a net decrease in Partner Nonrecourse Debt Minimum Gain during a taxable year of the Partnership, then there shall be allocated to each Partner who has a share of the Partner Nonrecourse Debt Minimum Gain determined in accordance with Section 1.704-2(i)(5) of the Regulations, items of income and gain for such taxable year (and, if necessary, subsequent taxable years), in the order provided in Section 1.704-2(j)(2) of the Regulations, equal to such Partner's share of the net decrease in Partner Nonrecourse Debt Minimum Gain during such year as specified in Section 1.704-2(i)(5) of the Regulations, unless an exception specified in Section 1.704-2(i)(4) of the Regulations applies. The allocation contained in this Section 9.3.A(ii) is intended to comply with the minimum gain chargeback requirement in Section 1.704-2(i)(4) of the Regulations, and shall be interpreted consistently therewith. Thereafter, subject to Section 9.3.F hereof, all Profits and Losses shall be allocated as provided for in Sections 9.1, 9.3.B, 9.3.D and 9.3.E hereof.

(iii)   The Partnership Minimum Gain and, accordingly, the minimum gain chargeback requirement amount for each partner as of the date of this Agreement, shall be zero (0).

B.   Notwithstanding any provisions of Section 9.1 hereof or this Section 9.3 to the contrary, but subject to the provisions of Section 9.3.A hereof, in the event any Partner unexpectedly receives any adjustments, allocations, or distributions described in Section 1.704.1(b)(2)(ii)(d)(4), 1.704-1(b)(2)(ii)(d)(5), or 1.704-1(b)(2)(ii)(d)(6) of the Regulations, items of Partnership income and gain (including gross income) shall be specially allocated to each such Partner in an amount and manner sufficient to eliminate, to the extent required by the Regulations, the Adjusted Capital Account Deficit of such Partner as quickly as possible, provided that an allocation pursuant to this Section 9.3.B shall be made only if and to the extent that such Partner would have an Adjusted Capital Account Deficit after all other allocations

W669125.5

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

provided for in this Article IX have been tentatively made as if this Section 9.3.B were not in this Agreement. In the event that any such adjustments, allocations or distributions create an Adjusted Capital Account Deficit for more than one Partner in any taxable year of the Partnership, all such items of income and gain of the Partnership for such taxable year and all subsequent taxable years shall be allocated among all such Partners in proportion to their respective Adjusted Capital Account Deficits in such amount and manner sufficient to eliminate such Adjusted Capital Account Deficits as quickly as possible. The allocation contained in this Section 9.3.B is intended to comply with the qualified income offset requirement in Section 1.704-1(b)(2)(ii)(d) of the Regulations, and shall be interpreted consistently therewith. Thereafter, subject to Section 9.3.F hereof, all Profits and Losses shall be allocated as provided for in Sections 9.1, 9.3.D and 9.3.E hereof.

C. Intentionally Omitted.

D. Notwithstanding any provisions of Section 9.1 hereof or this Section 9.3 to the contrary, but subject to the provisions of Sections 9.3.A and 9.3.B hereof:

(i) (a)  in accordance with Section 704(c) of the Code and the Regulations promulgated thereunder, income, gain, loss, and deduction with respect to any property contributed to the capital of the Partnership shall, solely for tax purposes, be allocated among the Partners as provided in Section 704(c) of the Code so as to take account of any variation between the adjusted basis of such property to the Partnership for Federal income tax purposes and its initial Gross Asset Value; (b) in the event the Gross Asset Value of any Partnership asset is adjusted as provided herein, subsequent allocations of income, gain, loss, and deduction with respect to such asset shall take account of any variation between the adjusted basis of such asset for Federal income tax purposes and its Gross Asset Value in the same manner as under Section 704(c) of the Code and the Regulations promulgated thereunder; and (c) any elections or other decisions relating to the allocations provided in this Section 9.3.D(i) shall be made by the General Partners with the Consent of the Special Limited Partner as provided in Section 704(c) of the Code in any manner that reasonably reflects the purpose and intention of this Agreement; allocations pursuant to this Section 9.3.D(i) are solely for purposes of Federal, state, and local taxes and shall not affect, or in any way be taken into account in computing, any Partner's Capital Account or share of Profits, Losses, other items, or distributions pursuant to any provision of this Agreement;

(ii) the General Partners shall be allocated any imputed interest expense with respect to any Operating Loans;

(iii) Intentionally Omitted;

(iv) in the event any Investor Limited Partner has a deficit Capital Account balance at the end of any fiscal year of the Partnership that is in excess of the sum of (a) the amount such Partner is obligated to restore to its Capital Account (pursuant to the terms of such Partner's promissory note or otherwise) and (b) the amount such Partner is deemed to be obligated to restore to its Capital Account pursuant to the penultimate sentences of Sections 1.704-2(g)(1) and 1.704-2(i)(5) of the Regulations, each such Partner shall be specially allocated items of Partnership income and gain in the amount of such excess as quickly as

W669125.5

- 61 -

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

possible, provided that an allocation pursuant to this Section 9.3.D(iv) shall be made if and only to the extent that such Partner would have a deficit Capital Account balance in excess of such sum after all other allocations provided for in this Article IX have been tentatively made as if Section 9.3.B hereof and this Section 9.3.D(iv) were not in this Agreement;

(v) to the extent the Partnership has taxable interest income with respect to any promissory note issued by a Partner to the Partnership:

(a) such interest income shall be specially allocated to the Partner issuing such promissory note; and

(b) the amount of such interest income shall be excluded from the Capital Contributions credited to such Partner's Capital Account in connection with payments of principal with respect to such promissory note;

(vi) the Limited Partner shall be allocated an amount of Profits resulting from a Sale or Refinancing Transaction equal to the Return Amount.

E. (i) The "Regulatory Allocations" consist of the "Basic Regulatory Allocations," as defined in Section 9.3.E(ii) hereof, the "Nonrecourse Regulatory Allocations," as defined in Section 9.3.E(iii) hereof, and the "Partner Nonrecourse Regulatory Allocations," as defined in Section 9.3.E(iv) hereof.

(ii) The "Basic Regulatory Allocations" consist of (a) allocations pursuant to the last sentence of Section 9.1.B hereof, and (b) allocations pursuant to Sections 9.1.F, 9.3.B, and 9.3.E(iv) hereof. Notwithstanding any other provision of this Agreement, other than the Regulatory Allocations, the Basic Regulatory Allocations shall be taken into account in allocating items of income, gain, loss and deduction among the Partners so that, to the extent possible, the net amount of such allocations of other items and the Basic Regulatory Allocations to each Partner shall be equal to the net amount that would have been allocated to each such Partner if the Basic Regulatory Allocations had not occurred. For purposes of applying the foregoing sentence, allocations pursuant to this Section 9.3.E(ii) shall only be made with respect to allocations pursuant to Section 9.1.F hereof to the extent the General Partners reasonably determine that such allocations will otherwise be inconsistent with the economic agreement among the Partners.

(iii) The "Nonrecourse Regulatory Allocations" consist of all allocations pursuant to Sections 9.1.D(i) and 9.3.A(i) hereof. Notwithstanding any other provision of this Agreement, other than the Regulatory Allocations, the Nonrecourse Regulatory Allocations shall be taken into account in allocating items of income, gain, loss and deduction among the Partners so that, to the extent possible, the net amount of such allocations of other items and the Nonrecourse Regulatory Allocations to each Partner shall be equal to the net amount that would have been allocated to each such Partner if the Nonrecourse Regulatory Allocations had not occurred. For purposes of applying the foregoing sentence, (a) no allocations pursuant to this Section 9.3.E(iii) shall be made prior to the taxable year of the Partnership during which there is a net decrease in Partnership Minimum Gain, and then only to the extent necessary to avoid any potential economic distortions caused by such net decrease in Partnership Minimum

W669125.5

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

Gain, and (b) allocations pursuant to this Section 9.3.E(iii) shall be deferred with respect to allocations pursuant to Section 9.1.D(i) hereof to the extent the General Partners reasonably determine that such allocations are likely to be offset by subsequent allocations pursuant to Section 9.3.A(i) hereof.

(iv)   The "Partner Nonrecourse Regulatory Allocations" consist of all allocations pursuant to Sections 9.1.D(ii) and 9.3.A(ii) hereof.  Notwithstanding any other provision of this Agreement, other than the Regulatory Allocations, the Partner Nonrecourse Regulatory Allocations shall be taken into account in allocating items of income, gain, loss and deduction among the Partners so that, to the extent possible, the net amount of such allocations of other items and the Partner Nonrecourse Regulatory Allocations to each Partner shall be equal to the net amount that would have been allocated to each such Partner if the Partner Nonrecourse Regulatory Allocations had not occurred.  For purposes of applying the foregoing sentence, (a) no allocations pursuant to this Section 9.3.E(iv) shall be made with respect to allocations pursuant to Section 9.1.D(ii) hereof relating to a particular Partner Nonrecourse Debt prior to the taxable year of the Partnership during which there is a net decrease in Partner Minimum Gain attributable to such Partner Nonrecourse Debt, and then only to the extent necessary to avoid any potential economic distortions caused by such net decrease in Partner Minimum Gain, and (b) allocations pursuant to this Section 9.3.E(iv) shall be deferred with respect to allocations pursuant to Section 9.1.D(ii) hereof relating to a particular Partner Nonrecourse Debt to the extent the General Partners reasonably determine that such allocations are likely to be offset by subsequent allocations pursuant to Section 9.3.A(ii) hereof.

(v)   The General Partner shall have reasonable discretion, with respect to each taxable year of the Partnership, to (a) apply the provisions of Sections 9.3.E(ii), (iii) and (iv) hereof in whatever order is likely to minimize the economic distortions that might otherwise result from the Regulatory Allocations, and (b) divide all allocations pursuant to Sections 9.3.E(ii), (iii) and (iv) hereof among the Partners in a manner that is likely to minimize such economic distortions.

(vi)   To the extent that Section 9.1 hereof in any of its subsections provides for references to the allocation of Profits or Losses pursuant to particular subsections within Section 9.1 hereof, including, without limitation, the aggregate Profits or Losses previously allocated pursuant to a subsection, such subsection references shall be deemed to incorporate allocations of Profits or Losses pursuant to this Section 9.3 to the extent that the allocation of Profits or Losses pursuant to this Section 9.3 is of the same category of Profits or Losses.

F.   Notwithstanding anything to the contrary contained herein, Sections 9.3.A and 9.3.B hereof shall be applied in the order provided in Section 1.704-2 of the Regulations.

G.   Any allocations made pursuant to this Section 9.3 shall be taken into account in the making of subsequent allocations under other sections of this Article IX in a manner that will, to the maximum extent possible, avoid or eliminate duplicative or excessive allocations of income to any Partner.

H.   Notwithstanding anything to the contrary herein, to the extent that the Partnership is treated by the Internal Revenue Service as receiving income as a result of the

W6691125.5

- 63 -

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

Capital Contributions of the State Limited Partner, the General Partner shall indemnify and hold harmless the Limited Partner from and against any income tax liability assessed against the Limited Partner, together with a payment to the Investor Limited Partner in an amount equal to any income tax assessed as a result of the receipt of the foregoing payment.

### 9.4 Certain Additional Allocations.

A. For income tax purposes, if the Partnership in any year realizes income or is allowed a deduction (including additional depreciation or amortization as a result of adding an item to its basis) as a result of the transfer of an Interest or the transfer of an interest in property to or from a Partner, the difference between the amount taken into account for tax purposes and the amount otherwise taken into account under this Agreement shall be allocated solely to such Partner.

B. In the event there is more than one General Partner, all Profits and Losses or distributions to the General Partner as a Class shall be allocated among the General Partners as they shall agree; provided, however, that any not-for-profit General Partner shall not be allocated Profits or Losses or be distributed distributions greater than .01% of Partnership Profits, Losses and distributions; and further provided that any such allocation must have substantial economic effect as defined in Section 1.704-1(b)(2) of the Regulations.

C. Solely for purposes of determining a Partner's proportionate share of the "excess nonrecourse liabilities" of the Partnership within the meaning of Section 1.752-3(a)(3) of the Regulations, the Partner's interests in Partnership Profits are as provided in Section 9.1.D hereof.

D. To the extent permitted by Sections 1.704-2(h) and 1.704-2(i)(6) of the Regulations, the General Partner shall endeavor to treat distributions of Cash Flow or Sale or Refinancing Transaction Proceeds as having been made from the proceeds of a Nonrecourse Liability or a Partner Nonrecourse Debt only to the extent that such distributions would cause or increase an Adjusted Capital Account Deficit for the General Partners.

E. Prior to Completion, all Profits and Losses (other than Depreciation) arising from operations of the Apartment Complex shall be allocated to the General Partner. Prior to Completion, all Profits and Losses (other than Depreciation) arising from the investment of Capital Contributions, after deduction of all applicable interest expenses (including all investment interest expense prior to Completion which is not capitalized), shall be allocated to the General Partner.

F. The Partners are aware of the income tax consequences of the allocations made by this Article IX and hereby agree to be bound by the provisions of this Article IX in reporting their shares of Partnership income and loss for income tax purposes.

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

9.5  <u>Purchase Option.</u>  The Limited Partner and the State Limited Partner have entered into that certain Purchase Option Agreement, dated as of even date herewith, whereby the Limited Partner has an option to purchase a portion of the Capital Account of the State Limited Partner, pursuant to the terms of the Purchase Option Agreement.

W669125.5

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

## ARTICLE X

### TRANSFER OF LIMITED PARTNER INTERESTS

10.1  Assignment of Limited Partner Interests.

A.  Prior to the payment of the Capital Note, the Limited Partner and the Special Limited Partner shall have the right to make an Assignment of their Interests only with the consent of the Managing General Partner; provided, however, that the Limited Partner and the Special Limited Partner shall have the right to assign their respective Interests to any entity which is an Affiliate of Related Capital Company without first obtaining the consent of the Managing General Partner.  After payment of the Capital Note, the Limited Partner and the Special Limited Partner shall have the right at any time to make an Assignment of their Interests without the consent or approval of any Partner.  The General Partner shall cooperate with the Limited Partner and the Special Limited Partner in facilitating such Assignment by promptly furnishing at the Limited Partner's expense including, without limitation, all legal, accounting and document preparation expense associated directly or indirectly with such assignments, complete and accurate financial and other relevant data regarding the Partnership, the Apartment Complex, the General Partner and the Affiliates of the General Partner and any other matters reasonably necessary in the judgment of the Special Limited Partner to facilitate and effect such Assignment provided that the General Partner shall have no responsibility to the Assignees of the Limited Partners unless admitted to the Partnership.  If an Assignee of an Interest transferred by the Special Limited Partner in accordance with this Section 10.1 desires to be admitted as a Substitute Limited Partner having the rights of the Special Limited Partner, such Assignee shall be admitted to the Partnership as a Substitute Special Limited Partner only with the consent of the Managing General  Partner, which consent shall not be unreasonably withheld or delayed, provided however, such  consent shall not be required with respect to an assignment of the Special Limited Partner's Interest to any entity which is an Affiliate of Related Capital Company. If the Assignee of an Interest transferred by the Limited Partner in accordance with this Section 10.1 desires to be admitted as a Substitute Limited Partner having the rights of the Limited Partner, such Assignee shall be so admitted only with the consent of the Managing General Partner, which consent may not be unreasonably withheld or delayed, provided however, such consent shall not be required with respect to an assignment of the Limited Partner's Interest to any entity which is an Affiliate of Related Capital Company, provided that if at the time such Assignee is admitted the Capital Note has not been satisfied,  such Assignee shall upon such admission deliver to the Partnership a note in the form of and as a replacement of the Capital Note together with a pledge agreement in the form of the Pledge Agreement, and financing statements required to perfect such pledge.  Each Substituted Limited Partner shall execute such instrument or instruments as shall be required by the Managing General Partner to signify its agreement to be bound by all the provisions of this Agreement and, the Project Documents, if required, and shall pay reasonable legal fees and filing costs in connection with its substitution as a limited partner hereunder.  The Limited Partner and the Special Limited Partner shall notify the Managing General Partner as to any proposed Assignment of their Interests.  The Partnership may pledge the Capital Note and its rights under the Pledge Agreement to a Mortgagee as

W669125.5

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

additional collateral security for the loan made to the Partnership by such Mortgagee, in which event such Mortgagee shall have all of the rights of the Partnership as pledgee under the Pledge Agreement.

B.  Notwithstanding any other provision of this Agreement, the General Partner hereby consents for all purposes, including, without limitation, under Section 10.1.A hereof, to the pledge of Interests by the Limited Partner and the Special Limited Partner to Fleet National Bank, individually, and as agent for other lenders ("Fleet"), to secure a loan to the Limited Partner to enable the Limited Partner to make its Capital Contribution to the Partnership (the "Fleet Pledge"), and further acknowledges and agrees that Fleet (and its successors and assigns) shall have all or any of the rights of a secured party to retain or sell the Interests so pledged. Notwithstanding anything to the contrary in this Agreement, if Fleet or its designee or assignee becomes an Assignee as a result of the Fleet Pledge, it shall automatically be admitted as a Substitute Limited Partner with all the rights and obligations of the Limited Partner hereunder. Fleet, as agent, is an intended third party beneficiary of this Section.

C.  So long as the Fleet Pledge or the Pledge Agreement shall not have been released in accordance with its terms, (i) the Interests will not be, and will not become, "investment property" or held in a securities account within the meaning of the New York Uniform Commercial Code (the "NY UCC") or the Uniform Commercial Code in effect in the State (the "State UCC") and will be, and will remain, "general intangibles" within the meaning of Article 9 of the NY UCC and the State UCC and (ii) any action by any Partner to cause any of the Interests to be deemed to be or to be treated as a "security" or as "investment property" or to be held in a "securities account" within the meanings of Article 8 and Article 9, respectively, of the NY UCC or the State UCC, shall be void and of no effect unless (a) Fleet (if it is the pledgee of such Interest at the time of such action) has consented to such action, (b) such Interests are certificated and (b) the certificates evidencing the Limited Partner Interests are delivered to either (I) Fleet (as agent), if it is a pledgee of the Interests at the time of such action or (ii) the Partnership, if the Fleet Pledge has been released in accordance with its terms. Fleet, as agent, is an intended third party beneficiary of this Section.

D.  Prior to the payment of the State Capital Note, the State Limited Partner shall have the right to make an Assignment of its Interest only with the consent of the Managing General Partner. After payment of the State Capital Note, the State Limited Partner shall have the right at any time to make an Assignment of its Interest without the consent or approval of any Partner.  The General Partner shall cooperate with the State Limited Partner in facilitating such Assignment by promptly furnishing at the State Limited Partner's expense including, without limitation, all legal, accounting and document preparation expense associated directly or indirectly with such assignments, complete and accurate financial and other relevant data regarding the Partnership, the Apartment Complex, the General Partner and the Affiliates of the General Partner and any other matters reasonably necessary in the judgment of the State Limited Partner to facilitate and effect such Assignment provided that the General Partner shall have no responsibility to the Assignees of the State Limited Partner unless admitted to the Partnership.  If the Assignee of an Interest transferred by the State Limited Partner in accordance with this Section 10.1 desires to be admitted as a Substitute Limited Partner having the rights of the State Limited Partner, such Assignee shall be so admitted only with the consent of the Managing General Partner, which

W669125.5

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

consent may not be unreasonably withheld or delayed. Each Substituted Limited Partner shall execute such instrument or instruments as shall be required by the Managing General Partner to signify its agreement to be bound by all the provisions of this Agreement and, the Project Documents, if required, and shall pay reasonable legal fees and filing costs in connection with its substitution as a limited partner hereunder. The State Limited Partner shall notify the Managing General Partner as to any proposed Assignment of its Interest. The Partnership may pledge the State Capital Note and its rights under the State Pledge Agreement to a Mortgagee as additional collateral security for the loan made to the Partnership by such Mortgagee, in which event such Mortgagee shall have all of the rights of the Partnership as pledgee under the State Pledge Agreement. Notwithstanding anything to the contrary in this Agreement, if the Mortgagee or its designee or assignee becomes an Assignee as a result of the exercise of its remedies under the State Pledge Agreement, it shall automatically be admitted as a Substituted Partner with all the rights and obligations of the State Limited Partner. Notwithstanding anything to the contrary contained herein, the parties acknowledge and agree that (i) the State Limited Partner has pledged or will pledge its interest in the Partnership to Bank Midwest or another warehouse lender and that such lender's consent is required for the transfer of all or a portion of the Partnership interest of State Limited Partner and (ii) that upon foreclosure of such security interest, any such warehouse lender may be admitted as substitute State Limited Partner hereunder, provided that such substitute State Limited Partner shall be subject to the terms and conditions hereof. The parties hereto agree to reasonably cooperate, at the expense, if any, of State Limited Partner, with the State Limited Partner and its warehouse lender to properly document and otherwise effectuate the provisions of clauses (i) and (ii) above.

10.2 <u>Substituted Partners; Admission</u>.

A. The General Partner may not admit any additional partners to the Partnership without the Consent of the Special Limited Partner and the State Limited Partner, pursuant to the provisions of Section 10.2.C hereof.

B. Any Assignee shall not be admitted as a Substituted Partner unless (i) the Assignee expressly agrees to be bound, to the same extent as the Assignor, by the provisions of this Agreement, the Project Documents and any other documents required in connection therewith and to assume the obligations of the Assignor hereunder; (ii) the Assignee shall have agreed to pay all reasonable expenses and legal fees relating to the Assignment and its admission as a Substituted Partner and (iii) the Assignor or Assignee shall have provided an opinion to the Partnership that such Assignment has been made in accordance with the registration provisions of any applicable securities laws or is exempt therefrom.

C. Upon the admission of a Substituted Partner, Schedule A shall be amended to reflect the name and address of such Substituted Partner and to eliminate the name and address of the Assignor, and an amendment to this Agreement reflecting such admission shall be filed in accordance with the Uniform Act. No consent or approval of any Limited Partner or Special Limited Partner (other than the Assignor and the Assignee) shall be required and the General Partners may exercise the power of attorney granted in Section 14.2 hereof to effect the provisions of this Article X.

10.3 <u>Assignees</u>.

W669125.5

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

A.  Any Person who acquires in any manner whatsoever any Interest, irrespective of whether such Person has accepted and adopted in writing the terms and provisions of this Agreement, shall be deemed by the acceptance of the benefit of the acquisition thereof to have agreed to be subject to and bound by all the obligations of this Agreement that any predecessor in interest of such Person was subject to or bound by.  A Person acquiring an Interest, including the personal representatives and heirs of a deceased Partner, shall have only such rights, and shall be subject to all the obligations, as are set forth in this Agreement; and, without limiting the generality of the foregoing, such Person shall not have any right to have the value of his Interest ascertained or receive the value of such Interest or, in lieu thereof, profits attributable to any right in the Partnership, except as herein set forth.

B.  Any Assignee of an Interest pursuant to an Assignment satisfying the conditions of this Article X who does not become a Substituted Partner in accordance with this Article X shall have the right to receive the same share of the profits and losses and distributions of the Partnership to which his Assignor would have been entitled.  If such Assignee desires to make an Assignment of his Interest, he shall be subject to all the provisions of this Article X to the same extent and in the same manner as any Partner desiring to make an Assignment.

C.  In the event of an Assignment, all obligations of the Assignor to the Partnership hereunder shall be extinguished only by and to the extent of Capital Contributions made by him or his Assignee.

D.  In the event that an Assignment shall be made, there shall be filed with the Partnership a duly executed and acknowledged counterpart of the instrument making such Assignment.  Such instrument must evidence the written acceptance of the Assignee to all the terms and provisions of this Agreement.  If such an instrument is not so filed, the Partnership need not recognize any such purported Assignment for any purpose. The General Partner hereby acknowledges that the Limited Partner's Interest is pledged to Fleet National Bank, a national banking association, for itself and as Agent, and the State Limited Partner's Interest is pledged to its warehouse lender, for itself and as Agent, both pursuant to Section 10.1 above.

W669125.5

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

**ARTICLE XI**
**WITHDRAWAL OF A GENERAL PARTNER;**
**NEW GENERAL PARTNER**

11.1  Withdrawal.

A.  Except for an Involuntary Withdrawal or an Involuntary Assignment, a General Partner may not Withdraw from the Partnership or Assign, pledge or encumber all or any part of its General Partner Interest without the Consent of the Special Limited Partner (such consent to be granted only after consultation with the State Limited Partner, which consultation shall not last longer than five business days; it being agreed that if the Special Limited Partner and the State Limited Partner disagree, then the determination of the Special Limited Partner shall control), and, to the extent required, of each Authority and each Lender.  The consent of the Limited Partner shall not be required.  For purposes of this Agreement, the sale, transfer, or other conveyance, or the pledge or encumbering, of any controlling share of capital stock or partnership interest in a General Partner or any general partner thereof, or any other change in control of any such Person shall be deemed an Assignment by that General Partner of its General Partner Interest, provided, however, that the consent of the Special Limited Partner shall not be unreasonably withheld to any transfer, pledge or encumbrance of the stock of the general partner of a General Partner; provided, however, that if such transfer, pledge or encumbrance could result in a change in control of the general partner of the General Partner a denial of such consent shall be deemed to be reasonable.

B.  Each General Partner shall indemnify and hold harmless the Partnership and all Partners from any Withdrawal or Assignment in violation of Section 11.1.A hereof or in violation of any of the Project Documents.  Except for an Involuntary Withdrawal or an Involuntary Assignment, in the event of a Withdrawal of a General Partner or the Assignment, pledge or encumbrance of any part of its General Partner Interest in violation of Section 11.1.A hereof, the Interest of the General Partner who so Withdrew, Assigned, pledged or encumbered any part of its Interest shall immediately and automatically terminate on the effective date of such Withdrawal (or the effective date of such Assignment, pledge or encumbrance) and such General Partner shall have no further right to participate in the management or operation of the Partnership or to receive any allocations of profits and losses, any future distributions from the Partnership or any other funds or assets of the Partnership to the extent attributable to the period after such Withdrawal or Assignment, nor shall it be entitled to receive or to be paid by the Partnership any further payments of fees (except for fees which have been earned but are unpaid) and shall be repaid any outstanding advances or loans made by it to the Partnership but subject to any actual damages incurred by the Partnership as a result of such Withdrawal or Assignment. From and after the effective date of such Withdrawal, Assignment, pledge or encumbrance, the rights of the Withdrawing General Partner to receive or to be paid allocations, distributions, funds or assets attributable to the period after such Withdrawal or Assignment shall be reallocated to the other General Partner or General Partners, or if there is no other general partner of the Partnership at that time, to the Special Limited Partner.  Notwithstanding such Withdrawal, Assignment, pledge or encumbrance, and loss of any right to receive such future allocations, distributions, funds or assets, the Withdrawing General Partner shall remain liable to

W669125.5

- 70 -

the Partnership and the other Partners for all obligations theretofore incurred by it under this Agreement, which may arise upon such Withdrawal, Assignment, pledge or encumbrance. Notwithstanding anything herein to the contrary, any remaining Partner shall have all other rights and remedies against the Withdrawing General Partner as provided by law and the Withdrawing General Partner shall have the right to enforce its rights hereunder including without limitation under any indemnification provisions.

C. Upon the Involuntary Withdrawal of a General Partner, its General Partner Interest shall automatically become an Interest of a Class B Limited Partner. Subject to the provisions of Section 11.3.B hereof, the Class B Limited Partner shall be entitled to receive the fees payable to the Withdrawing General Partner set forth in Article VI hereof, to be repaid any outstanding advances or loans made by the Withdrawing General Partner to the Partnership and to share in the profits and losses and distributions at the same times and in the same manner as the Withdrawing General Partner would have otherwise received as a General Partner, but shall not be entitled to participate in the management of the Partnership's business or to participate in any allocation of profits and losses and distributions payable to the Limited Partner or the Special Limited Partner.

11.2 <u>Effect of Withdrawal; Election to Continue Business</u>. Upon the occurrence of an event giving rise to a Withdrawal of a General Partner other than by reason of an Involuntary Assignment, (A) any remaining General Partner, if any, or, if there be no remaining General Partner, the Withdrawing General Partner or its legal representative shall promptly notify the Investor Limited Partners of such Withdrawal (the "Withdrawal Notice"), (B) whether or not the Withdrawal Notice shall have been sent as provided herein, the Special Limited Partner shall have the right to become an additional General Partner (and to become the Managing General Partner if the Withdrawing General Partner was previously the Managing General Partner) and (C) the Partnership shall be dissolved and terminated unless the then General Partner or all of the then General Partners elect to continue the business of the Partnership. The Withdrawal of a General Partner shall not be deemed to be effective until the expiration of 90 days from the day on which the Withdrawal Notice has been mailed to the Investor Limited Partners, unless the Special Limited Partner shall have elected to become an additional General Partner as provided herein, whereupon the withdrawal of that General Partner shall be deemed effective upon the notification of all the other Partners by the Special Limited Partner of such election. A Withdrawn General Partner shall remain liable for obligations incurred by it under this Agreement through the effective date of its Withdrawal, even if such Withdrawal shall be an Involuntary Withdrawal and in compliance with or in violation of this Agreement.

11.3 <u>Formation of New Partnership</u>.

A. Subject to the provisions of Section 11.1.A hereof, upon the occurrence of an event giving rise to the withdrawal (other than by reason of an Involuntary Assignment) of a General Partner, if there is then no other General Partner, or, if there is then one or more other General Partners, but the remaining General Partner or General Partners or the Special Limited Partner do not elect to continue the business of the Partnership pursuant to Section 11.2 hereof, the Investor Limited Partners may elect within 90 days thereafter in accordance with the Uniform Act to form a new partnership on substantially identical terms to those of this Agreement to carry

W669125.5

- 71 -

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

on the business of the Partnership. In so doing, the Investor Limited Partners shall designate a successor general partner to serve in place of the Withdrawing General Partner with the approval of each Authority and each Lender, if such approval is required; provided, however, that no Person shall be designated or admitted as a successor general partner if he is below the age of majority in the State or has theretofore been adjudged insane or incompetent, and unless, in the opinion of the Partnership's counsel, such Person has a financial net worth to assure that he shall satisfy the financial net worth requirements of the Internal Revenue Service for the Partnership to continue to be treated as a partnership for Federal income tax purposes.

B. (i)  If the Investor Limited Partners shall designate a successor general partner and obtain all necessary approvals therefor, the Class B Limited Partner Interest of the Withdrawing General Partner where the Withdrawal was Involuntary shall be transferred to the successor general partner upon its written assumption of the obligations of the Withdrawing General Partner under this Agreement (except for any obligations of the Withdrawing General Partner under this Agreement specifically excepted by the Special Limited Partner). In such event, the successor general partner shall pay to the Withdrawing General Partner or its legal representative as the purchase price for its Class B Limited Partner Interest an amount to be agreed upon between them.

(ii)  Unless any other General Partner shall agree to continue the Partnership pursuant to Section 11.2 hereof, the Interest of such other General Partner other than the Withdrawing General Partner shall be converted into and shall be deemed to be that of a Class B Limited Partner with the same interest in the Partnership as such General Partner had as a general partner prior to the Withdrawal (as reduced in the manner set forth in Section 11.3.B(iii) hereof).

(iii)  If no agreement can be reached as to the amount of the purchase rice for the Class B Limited Partner Interest of the Withdrawing General Partner under Section 11.3.B(i) hereof and if the successor general partner does not own a .01% interest in all material items of profits and losses and distributions of the Partnership, each limited partner of the Partnership (including the person succeeding to the Interest of the Withdrawing General Partner as a Class B Limited Partner and any other Class B Limited Partner) shall transfer a pro rata portion of his Interest to the successor general partner in an amount sufficient to give the successor general partner such .01% interest and the successor general partner shall pay to each limited partner of the Partnership (including the person succeeding to the Interest of the Withdrawing General Partners as a Class B Limited Partner and any other Class B Limited Partner) as the purchase price for his Interest, an amount determined by the Special Limited Partner.

C.  In exercising the election permitted under Section 11.3.A hereof, the successor general partner and all the limited partners of the Partnership agree to be bound by the provisions of this Agreement; provided, however, that if this Agreement is amended by them, no amendment shall be made without the Consent of the Special Limited Partner and unless counsel to the Partnership shall issue an opinion that the Partnership shall continue to be treated as a partnership for Federal income tax purposes; provided further, however, that the amended agreement shall be as similar in form and substance to this Agreement as practicable and the successor partnership shall engage in the same business as the Partnership employing the assets

W669125.5

- 72 -

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

and name of the Partnership to the extent possible. No amendment may be made or action taken which decreases the rights of the Withdrawing General Partner.

D. Any new limited partnership formed pursuant to this Section 11.3 shall succeed to all rights and assets of the Partnership subject to all liabilities of the Partnership. Each limited partner of the Partnership shall be a limited partner of any limited partnership formed pursuant to this Section 11.3 and agrees to execute all documents and take such further action as may be necessary in connection therewith. Until such time as the new limited partnership agreement is executed by all of the Partners, this Agreement shall continue to be binding on all of the partners of the Partnership. Upon execution of a declaration to be bound by the terms of this Agreement and delivery of such declaration to any partner of the Partnership, the general partner of such new limited partnership shall succeed to all the rights and liabilities of the then general partners of the Partnership under this Agreement.

11.4 Special Removal Rights.

A. Notwithstanding any other provision of this Agreement to the contrary, in the event that

(i) any General Partner shall:

(a) have materially violated its fiduciary responsibilities as a General Partner of the Partnership;

(b) have materially breached this Agreement, the Contribution Agreement, the State Contribution Agreement the Recapture Guaranty Agreement, the State Recapture Guaranty Agreement or the Replacement Reserve Guaranty Agreement and such breach shall have continued uncured for thirty (30) days after notice thereof having been given by the Special Limited Partner and State Limited Partner; provided, however, that if such breach (or the effect of the breach) was of the type that could not reasonably be cured within 30 days, the Special Limited Partner shall not have the right to remove a General Partner under this Section 11.4.A(i)(b) with respect to such breach for a 60-day period after such notice is given so long as the General Partner diligently pursued a cure of such breach at all times during such 60-day period;

(c) willfully violate any law, regulation or order applicable to the Partnership which has a material adverse financial impact on the Partnership or the Apartment Complex; or

(d) become Bankrupt;

(ii) or if:

(a) the Partnership shall be in material breach of any Project Document (other than the Contribution Agreement) or any other material agreement or document affecting the Partnership or the Investor Limited Partners to which it is a party other than a breach caused by a default by the Investor Limited Partners, which breach has not been cured prior to the earlier of one-half of any grace or cure period which may be available so long as

W669125.5

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

during such period the General Partner has commenced and continued to cure such breach and has delivered reasonable assurances to the Special Limited Partner and State Limited Partner that such breach will be cured prior to the end of any grace or cure period or 60 days (whichever is shorter);

(b) (I) at any time (v) prior to the commencement of the Guaranty Period, if the Guarantor is at such time in default of its obligations under the Development Deficit Guaranty Agreement and such condition shall have continued uncured for ten (10) days following written notice thereof, or (w) the Guarantor is at such time in default of its obligations under the Operating Deficit Guaranty Agreement and such condition shall have continued uncured for ten (10) days following written notice thereof, or (x) after termination of the Guaranty Period, the Partnership shall have realized a deficit in Cash Flow in excess of $5,000 in each calendar month for a period of six consecutive months and the General Partner shall have failed to make an Operating Loan to the Partnership in the aggregate amount of such deficits within thirty (30) days following written notice thereof, (II) after Rental Achievement, the Partnership shall have had less than 100% of the apartment units in the Apartment Complex eligible to receive the Credits or State Credits in any month, (III) after Rental Achievement, the Partnership shall have had the qualified basis (as defined in Section 42 of the Code) of the Apartment Complex at the end of any taxable year prior to the taxable year starting January 1, 2005 be less than 95% of such basis at the close of the preceding tax year, except to the extent such shortfall in the qualified basis is due to an event of casualty or condemnation, provided that the General Partner is diligently proceeding to restore the Apartment Complex, or (IV) other than due to a change in the tax laws, the Partnership shall otherwise be in any situation where the amount of the Credits which the Partnership is entitled to claim under Section 42 of the Code be less than 95% of $803,126 (as such number is adjusted pursuant to Section 3.4.B(i) hereof) in any year during the Credit Period of the Partnership (other than any year therein in which Credits may not be claimed for 12 months) unless the Return Amount is paid in such year regardless as to whether such Return Amount would otherwise be due under Section 9.2.D;

(iii) a Completion shall not have occurred by the Completion Date, as such Completion Date may be extended pursuant to the Development Deficit Guaranty Agreement, unless the Interest of the Limited Partner and State Limited Partner is purchased pursuant to the Development Deficit Guaranty Agreement and State Development Deficit Guaranty Agreement, as applicable;

(iv) prior to the occurrence of Rental Achievement, (a) an uncured default exists under any material agreement or commitment entered into by the Partnership or binding thereon, or any such agreement or commitment shall have expired or shall have been terminated by any of the parties thereto and shall not have been extended and after the expiration or termination of such agreement or commitment a new agreement or commitment replacing such expired or terminated agreement or commitment shall not have been entered into on identical conditions or on terms or conditions otherwise acceptable to the Special Limited Partner, in its reasonable discretion, within such period of time as shall not have resulted in a material adverse effect on the ability to achieve Completion by the Completion Date or as extended as set forth in Section 11.4.A(iii) above or Rental Achievement; provided, however, that such period shall not exceed 90 days following such expiration or termination; or

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

(v) any Lender shall have commenced foreclosure proceedings against the Apartment Complex and such proceedings shall not have been stayed or dismissed within 90 days, unless the Interest of the Limited Partner and State Limited Partner is purchased pursuant to the Development Deficit Guaranty Agreement and State Development Deficit Guaranty Agreement, as applicable;

then, in any such event described in (i), (ii), (iii), (iv) or (v) above (a "Major Default") the Special Limited Partner shall have the right, but not the obligation, in its sole discretion, upon ten days' prior written notice to the General Partner, to remove such General Partner as general partner of the Partnership and terminate any contractual arrangements between the Partnership and any such General Partner's Affiliates and to appoint itself or any of its Affiliates to succeed such General Partner as a general partner of the Partnership in accordance with the provisions of Section 11.2 hereof. Each Partner hereby irrevocably constitutes and appoints the Special Limited Partner as its true and lawful attorney-in-fact and agent with full power and authority to act in its name, place and stead to execute, acknowledge, swear to, deliver, file, record and publish any documents which the Special Limited Partner reasonably deems necessary or appropriate to confirm and/or effect (x) the removal of the General Partner as General Partner of the Partnership and (y) the appointment of the Special Limited Partner or its designee as a General Partner of the Partnership including, without limitation, to:

(i)     To qualify or continue the Partnership as a limited partnership;

(ii)    To reflect a modification of the Partnership or an amendment of this Agreement or the Certificate of Limited Partnership of the Partnership in accordance with the terms hereof; and

(iii)   To effect transfers, admissions, withdrawals and substitutions of Partners as provided under the terms of this Agreement.

B. The General Partner agrees to indemnify and hold the Limited Partner, the State Limited Partner and the Special Limited Partner harmless from and against all losses, costs and expenses incurred and paid to third parties in connection with a Major Default (other than pursuant to Section 11.4.A(ii)(b)(I) (x) hereof) and the exercise of any of the remedies provided above, including, without limitation, all reasonable legal fees and other expenses of the Limited Partner, the State Limited Partner and the Special Limited Partner in connection with the transaction.

C. The removal of a General Partner pursuant to Section 11.4.A hereof (other than Section 11.4.A(i)(d) hereof) shall be treated for purposes of this Agreement as a voluntary Withdrawal of such General Partner from the Partnership. The removal of a General Partner pursuant to Section 11.4.A(i)(d) hereof shall be treated for purposes of this Agreement as an Involuntary Withdrawal of such General Partner from the Partnership.

D. On the happening of a Major Default, and if the Special Limited Partner does not elect to exercise the rights and powers granted to it pursuant to Section 11.4.A after notice from the State Limited Partner of its intentions to proceed as provided by this Paragraph D, then

W669125.5

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

the State Limited Partner shall have, and in its sole discretion may exercise, all of the rights and powers otherwise granted to the Special Limited Partner by <u>Section 11.4.A.</u>

11.5 <u>Additional General Partners</u>. At any time, the General Partner, with the Consent of the Special Limited Partner (but the consent of the Limited Partner shall not be necessary), and subject to any applicable approvals of each Authority and each Lender, may admit an additional general partner to the Partnership with such share of the aggregate General Partner's Interest as shall be agreed upon between the General Partners and the additional general partner. Any additional general partner, as a condition of receiving any Interest, shall agree to be bound by the Project Documents and any other document required in connection therewith and by the provisions of this Agreement to the same extent and on the same terms as the General Partner.

11.6 <u>Amendment of Schedule and Agreement</u>. Upon the admission of a successor or additional general partner or the Withdrawal of a General Partner, Schedule A attached hereto shall be amended to reflect such admission or Withdrawal and such amendment shall be filed as required by the Uniform Act. The General Partners may exercise the power of attorney granted in Section 14.2 hereof to effect the provisions of this Section 11.6.

11.7 <u>Survival of Liabilities</u>. It is expressly understood that no Withdrawal, Assignment, pledge or encumbrance of a General Partner's Interest, even if it results in the substitution of the Assignee as a Partner, shall release the Withdrawing General Partner from any liability to the Partnership which shall survive such Withdrawal, Assignment, pledge or encumbrance, including those set forth in the Uniform Act.

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

## ARTICLE XII

## DISSOLUTION AND TERMINATION OF THE PARTNERSHIP

12.1  Events Which Cause a Dissolution.  The Partnership shall continue in full force and effect until December 31, 2051, except that the Partnership shall be dissolved prior thereto upon the happening of any of the following events:

A.  An election to dissolve the Partnership made in writing by the General Partners, with the Consent of the Special Limited Partner;

B.  The Withdrawal of a General Partner if the Partnership is not continued in accordance with Section 11.2 hereof;

C.  Any event which shall make it unlawful for the existence of the Partnership to be continued; or

D.  The sale or other disposition of all or substantially all of the assets of the Partnership.

12.2  Actions of Liquidating Agent Upon Dissolution.  Upon the dissolution of the Partnership, the Partnership shall be liquidated in accordance with this Article XII and the Uniform Act.  The liquidation shall be conducted and supervised by the General Partner or, if there is no remaining general partner, by a person who shall be designated for such purpose by the Special Limited Partner (the General Partner, or such person so designated, being hereinafter referred to as the "Liquidating Agent").  The Liquidating Agent shall have all of the rights in connection with the liquidation and termination of the Partnership that a general partner would have with respect to the assets and liabilities of the Partnership during the term of the Partnership, and the Liquidating Agent is hereby expressly authorized and empowered to effectuate the liquidation and termination of the Partnership and the transfer of any assets and liabilities of the Partnership.  The Liquidating Agent shall have the right from time to time, by revocable powers of attorney, to delegate to one or more persons any or all of such rights and powers and the authority and power to execute documents in connection therewith, and to fix the reasonable compensation of each such person, which compensation shall be charged as an expense of liquidation.  The Liquidating Agent is also expressly authorized to distribute the Partnership's property to the Partners subject to liens.

12.3  Statements on Termination.  Each Partner shall be furnished with a statement prepared by the Liquidating Agent which shall set forth the assets and liabilities of the Partnership as at the date of complete liquidation, and each Partner's share thereof.  Upon compliance with the distribution plan set forth in Section 12.4 hereof, the Limited Partner, the State Limited Partner and the Special Limited Partner shall each cease to be a partner of the Partnership, and the Liquidating Agent shall execute, acknowledge and cause to be filed a certificate of termination of the Partnership.

W669125.5

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

12.4 <u>Priority on Liquidation; Distribution of Non-Liquid Assets.</u>

A.  The Liquidating Agent shall, to the extent feasible, liquidate the assets of the Partnership as promptly as shall be practicable.  To the extent the Proceeds are sufficient therefor, as the Liquidating Agent shall deem appropriate, the proceeds of such liquidation (after paying the reasonable expenses of liquidation and, if the Liquidating Agent is not the General Partner or an Affiliate, the reasonable compensation of such Liquidating Agent) shall be applied in accordance with the provisions of Section 9.2.B(i) through (ix) hereof, and the balance of such proceeds shall be distributed by the Liquidating Agent to the Partners pro rata in accordance with their respective Capital Accounts, as such accounts are determined after all adjustments are made as required herein to such accounts for the taxable year of the Partnership during which the liquidation occurs.

B.  If, in the sole discretion of the Liquidating Agent, he shall determine that it is not feasible to liquidate all or part of the assets of the Partnership or that an immediate sale of all or part of such assets would cause an undue loss to the Partners, the Liquidating Agent shall cause the fair market value of the assets not so liquidated to be determined by independent appraisal.  Such assets, as so appraised, shall be retained or distributed by the Liquidating Agent as follows (it being understood that the allocation of specific assets pursuant to this Section 12.4 shall require the Consent of the Special Limited Partner, which consent shall not be unreasonably withheld):

(i)  The Liquidating Agent shall retain assets having a value (which value shall be equal to the fair market value of such assets less the amount of any liability related thereto) equal to the amount by which the net proceeds of the liquidated assets are insufficient to satisfy the requirements of subparagraphs (i) through (ix) of Section 9.2.B hereof; and

(ii)  Thereafter to the Partners pro rata in accordance with their respective Capital Accounts, as such accounts are determined after all adjustments are made as required herein to such accounts for the taxable year of the Partnership during which the liquidation occurs.

Any distribution of assets in kind shall be distributed on the basis of the fair market value thereof and any Partner entitled to any interest in such assets shall receive such interest therein as a tenant-in-common with all other Partners so entitled.  If the Liquidating Agent, in his sole discretion, deems it not feasible to distribute to each Partner an aliquot share of each asset, the Liquidating Agent may allocate and distribute specific assets to one or more Partners as tenants-in-common as the Liquidating Agent shall determine to be fair and equitable, taking into consideration, inter alia, the basis for tax purposes of each asset distributed and the effect of crediting or charging the Capital Accounts for any unrealized appreciation or unrealized depreciation.

C.  Notwithstanding any other provision of this Article XII, in the event the Partnership is liquidated within the meaning of Section 1.704-1(b)(2)(ii)(g) of the Regulations but no Event specified in Section 12.1 hereof has occurred, the property of the Partnership shall not be liquidated, the Partnership's liabilities shall not be paid or discharged, and the Partnership's affairs shall not be wound up.  Instead, the Partnership shall be deemed to have

W669125.5

- 78 -

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

distributed its property in kind to the Partners, who shall be deemed to have assumed and taken subject to all Partnership liabilities, all in accordance with their respective Capital Accounts. Immediately thereafter, the Partners shall be deemed to have recontributed such property in kind to the Partnership, which shall be deemed to have assumed and taken subject to all such liabilities.

12.5 <u>Orderly Liquidation</u>. A reasonable time shall be allowed for the orderly liquidation of the assets of the Partnership and the discharge of liabilities so as to minimize the losses normally attendant upon a liquidation.

12.6 <u>No Goodwill Value</u>. At no time during continuation of the Partnership shall any value ever be placed on the Partnership name, or the right to its use, or to the goodwill appertaining to the Partnership or its business, either as among the Partners or for the purpose of determining the value of any Interest, nor shall the legal representatives of any Partner have any right to claim any such value. In the event of a termination and dissolution of the Partnership as provided in this Agreement, neither the Partnership name, nor the right to its use, nor the same goodwill, if any, shall be considered as an asset of the Partnership, and no valuation shall be put thereon for the purpose of liquidation or distribution, or for any other purpose whatsoever; nor shall any value ever be placed thereon as between the remaining or surviving Partners and the legal representatives of the estate of any deceased, insane, incompetent, dissolved, liquidated or Bankrupt Partner.

W669125.5

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

## ARTICLE XIII

## **FOREIGN PARTNERS**

13.1  Certification of Non-Foreign Status.

A.  Each Partner shall upon acquiring a Partnership Interest certify that he is not a Foreign Person on forms to be provided by the General Partners at the time of subscription.  At any time that an Interest is transferred or assigned, the transferee shall certify to non-foreign status prior to the transfer or assignment of such Interest.  Such certifications shall be made on a form to be provided by the General Partners.

B.  Each Partner shall notify the General Partners if he becomes a Foreign Person within 30 days of such change.

C.  Prior to a disposition of a United States Real Property Interest, a distribution attributable to a disposition of a United States Real Property Interest or any other distribution by the Partnership, each Partner may be required to certify to non-foreign status.

13.2  Withholding of Certain Amounts Attributable to Interests of Foreign Partners.

A.  In the event that either (i) the Partnership's actual or deemed amount realized upon disposition of any United States Real Property Interest is attributed to a Foreign Partner or (ii) the Partnership has effectively connected taxable income for any taxable year:

(i)  any tax required to be withheld under Sections 1445 or 1446 of the Code shall be charged to that Foreign Partner's Capital Account as if the amount of such tax had been distributed to such Partner;

(ii)  the General Partner shall have the right to make a loan to the Partnership in an amount equal to the amount of tax required to be withheld pursuant to Sections 1445 or 1446 of the Code to the extent that cash is needed to make the Sections 1445 or 1446 withholding payment attributable to that Foreign Partner; and

(iii)  the General Partner may retain appropriate portions of a Foreign Partner's distributions until any withholding obligations relating to that Foreign Partner are satisfied and may apply such distributions to repay any loan made pursuant to Section 13.2.A(ii) hereof.

B.  For the purposes of this Section 13.2, any person who fails to provide a certification of a non-foreign status when requested to do so by the General Partner shall be treated as a Foreign Person.

W669125.5

- 80 -

## ARTICLE XIV

## <u>MISCELLANEOUS</u>

14.1  <u>Law Governing</u>.  This Agreement shall be governed by and construed in accordance with the laws of the State applicable to contracts made and to be performed entirely therein.

14.2  <u>Power of Attorney</u>.  Each Partner hereby constitutes and appoints each General Partner who is an individual, each general partner of any General Partner which is a partnership and each of the President, each Vice President and the Secretary of any corporate General Partner, his true and lawful attorney-in-fact and agent with full power and authority to act in his name, place and stead to execute, acknowledge, swear to, deliver, file, record and publish any document requisite to carrying out the intention and purposes of the Partnership and this Agreement, including, but not limited to, the execution, acknowledgment, swearing to, delivery, filing, recording and publication of this Agreement and amendments thereto, documents, conveyances, leases, contracts, loan documents and/or counterparts thereof, the execution and filing of appropriate documents with any Authority or any Lender, and all other documents which such persons reasonably deem necessary or appropriate:

A.  To qualify or continue the Partnership as a limited partnership;

B.  To reflect a modification of the Partnership or an amendment of this Agreement;

C.  To reflect the dissolution and termination of the Partnership; or

D.  To effect transfers, admissions, withdrawals and substitutions of Partners as specifically provided under the terms of this Agreement.

No person shall take any action as an attorney-in-fact of any Limited Partner, State Limited Partner or any Special Limited Partner which is not authorized by the terms of this Agreement or would in any way increase the liability or decrease the rights of such Partner beyond the liability or rights expressly set forth in this Agreement.  This power of attorney may be revoked by any Partner by written notice of revocation (the "Notice of Revocation") to the General Partners. Upon receipt by the General Partners of a Notice of Revocation, the General Partners shall file with the appropriate office or agency an amendment to this Agreement reflecting such revocation; <u>provided, however,</u> that until such amendment is filed, any party may rely on this power of attorney as being valid.

14.3  <u>Counterparts</u>.  This Agreement may be signed in any number of counterparts, each of which shall be an original for all purposes, but all of which taken together shall constitute only one agreement.  The production of any executed counterpart of this Agreement shall be sufficient for all purposes without producing or accounting for any other counterpart thereof.

W669125.5

- 81 -

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

14.4 <u>Partners Independently Bound</u>.  The General Partners, the Special Limited Partner, the State Limited Partner and the Limited Partner shall become bound by this Agreement immediately upon its execution thereof and independently of the execution hereof by any other Partner.

14.5 <u>Separability of Provisions</u>.  Each provision of this Agreement shall be considered separable and if for any reason any provision or provisions herein (A) are determined to be invalid or contrary to any existing or future law, such invalidity shall not impair the operation of or affect those portions of this Agreement which are valid or (B) would cause any Limited Partner, State Limited Partner or any Special Limited Partner to be bound by the obligations of the Partnership (other than under the rules, directives and regulations of any Authority) under the laws of the State as the same may now or hereafter exist, such provision or provisions shall be deemed void and of no effect.

14.6 <u>Address and Notice</u>.  All notices, demands, solicitations of consent or approval, and other communications hereunder required or permitted shall be in writing and shall be deemed to have been given (i) when personally delivered, (ii) five days after the date when deposited in the United States mail and sent postage prepaid by registered or certified mail, return receipt requested, (iii) the next business day when deposited with a courier guaranteeing overnight delivery (provided that such courier has confirmed such delivery), or (iv) the next business day if sent by telefax or other electronic means that is generally available in the business community provided that confirmation of delivery is received, addressed as follows:  if intended for (A) the Partnership, to its principal place of business or (B) the Partners, to their respective addresses set forth on Schedule A, or to such other address which any Partner shall have given to the Partnership for such purpose by notice hereunder; provided, however, that copies of all such items (which shall not constitute notice hereunder) shall also be sent to the following: (i) Nixon Peabody, LLP, 401 Ninth Street, N.W. Suite 900, Washington, D.C. 20004, Attention: Richard S. Goldstein, Esq. and (ii) Rosenblum Goldenhersh Silverstein & Zafft, 7733 Forsyth, 4th Floor, Clayton, Missouri 63105, Attention: David T. Woods; and (iii) Holland & Knight LLP, 10 St. James Avenue, Boston, MA 02116, Attention: Douglas Clapp, Esq.

14.7 <u>Computation of Time</u>.  In computing any period of time pursuant to this Agreement, the day of the act, event or default from which the designated period of time begins to run shall not be included.

14.8 <u>Titles and Captions</u>.  All article and section titles or captions contained in this Agreement are for convenience only and shall not be deemed part of the text of this Agreement.

14.9 <u>Entire Agreement</u>.  This Agreement contains the entire understanding between and among the parties and supersedes any prior understandings and agreements between and among them respecting the subject matter of this Agreement.

14.10 <u>Agreement Binding</u>.  This Agreement shall be binding upon and inure to the benefit of the heirs, executors, administrators, legal representatives and permitted successors and assigns of the parties hereto.

W669125.5

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

14.11  <u>Parties in Interest</u>.  Nothing herein shall be construed to be to the benefit of or enforceable by any third party including, but not limited to, any creditor of the Partnership.

14.12  <u>Amendments; Other Actions</u>.

A.  This Agreement may not be amended or modified except by the General Partners with the Consent of the Special Limited Partner and the State Limited Partner and the approval, if required, of each Authority; <u>provided, however,</u> that all Partners must give their consent in writing to any amendment which would (i) extend the term of the Partnership as set forth in Section 12.1 hereof, (ii) amend this Section 14.12, (iii) increase or extend the liability or obligation of any Limited Partner, State Limited Partner or any Special Limited Partner, (iv) increase the amount of Capital Contributions payable by any Limited Partner, State Limited Partner or any Special Limited Partner, (v) accelerate the date of payment of any Installment or (vi) alter the distribution or allocation to the Partners of any profits and losses and distributions of the Partnership.

B.  Notwithstanding any other provision of this Agreement, no action may be taken under this Agreement unless such action is taken in compliance with the provisions of the Uniform Act.

C.  The General Partners acknowledge and agree that upon receipt of written notice from the Limited Partner that it desires to exercise the right(s) of the Special Limited Partner (a) to consent to the actions specified in Sections 5.5.B(iv), (x), (xi) and (xii) hereof, (b) to receive information and/or reports with regard to the physical and financial condition of the Apartment Complex and/or (c) under Section 11.4 hereof (including the right to appoint a successor General Partner upon the removal of a General Partner), such rights shall be exercisable exclusively by the Limited Partner and this Agreement shall be deemed to have been so amended to reflect that such rights are to be exercised exclusively by the Limited Partner.

D.  So long as the Fleet Pledge is outstanding, any amendment of those provisions herein of which Fleet, as agent, is a third party beneficiary, or any other amendment to any other provision herein which would materially affect Fleet's rights and priorities as agent under the Fleet Pledge, shall require the prior written consent of Fleet.  Fleet, as agent, is an intended third party beneficiary of this Section 14.12.

14.13  <u>Survival of Representations, Warranties and Agreements</u>.  All representations and warranties contained in Section 5.9 hereof and all other representations which are delivered in connection with the payment of any capital contributions by the Limited Partner shall survive for two years following the date the Fourth  Contribution is due and payable and no action may be maintained for breach thereof unless the General Partner shall have been given written notice of such breach not later than two years after the date the Fourth Contribution is due and payable.

14.14  <u>Further Assurances</u>.  The Partners will execute and deliver such further instruments and do such further acts and things as may be required to carry out the intent and purposes of this Agreement.

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

14.15  <u>Remedies Cumulative</u>.  Except as otherwise provided herein, no remedy conferred upon or reserved to the Partnership or any Partner by this Agreement is intended to be exclusive of any other remedy.  Except as otherwise provided herein, each and every such remedy shall be cumulative and shall be in addition to any other remedy given to the Partnership or any Partner hereunder or now or hereafter existing at law or in equity or by statute.

14.16  <u>Meetings</u>.  Meetings of the Partnership may be called by the General Partner, the State Limited Partner or by the Special Limited Partner for any matters for which the Partners may vote as set forth in this Agreement or to obtain information concerning the Partnership.  A list of names and addresses of all Partners shall be maintained as part of the books and records of the Partnership and shall be made available upon request to any Partner or its representative at cost.  Upon receipt of a request either in person or by registered mail stating the purposes of the meeting, the General Partner shall provide the Partners, within ten days after receipt of such request, written notice of a meeting and the purpose of such meeting to be held on a date not less than 15 nor more than 30 days after receipt of such request, at a time and place within or without the State convenient to the Partners.

## ARTICLE XV

### LENDER REQUIREMENTS

15.1  A.        Notwithstanding any other provision of the Agreement to the contrary, so long as the Bonds are outstanding, the Partnership may not do any of the following:

(i)        own or acquire any asset or property other than (a) the Project and (b) incidental personal property necessary for the ownership or operation of the Project;

(ii)        engage in any business other than those set forth in Section 2.5 of this Agreement;

(iii)        incur, assume or guaranty any indebtedness other than indebtedness relating to the Bonds, indebtedness in respect of the Construction Letter of Credit, unsecured trade debt incurred in the ordinary course of business and indebtedness expressly permitted by the documents evidencing or securing the Bonds;

(iv)        dissolve, wind up or liquidate, in whole or in part;

(v)        consolidate or merge with or into any other entity or convey or transfer its properties and assets substantially as an entirety to any person or entity;

(vi)        amend or cause to be amended the Agreement in any manner which would eliminate or materially modify any of the provisions hereof relating to the sole purpose of the Partnership or the separateness covenants contained herein; or

(vii)        take any action that might cause the Partnership to become insolvent.

B.        Notwithstanding any other provision of the Agreement to the contrary, the Partnership shall:

(i)        not enter into any contract or agreement with any partner or affiliate of the Partnership, any Guarantor or any constituent party of any Guarantor, or any affiliate of any of them, except upon terms and conditions that are intrinsically fair and substantially similar to those that would be available on an arms-length basis with third parties other than any such party;

(ii)        not make any loans or advances to any third party (including any partner or affiliate of the Partnership, any Guarantor, any constituent party of any Guarantor or any affiliate of any of them), and not acquire obligations or

W669125.5

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

securities of its affiliates or any other person or entity (except for cash and investment-grade securities);

(iii)    remain solvent and pay its debts and liabilities (including, as applicable, shared personnel and overhead expenses) from its own assets as the same shall become due;

(iv)    do all things necessary to observe organizational formalities and preserve its existence;

(v)    maintain all of its books, records, financial statements and bank accounts separate from those of its partners and affiliates and file its own tax returns unless required otherwise by applicable law;

(vi)    maintain its books, records, resolutions and agreements as official records;

(vii)    hold itself out to the public as a legal entity separate and distinct from any other entity (including any partner or affiliate of the Partnership, any Guarantor, any constituent party of any Guarantor or any affiliate of any of them), correct any known misunderstanding regarding its status as a separate entity, conduct business in its own name, not identify itself or any of its affiliates as a division or part of the other, and maintain and utilize separate stationery, invoices and checks;

(viii)    maintain adequate capital to pay its obligations as they become due;

(ix)    not commingle the funds and other assets of the Partnership with those of any partner or affiliate of the Partnership, any Guarantor, any constituent party of any Guarantor or any affiliate of any of them, or any other person or entity;

(x)    maintain its assets in such a manner that it will not be costly or difficult to segregate, ascertain or identify its individual assets from those of any partner or affiliate of the Partnership, any Guarantor, any constituent party of any Guarantor or any affiliate of any of them, or any other person or entity;

(xi)    not guarantee, become obligated for or hold itself out to be responsible for the debts or obligations of any other person or entity or the decisions or actions respecting the daily business or affairs of any other person or entity;

(xii)    not permit any affiliate or constituent party independent access to its bank accounts; and

(xiii)    not have any employees.

W669125.5

- 86 -

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

C.     So long as the Bonds are outstanding, the Partnership shall have at least one general partner (the "Special Purpose General Partner") that is a corporation or limited liability company that complies with all of the criteria described in this Section 15 above except as modified to reflect the Special Purpose General Partner's position as a general partner of the Partnership.

D.     The Limited Partner and State Limited Partner acknowledge and consent to the assignment of the Partnership's rights under the Contribution Agreement, the State Contribution Agreement, the Capital Note, State Capital Note, the State Pledge Agreement and the Pledge Agreement by the Partnership to BNY Trust Company of Missouri, as trustee, and Wachovia Bank, National Association as provider of the Construction Letter of Credit, as security for the Partnership's payment and performance of its obligations to BNY Trust Company of Missouri, as trustee, and Wachovia Bank, National Association as provider of the Construction Letter of Credit. The Limited Partner and State Limited Partner agree to deposit all installments of the capital contributions made while such assignment remains in effect directly to BNY Trust Company of Missouri, as trustee, and Wachovia Bank, National Association as provider of the Construction Letter of Credit, to be disbursed pursuant to the terms of the Indenture and the other documents relating to the disbursement of the proceeds of the Bonds.

E.     The Limited Partner, State Limited Partner and the Special Limited Partner consent to the assignment by the General Partner of its partnership interest in the Partnership to BNY Trust Company of Missouri, as trustee, and Wachovia Bank, National Association as provider of the Construction Letter of Credit pursuant to the General Partner Limited Guaranty, the Pledge and Security Agreement and the replacement of the General Partner in accordance with the terms thereof.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

[SIGNATURE PAGES FOLLOW]

W669125.5

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

IN WITNESS WHEREOF, this Agreement has been duly executed on the day and year first above written.

**GENERAL PARTNER:**

**GUNAPT PEINE GP, L.L.C.,**
a Missouri limited liability company

By:  Gunapt I, L.L.C., a Missouri limited liability
     Company, its manager

By: _____
     Name: Michael J. Hejna
     Title:  Managing Member

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

IN WITNESS WHEREOF, this Agreement has been duly executed on the day and year first above written

**SPECIAL LIMITED PARTNER:**

**RELATED CORPORATE XXVI SLP LLC**, a Delaware limited liability company

By:    Related Asset Managers XXVI, L.L.C.,
       Its general partner

By:    _____
       Name: Andrew J. Weil
       Title: Vice President

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

IN WITNESS WHEREOF, this Agreement has been duly executed on the day and year first above written

**LIMITED PARTNER**:

**RELATED CORPORATE PARTNERS XXVI, L.P.,** a Delaware limited partnership

By:    Related Asset Managers XXVI, L.L.C.,
       Its general partner

By:

Name: Andrew J. Weil
Title: Vice President

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

IN WITNESS WHEREOF, this Agreement has been duly executed on the day and year first above written

**STATE LIMITED PARTNER:**

**MISSOURI TAX PARTNERS V, L.P.,** a Missouri limited liability company

By:     Corporate Tax Credit Advisors, L.L.C., a Missouri limited liability company, its general partner

By: _____
      Name: Robert N. Rousey
      Title: Manager

W669125.5

S-4

Peine Lakes Partnership Agreement

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

IN WITNESS WHEREOF, this Agreement has been duly executed on the day and year first above written

**DEVELOPER AS CONSENTING PARTY TO THE TERMS HEREOF**:

**GUNAPT DEVELOPMENT, LLC**, a Missouri limited liability company

By: _____
Michael J. Hejna
Managing Member

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

SCHEDULE A TO
THE SECOND AMENDED AND RESTATED
AGREEMENT OF LIMITED PARTNERSHIP
OF
PEINE LAKES, L.P.
dated as of January 13, 2006

| General Partner | Capital Contribution |
|---|---|
| Gunapt Peine GP, L.L.C.<br>2458 Old Dorsett Road, Suite 110<br>St. Louis, Missouri 63043<br>Attention: Michael J. Hejna<br>Fax Number: (314) 298-1816 | $10.00 |
| **Special Limited Partner** | |
| Related Corporate XXVI SLP LLC<br>625 Madison Avenue<br>Attention: Marc D. Schnitzer<br>Fax Number: (212) 751-3550 | $10.00 |
| **Limited Partner** | |
| Related Corporate Partners XXVI, L.P.<br>625 Madison Avenue<br>New York, New York 10022<br>Attention: Marc D. Schnitzer<br>Fax Number: (212) 751-3550 | $6,835,503 |
| **State Limited Partner** | |
| Missouri Tax Partners V, L.P.<br>c/o Corporate Tax Credit Advisors, L.L.C.<br>1100 Main Street, Suite 2700<br>Kansas City, MO 64105<br>Attention: Robert N. Rousey<br>Fax Number: (816) 531-4470 | $2,019,070 |

W669125.5

1

Peine Lakes Pledge Agreement

<u>**Exhibit A**</u>

 **PLEDGE AGREEMENT** dated as of January 13, 2006, among **Related Corporate Partners XXVI, L.P.**, a Delaware limited liability company ("**RCC**") and **Related Corporate XXVI SLP LLC**, a Delaware limited liability company (collectively, the "**Pledgors**"), and, **Peine Lakes, L.P.**, a Missouri limited partnership (the "**Partnership**" or the "**Pledgee**").

## W I T N E S S E T H

 **WHEREAS**, the Pledgors and Gunapt Peine GP, L.L.C., a Missouri limited liability company (the "General Partner"), have entered into a Second Amended and Restated Agreement of Limited Partnership of the Partnership, dated as of even date herewith (the "Partnership Agreement"), pursuant to which the Pledgors were admitted as limited partners of the Partnership;

 **WHEREAS**, pursuant to Section 3.4 of the Partnership Agreement, RCC has agreed to contribute an additional $704,689 (the "Contribution") to the capital of the Partnership;

 **WHEREAS**, the obligation of RCC to make the Contribution is evidenced by a promissory note of even date herewith issued by RCC to the Partnership (the "**Note**"); and

 **WHEREAS**, it is a condition to the execution of the Partnership Agreement that this Pledge Agreement be executed and delivered by the Pledgors.

 **NOW, THEREFORE**, in order to induce the General Partner to execute the Partnership Agreement, it is hereby agreed as follows:

 1. **The Security**.  The Pledgors hereby pledge and assign to the Pledgee as collateral security for payment of the Note, and grant to the Pledgee a continuing security interest in, all right, title and interest in the limited partnership interests (the "Interests") owned by the Pledgors in the Partnership as set forth in the Partnership Agreement, and all proceeds, increases, additions, replacements and substitutions thereof of any nature whatsoever.  Each Pledgor represents and warrants to the Pledgee that it has the authority and free and lawful right to pledge, assign and grant a security interest in the Interests to the Pledgee and to vest in the Pledgee the security interest created hereby and has not taken any action to create any claims or liens on such Interests and there are no claims or other liens in the Interests other than the lien created hereby.

 2. **Remedies Generally**.  Upon the occurrence and continuation of any breach or default, or event which, with the giving of notice or lapse of time, or both, would constitute a breach or default, under the Note by RCC or of any material breach by either Pledgor of any of their respective representations covenants or obligations under this Pledge agreement, and such breach continues without cure for ten days following written notice thereof except that no notice shall be required in the event Pledgors grant any rights or liens in the Interests without consent of Pledgee (an "Event of Default"), the Pledgee shall have all of the rights and remedies of a secured party under the Missouri Uniform Commercial Code.

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

### 3.  <u>Additional Remedies</u>.

(a)     Unless an Event of Default shall have occurred and be continuing, the Pledgors shall be entitled to exercise all of the rights under the Partnership Agreement and to receive all of the benefits thereunder as if the Interests were not collateral subject to this Agreement.

(b)     If an Event of Default shall have occurred and be continuing, the Pledgee or its nominee may, but shall have no obligation to, (i) exercise any rights under the Partnership Agreement and take title in its own name to the Interests, (ii) amend or modify, or grant consents or waivers, under the Partnership Agreement and (iii) receive all moneys and property which become due to the Pledgors under the Partnership Agreement.  The Pledgee is hereby irrevocably appointed the true and lawful attorney-in-fact of the Pledgors in their name and stead, to execute and deliver all notices, demands, payments and instruments (including amendments and assignments) under or with respect to the Partnership Agreement or the rights of the Pledgors thereunder, to sell, transfer and deliver any rights of the Pledgors under the Partnership Agreement, or otherwise to act with respect thereto, as it may deem desirable to effectuate the provisions of this Agreement, and may substitute one or more persons with like power, the Pledgors hereby ratifying and confirming all that the Pledgors' said attorneys, or such substitute or substitutes, shall lawfully do by virtue hereof; but if so requested by the Pledgee or any transferee of any right under the Partnership Agreement, the Pledgors shall notify and confirm any such action by executing and delivering to the Pledgee or such transferee any instrument as may be designated in any such request.

### 4.  <u>Power to Sell Collateral</u>.  Upon any sale of all or any portion of the Interests, whether made under a power of sale given in this Agreement or under judgment, order or decree in any judicial proceeding for the foreclosure or involving the enforcement of this Agreement: (a) the Pledgee may bid for and purchase the property being sold, and upon compliance with the terms of sale may hold, retain and possess and dispose of such property in its own absolute right without further accountability, and may, in paying the purchase money therefore, deliver an assignment of any or all of its rights with respect to the Note, which shall be deemed to have a value equal to the unpaid principal and interest of or on the rights with respect to the Note being assigned, in lieu of cash in payment of the amount which shall be payable thereon; (b) the Pledgee may make and deliver to the purchaser or purchasers a good and sufficient deed, bill of sale and instrument of assignment and transfer of the property sold; (c) the Pledgee is hereby irrevocably appointed the true and lawful attorney-in-fact of the Pledgors in their name and stead, to make all necessary deeds, bills of sale and instruments of assignment and transfer of the property thus sold and for such other purposes as are necessary or desirable to effectuate the provisions of this Agreement, and for that purpose it may execute and deliver all necessary deeds, bills of sale and instruments of assignment and transfer, and may substitute one or more persons with like power, the Pledgors hereby ratifying and confirming all that their said attorneys, or such substitute or substitutes, shall lawfully do by virtue hereof; but if so requested by the Pledgee or by any purchaser, the Pledgors shall ratify and confirm any such sale or transfer by executing and delivering to the Pledgee, or to such purchaser, all property, deeds, bills of sale, instruments of assignment and transfer and releases as may be designated in any such request; (d) all right, title, interest, claim and demand whatsoever, either at law or in equity or otherwise, of the Pledgors of, in and to the property so sold shall be divested; such sale shall

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

be a perpetual bar both at law and in equity against the Pledgors, their successors or assigns; (e) the receipt of the Pledgee or its agent making such sale shall be sufficient discharge to the purchaser or purchasers at such sale for his or their purchase money, and such purchaser or purchasers, and his or their assigns or personal representatives, shall not, after paying such purchase money and receiving such receipt of the Pledgee or of such agent therefor, be obliged to see to the application of such purchase money or be in any wise answerable for any loss, misapplication or nonapplication thereof; and (f) to the extent that they may lawfully do so, the Pledgors agree that they will not at any time insist upon, or plead, or in any manner whatsoever claim or take the benefit or advantage of, any appraisement, valuation, stay, extension or redemption laws, or any law permitting them to direct the order in which the Interests or any portion thereof shall be sold, now or at any time hereafter in force, which may delay, prevent or otherwise affect the performance or enforcement of the Note or this Agreement, and the Pledgors hereby expressly waive all benefit or advantage of any such laws and covenant that they will not hinder, delay or impede the execution of any power granted or delegated to the Pledgee in this Agreement, but will suffer and permit the execution of every such power as though no such laws were in force.

5. **Application of Moneys; Deficiency**.  Except as otherwise provided herein, all moneys which the Pledgee shall receive in accordance with the provisions hereof shall be applied (to the extent thereof), <u>first</u> to the payment of all costs and expenses incurred in  connection with the administration and enforcement of, or the preservation of any rights under, this Agreement or any of the reasonable expenses and disbursements of the Pledgee (including, without limitation, the reasonable fees and disbursements of its counsel and agents) in connection therewith; <u>second</u> to the payment and satisfaction of the Note; and <u>third</u> to the payment of any excess to the Pledgors.

6. **Covenant of the Pledgors**.  The Pledgors will, at their own expense, make, execute, endorse, acknowledge, file and/or deliver to the Pledgee from time to time such vouchers, invoices, schedules, confirmatory assignments, conveyances, financing statements, transfer endorsements, powers of attorney, certificates, reports and other assurances or instruments and take such further steps relating to the Interests as the Pledgee may require.

7. **Remedies Cumulative.**  The remedies provided herein in favor of the Pledgee shall not be deemed exclusive, but shall be cumulative, and shall be in addition to all other remedies in favor of the Pledgee existing at law or in equity.  Without limiting the foregoing, the Pledgee may exercise its rights with respect to a portion of the Interests without then, theretofore or thereafter exercising its rights with respect to any other portion of the Interests, and may exercise any of its rights under this Agreement without obligation to resort to other security.

8. **No Waiver.**  No delay on the part of the Pledgee in exercising any of its rights, remedies, powers and privileges hereunder or partial or single exercise thereof, shall constitute a waiver thereof.  None of the terms and conditions of this Agreement may be changed, waived, modified or varied in any manner whatsoever unless in writing duly signed by the party to be charged.  No notice to or demand on either of the Pledgors in any case shall entitle either of the Pledgors to any other or further notice or demand.

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

9.   **Continuation in Force.**  The obligations of the Pledgors hereunder shall remain in full force and effect without regard to, and shall not be impaired by, (a) any bankruptcy, insolvency, reorganization, arrangement, readjustment, composition, liquidation or the like of either of the Pledgors, (b) any exercise or nonexercise, or any waiver of, any right, remedy, power or privilege under or in respect of the obligations or this Agreement, or any other security therefor other than as expressly provided in this Agreement or (c) any amendment to or modification of the Note, any documents or instruments delivered in connection therewith or any other security therefor, whether or not the Pledgors shall have notice or knowledge of any of the foregoing.

10. **Binding Effect.**  This Agreement shall be binding upon the Pledgors and their successors and assigns and shall inure to the benefit of the Pledgee and its successors and assigns, except that the Pledgors may not transfer or assign any of their obligations, right or interests hereunder without the prior written consent of the Pledgee.  All agreements, representations and warranties made herein shall survive the execution and delivery of this Agreement and any sale of any portion of the Interests.

11. **Notices.**  Notices hereunder shall be sent to the party or parties entitled thereto by certified or registered mail, return receipt requested, at their respective addresses set forth below, or at such address or addresses as may be specified by the party entitled to such notices in accordance with the provisions of this paragraph.  Any such notice shall be deemed given on the date so mailed.

12. **Termination.**  This Agreement and the security interests granted herein shall terminate immediately after payment of the Note has been made.  The Pledgee agrees that upon such termination it will take such action as is necessary to terminate the security interests granted herein and the effectiveness of all financing statements and other instruments filed with respect thereto.

13. **Headings.**  The descriptive headings of the several sections of this Agreement are inserted for convenience only and shall not in any way affect the meaning of or construction of any provision of this Agreement.

14. **Severability.**  Any provision of this Agreement which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

15. **Governing Law.**  This Agreement and the rights and obligations of the parties hereunder shall be construed in accordance with and be governed by the laws of the Missouri applicable to contracts made and to be performed entirely therein.

16. **Performance Unchanged.**  It is expressly agreed, anything herein or in the Partnership Agreement contained to the contrary notwithstanding, that the Pledgors shall remain liable to perform all of the obligations, if any, of theirs with respect to the Interests, and the Pledgee shall not have any obligations or liabilities under the Partnership Agreement by reason

W669125.5

Peine Lakes Pledge Agreement

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

of or arising out of this Agreement, nor shall the Pledgee be required or obligated in any manner to perform or fulfill any of the obligations of the Pledgors pursuant to the Partnership Agreement; provided, however, that the Pledgee acknowledges that the Note is without recourse to RCC and to any partner or member thereof and any assignee of any such partner or member; provided, further, that subject to the following sentence, the Pledgee may have recourse to RCC or its assets, but not to any partner or member thereof, up to the outstanding principal amount of the Note.  In the event of any default under the Note, the Pledgee shall look first to the Interests and if the Interests are insufficient to satisfy performance under the Note, then, and only then to the assets of RCC other than the Interests.

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

**IN WITNESS WHEREOF,** the undersigned have executed this Pledge Agreement as of the first date set forth above.

**PLEDGORS:**

**RELATED CORPORATE PARTNERS XXVI, L.P.,** a Delaware limited partnership

address:

625 Madison Avenue
Fifth Floor
New York, New York  10022

By:   Related Asset Managers XXVI, L.L.C.,
       Its general partner

By:   _____
       Name: Andrew J. Weil
       Title: Vice President

W669125.5

S-1

Peine Lakes Pledge Agreement

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

**IN WITNESS WHEREOF,** the undersigned have executed this Pledge Agreement as of the first date set forth above.

**RELATED CORPORATE XXVI SLP LLC,** a
Delaware limited liability company

address:

625 Madison Avenue
Fifth Floor
New York, New York  10022

By:    Related Asset Managers XXVI, L.L.C.,
      Its general partner

By:    _____
      Name: Andrew J. Weil
      Title: Vice President

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

**IN WITNESS WHEREOF,** the undersigned have executed this Pledge Agreement as of the first date set forth above.

**PLEDGEE:**

**PEINE LAKES, L.P.,** a Missouri limited partnership

By:  Gunapt Peine GP, L.L.C., its general partner

 By:  Gunapt I, L.L.C., a Missouri limited
   liability company, its manager

 By:  _____
   Michael J. Heina
   Managing Member

W669125.5

S-3

Peine Lakes Pledge Agreement

Exhibit A - 119

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

### Exhibit A-1

**PLEDGE AGREEMENT** dated as of January 13, 2006, among **Missouri Tax Partners V, L.P.**, a Missouri limited liability company (the "**Pledgor**"), and **Peine Lakes, L.P.**, a Missouri limited partnership (the "**Partnership**" or the "**Pledgee**").

## W I T N E S S E T H

WHEREAS, the Pledgor and Gunapt Peine GP, L.L.C., a Missouri limited liability company (the "General Partner"), have entered into a Second Amended and Restated Agreement of Limited Partnership of the Partnership, dated as of even date herewith (the "Partnership Agreement"), pursuant to which the Pledgor was admitted as a limited partner of the Partnership;

WHEREAS, pursuant to Section 3.10 of the Partnership Agreement, Pledgor has agreed to contribute an additional $691,870 (the "Contribution") to the capital of the Partnership;

WHEREAS, the obligation of Pledgor to make the Contribution is evidenced by a restated promissory note of even date herewith issued by Pledgor to the Partnership (the "Note"); and

WHEREAS, it is a condition to the execution of the Partnership Agreement that this Pledge Agreement be executed and delivered by the Pledgor.

NOW, THEREFORE, in order to induce the General Partner to execute the Partnership Agreement, it is hereby agreed as follows:

1. **The Security**. The Pledgor hereby pledges and assigns to the Pledgee as collateral security for payment of the Note, and grants to the Pledgee a continuing security interest in, all right, title and interest in the limited partnership interests (the "Interests") owned by the Pledgor in the Partnership as set forth in the Partnership Agreement, and all proceeds, increases, additions, replacements and substitutions thereof of any nature whatsoever. The Pledgor represents and warrants to the Pledgee that it has the authority and free and lawful right to pledge, assign and grant a security interest in the Interests to the Pledgee and to vest in the Pledgee the security interest created hereby and has not taken any action to create any claims or liens on such Interests and there are no claims or other liens in the Interests other than the lien created hereby and those set forth in Section 10.1.D of the Partnership Agreement.

2. **Remedies Generally**. Upon the occurrence and continuation of any breach or default, or event which, with the giving of notice or lapse of time, or both, would constitute a breach or default, under the Note by Pledgor or of any material breach by either Pledgor of any of their respective representations covenants or obligations under this Pledge Agreement, and such breach continues without cure for ten days following written notice thereof except that no notice shall be required in the event Pledgors grant any rights or liens in the Interests without consent of Pledgee (an "Event of Default"), the Pledgee shall have all of the rights and remedies of a secured party under the Missouri Uniform Commercial Code.

3. **Additional Remedies**.

W669125.5

1

Peine Lakes State Pledge Agreement

(c)     Unless an Event of Default shall have occurred and be continuing, the Pledgors shall be entitled to exercise all of the rights under the Partnership Agreement and to receive all of the benefits thereunder as if the Interests were not collateral subject to this Agreement.

(d)     If an Event of Default shall have occurred and be continuing, the Pledgee or its nominee may, but shall have no obligation to, (i) exercise any rights under the Partnership Agreement and take title in its own name to the Interests, (ii) amend or modify, or grant consents or waivers, under the Partnership Agreement and (iii) receive all moneys and property which become due to the Pledgor under the Partnership Agreement.  The Pledgee is hereby irrevocably appointed the true and lawful attorney-in-fact of the Pledgor in its name and stead, to execute and deliver all notices, demands, payments and instruments (including amendments and assignments) under or with respect to the Partnership Agreement or the rights of the Pledgor thereunder, to sell, transfer and deliver any rights of the Pledgor under the Partnership Agreement, or otherwise to act with respect thereto, as it may deem desirable to effectuate the provisions of this Agreement, and may substitute one or more persons with like power, the Pledgor hereby ratifying and confirming all that the Pledgor's said attorneys, or such substitute or substitutes, shall lawfully do by virtue hereof; but if so requested by the Pledgee or any transferee of any right under the Partnership Agreement, the Pledgor shall notify and confirm any such action by executing and delivering to the Pledgee or such transferee any instrument as may be designated in any such request.

4. **Power to Sell Collateral**.  Upon any sale of all or any portion of the Interests, whether made under a power of sale given in this Agreement or under judgment, order or decree in any judicial proceeding for the foreclosure or involving the enforcement of this Agreement: (a) the Pledgee may bid for and purchase the property being sold, and upon compliance with the terms of sale may hold, retain and possess and dispose of such property in its own absolute right without further accountability, and may, in paying the purchase money therefore, deliver an assignment of any or all of its rights with respect to the Note, which shall be deemed to have a value equal to the unpaid principal and interest of or on the rights with respect to the Note being assigned, in lieu of cash in payment of the amount which shall be payable thereon; (b) the Pledgee may make and deliver to the purchaser or purchasers a good and sufficient deed, bill of sale and instrument of assignment and transfer of the property sold; (c) the Pledgee is hereby irrevocably appointed the true and lawful attorney-in-fact of the Pledgor in its name and stead, to make all necessary deeds, bills of sale and instruments of assignment and transfer of the property thus sold and for such other purposes as are necessary or desirable to effectuate the provisions of this Agreement, and for that purpose it may execute and deliver all necessary deeds, bills of sale and instruments of assignment and transfer, and may substitute one or more persons with like power, the Pledgor hereby ratifies and confirms all that its said attorneys, or such substitute or substitutes, shall lawfully do by virtue hereof; but if so requested by the Pledgee or by any purchaser, the Pledgor shall ratify and confirm any such sale or transfer by executing and delivering to the Pledgee, or to such purchaser, all property, deeds, bills of sale, instruments of assignment and transfer and releases as may be designated in any such request; (d) all right, title, interest, claim and demand whatsoever, either at law or in equity or otherwise, of the Pledgor of, in and to the property so sold shall be divested; such sale shall be a perpetual bar both at law and in equity against the Pledgor, its successors or assigns; (e) the receipt of the Pledgee or its agent making such sale shall be sufficient discharge to the purchaser or purchasers at such sale for his

W669125.5

Peine Lakes State Pledge Agreement

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

or their purchase money, and such purchaser or purchasers, and his or their assigns or personal representatives, shall not, after paying such purchase money and receiving such receipt of the Pledgee or of such agent therefor, be obliged to see to the application of such purchase money or be in any wise answerable for any loss, misapplication or nonapplication thereof; and (f) to the extent that they may lawfully do so, the Pledgor agrees that it will not at any time insist upon, or plead, or in any manner whatsoever claim or take the benefit or advantage of, any appraisement, valuation, stay, extension or redemption laws, or any law permitting them to direct the order in which the Interests or any portion thereof shall be sold, now or at any time hereafter in force, which may delay, prevent or otherwise affect the performance or enforcement of the Note or this Agreement, and the Pledgor hereby expressly waives all benefit or advantage of any such laws and covenant that they will not hinder, delay or impede the execution of any power granted or delegated to the Pledgee in this Agreement, but will suffer and permit the execution of every such power as though no such laws were in force.

5. **Application of Moneys; Deficiency**. Except as otherwise provided herein, all moneys which the Pledgee shall receive in accordance with the provisions hereof shall be applied (to the extent thereof), <u>first</u> to the payment of all costs and expenses incurred in connection with the administration and enforcement of, or the preservation of any rights under, this Agreement or any of the reasonable expenses and disbursements of the Pledgee (including, without limitation, the reasonable fees and disbursements of its counsel and agents) in connection therewith; <u>second</u> to the payment and satisfaction of the Note; and <u>third</u> to the payment of any excess to the Pledgor.

6. **Covenant of the Pledgors**. The Pledgor will, at its own expense, make, execute, endorse, acknowledge, file and/or deliver to the Pledgee from time to time such vouchers, invoices, schedules, confirmatory assignments, conveyances, financing statements, transfer endorsements, powers of attorney, certificates, reports and other assurances or instruments and take such further steps relating to the Interests as the Pledgee may require. Pledgee acknowledges the pledge of the Interest set forth in Section 10.1D of the Partnership Agreement.

7. **Remedies Cumulative**. The remedies provided herein in favor of the Pledgee shall not be deemed exclusive, but shall be cumulative, and shall be in addition to all other remedies in favor of the Pledgee existing at law or in equity. Without limiting the foregoing, the Pledgee may exercise its rights with respect to a portion of the Interests without then, theretofore or thereafter exercising its rights with respect to any other portion of the Interests, and may exercise any of its rights under this Agreement without obligation to resort to other security.

8. **No Waiver.** No delay on the part of the Pledgee in exercising any of its rights, remedies, powers and privileges hereunder or partial or single exercise thereof, shall constitute a waiver thereof. None of the terms and conditions of this Agreement may be changed, waived, modified or varied in any manner whatsoever unless in writing duly signed by the party to be charged. No notice to or demand on the Pledgor in any case shall entitle the Pledgor to any other or further notice or demand.

9. **Continuation in Force**. The obligations of the Pledgor hereunder shall remain in full force and effect without regard to, and shall not be impaired by, (a) any

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

bankruptcy, insolvency, reorganization, arrangement, readjustment, composition, liquidation or the like of the Pledgor, (b) any exercise or nonexercise, or any waiver of, any right, remedy, power or privilege under or in respect of the obligations or this Agreement, or any other security therefor other than as expressly provided in this Agreement or (c) any amendment to or modification of the Note, any documents or instruments delivered in connection therewith or any other security therefor, whether or not the Pledgor shall have notice or knowledge of any of the foregoing.

10. **Binding Effect**. This Agreement shall be binding upon the Pledgor and their successors and assigns and shall inure to the benefit of the Pledgee and its successors and assigns, except that the Pledgor may not transfer or assign any of its obligations, right or interests hereunder without the prior written consent of the Pledgee. All agreements, representations and warranties made herein shall survive the execution and delivery of this Agreement and any sale of any portion of the Interests.

11. **Notices.** Notices hereunder shall be sent to the party or parties entitled thereto by certified or registered mail, return receipt requested, at their respective addresses set forth below, or at such address or addresses as may be specified by the party entitled to such notices in accordance with the provisions of this paragraph. Any such notice shall be deemed given on the date so mailed.

12. **Termination**. This Agreement and the security interests granted herein shall terminate immediately after payment of the Note has been made. The Pledgee agrees that upon such termination it will take such action as is necessary to terminate the security interests granted herein and the effectiveness of all financing statements and other instruments filed with respect thereto.

13. **Headings**. The descriptive headings of the several sections of this Agreement are inserted for convenience only and shall not in any way affect the meaning of or construction of any provision of this Agreement.

14. **Severability**. Any provision of this Agreement which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

15. **Governing Law**. This Agreement and the rights and obligations of the parties hereunder shall be construed in accordance with and be governed by the laws of the Missouri applicable to contracts made and to be performed entirely therein.

16. **Performance Unchanged**. It is expressly agreed, anything herein or in the Partnership Agreement contained to the contrary notwithstanding, that the Pledgor shall remain liable to perform all of the obligations, if any, of theirs with respect to the Interests, and the Pledgee shall not have any obligations or liabilities under the Partnership Agreement by reason of or arising out of this Agreement, nor shall the Pledgee be required or obligated in any manner to perform or fulfill any of the obligations of the Pledgor pursuant to the Partnership Agreement;

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

provided, however, that the Pledgee acknowledges that the Note is without recourse to Pledgor and to any partner or member thereof and any assignee of any such partner or member; provided, further, that subject to the following sentence, the Pledgee may have recourse to Pledgor or its assets, but not to any partner or member thereof, up to the outstanding principal amount of the Note. In the event of any default under the Note, the Pledgee shall look first to the Interests and if the Interests are insufficient to satisfy performance under the Note, then, and only then to the assets of Pledgor other than the Interests.

W669125.5

- 5 -

Peine Lakes State Pledge Agreement

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

**IN WITNESS WHEREOF**, the undersigned have executed this Pledge Agreement as of the first date set forth above.

<div style="margin-left: 40%;">

**PLEDGOR:**

**MISSOURI TAX PARTNERS V, L.P.**, a Missouri limited liability company

address:

c/o Corporate Tax Credit Advisors, L.L.C.
1100 Main Street, Suite 2700
Kansas City, MO 64105

By:    Corporate Tax Credit Advisors, L.L.C., a Missouri limited liability company, its general partner

By: _____
Name: Robert N. Rousey
Title: Manager

</div>

W669125.5

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

**IN WITNESS WHEREOF**, the undersigned have executed this Pledge Agreement as of the first date set forth above.

**PLEDGEE:**

**PEINE LAKES, L.P.**, a Missouri limited partnership

By:  Gunapt Peine GP, L.L.C., its general partner

By:  Gunapt I, L.L.C., a Missouri limited liability company, its manager

By: _____
Michael J. Hejna
Managing Member

W669125.5

2

Peine Lakes Capital Note

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

## Exhibit B

## CAPITAL NOTE

For value received, **Related Corporate Partners XXVI, L.P.**, a Delaware limited partnership (the "**Company**"), promises to pay to Peine Lakes, L.P., a Missouri limited partnership or its assigns (the "**Payee**"), at 2458 Old Dorsett Road, Suite 110, St. Louis, Missouri 63043, or at such other address as the Payee shall in writing direct, the principal sum of Seven Hundred Four Thousand Six Hundred Eighty Nine and 00/100 ($704,689), without interest, in the manner and at the times provided for in Section 3.4 of the Partnership Agreement (as hereinafter defined).

This Note evidences the obligation of the Company to pay a portion of the capital contributions for its Interest in the Payee as provided in the Second Amended and Restated Agreement of Limited Partnership of the Payee (the "Partnership Agreement") and shall be subject to the provisions of Section 3.4 of that agreement. Capitalized terms not defined herein shall have the meaning provided in the Partnership Agreement. Upon execution of this Note by the Company, Payee acknowledges that the Capital Note from the Company dated as of May 14, 2004 is hereby cancelled and terminated, and replaced in its entirety with this Note.

Payments shall be due hereunder within ten business days after the occurrence of an event entitling the Payee to payment as provided above and receipt by the Company of written notice from the Payee of such occurrence. If the Company disputes the occurrence of any event entitling the Payee to payment, payments hereunder shall be deferred until the resolution of such dispute in accordance with Section 3.4 of the Partnership Agreement; provided, however, that if the Company fails to contest the matter in good faith and it is subsequently determined that the Payee was so entitled to such payment, the Company shall pay interest on the payment at the Penalty Rate (as hereinafter defined) from the end of the ten business day period to the date of payment.

Neither the Company nor any partner thereof (whether a general partner or a limited partner) nor any member of the Company nor any other Person shall have any personal liability for payment of any amount due under this Note or the performance of any obligation under or arising pursuant to this Note, provided, however, subject to the following sentence, the Payee shall have recourse to the Company and its assets, but not to any partner or member thereof, up to the outstanding principal amount of the Note. In the event of any default hereunder, the Payee (and its successors and assigns) shall look first to the Company's Interest or payment hereunder and if the Interest is insufficient to satisfy payment hereunder, then, and only then, to the assets of the Company other than the Interest. If, pursuant to the Partnership Agreement or any instrument executed or delivered incident thereto, the Company shall be entitled to any right of indemnification, then, without limiting any other right of the Company as provided in the Partnership Agreement or any other instrument, the Company shall have the right to set off against its payment obligations under this Note the sum of (i) the amount of the obligations for which the Company is entitled to indemnification, and (ii) interest on such amount, from the date on which such right of set-off arises until the date of receipt of the payment in connection with which the right of set-off is asserted, computed at the rate per annum

3

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

(the "Penalty Rate") which is the lesser of (i) 2% over the Prime Rate, or (ii) the maximum rate permitted by the law of the State.

All references in this Note to "payee" shall mean the holder of this Note.

The debt evidenced by this Note shall be prepayable, in whole or in part, at any time, without penalty.

This Note shall be governed, construed and enforced in all respects in accordance with the laws of the State applicable to contracts made and to be performed entirely therein.

Signed and delivered as of January 13, 2006.

Related Corporate Partners XXVI, L.P., a Delaware limited partnership

By:   Related Asset Managers XXVI, L.L.C., Its general partner

By:   _____
Name: Andrew J. Weil
Title: Vice President

### Exhibit B-1

### CAPITAL NOTE

For value received, **Missouri Tax Partners V, L.P.**, a Missouri limited liability company (the "**Company**"), promises to pay to Peine Lakes, L.P., a Missouri limited partnership or its assigns (the "**Payee**"), at 2458 Old Dorsett Road, Suite 110, St. Louis, Missouri 63043, or at such other address as the Payee shall in writing direct, the principal sum of Six Hundred Ninety One Thousand Eight Hundred Seventy and 00/100 ($691,870), without interest, in the manner and at the times provided for in Section 3.10 of the Partnership Agreement (as hereinafter defined).

This Note evidences the obligation of the Company to pay a portion of the capital contributions for its Interest in the Payee as provided in the Second Amended and Restated Agreement of Limited Partnership of the Payee (the "Partnership Agreement") and shall be subject to the provisions of Section 3.10 of that agreement.  Capitalized terms not defined herein shall have the meaning provided in the Partnership Agreement.

Payments shall be due hereunder within ten business days after the occurrence of an event entitling the Payee to payment as provided above and receipt by the Company of written notice from the Payee of such occurrence.  If the Company disputes the occurrence of any event entitling the Payee to payment, payments hereunder shall be deferred until the resolution of such dispute in accordance with Section 3.10 of the Partnership Agreement; provided, however, that if the Company fails to contest the matter in good faith and it is subsequently determined that the Payee was so entitled to such payment, the Company shall pay interest on the payment at the Penalty Rate (as hereinafter defined) from the end of the ten business day period to the date of payment.

Neither the Company nor any partner thereof (whether a general partner or a limited partner) nor any member of the Company nor any other Person shall have any personal liability for payment of any amount due under this Note or the performance of any obligation under or arising pursuant to this Note, provided, however, subject to the following sentence, the Payee shall have recourse to the Company and its assets, but not to any partner or member thereof, up to the outstanding principal amount of the Note.  In the event of any default hereunder, the Payee (and its successors and assigns) shall look first to the Company's Interest or payment hereunder and if the Interest is insufficient to satisfy payment hereunder, then, and only then, to the assets of the Company other than the Interest.  If, pursuant to the Partnership Agreement or any instrument executed or delivered incident thereto, the Company shall be entitled to any right of indemnification, then, without limiting any other right of the Company as provided in the Partnership Agreement or any other instrument, the Company shall have the right to set off against its payment obligations under this Note the sum of (i) the amount of the obligations for which the Company is entitled to indemnification, and (ii) interest on such amount, from the date on which such right of set-off arises until the date of receipt of the payment in connection with which the right of set-off is asserted, computed at the rate per annum (the "Penalty Rate") which is the lesser of (i) 2% over the Prime Rate, or (ii) the maximum rate permitted by the law of the State.

W669125.5

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

All references in this Note to "payee" shall mean the holder of this Note.

The debt evidenced by this Note shall be prepayable, in whole or in part, at any time, without penalty.

This Note shall be governed, construed and enforced in all respects in accordance with the laws of the State applicable to contracts made and to be performed entirely therein.

This Note fully replaces and supercedes that certain Capital Note dated as of the date of the Amended and Restated Agreement of Limited Partnership of the Partnership which note shall be and hereby is cancelled and rendered of no further force or effect.

Signed and delivered as of January 13, 2006.

> Missouri Tax Partners V, L.P., a Missouri limited liability company
>
> By:    Corporate Tax Credit Advisors, L.L.C., a Missouri limited liability company, its general partner
>
> By: _____
>     Name: Robert N. Rousey
>     Title: Manager

W669125.5

2

Peine Lakes State Capital Note

2011-CC01079

Electronically Filed - St. Charles Circuit Div - November 12, 2020 - 04:00 PM

## AMENDED AND RESTATED DEVELOPMENT AGREEMENT

THIS AMENDED AND RESTATED DEVELOPMENT AGREEMENT (this "Agreement") is made and entered into effective as of the 13th day of January, 2006, by and among PEINE LAKES, L.P., a Missouri limited partnership (the "Partnership"); GUNAPT DEVELOPMENT, L.L.C., a Missouri limited liability company ("Gunapt" or "Developer"); and RELATED CORPORATE XXVI SLP LLC, a Delaware limited liability company ("Related").

## WITNESSETH:

WHEREAS, the Partnership, Foundation Development, L.L.C. ("Foundation"), and Gunapt executed that certain Development Agreement (the "Initial Agreement"), dated effective as of February 1, 2004, pursuant to which Foundation and Gunapt (jointly as developer) agreed to provide certain development services to the Partnership in connection with that certain residential project located in the County of St. Charles, State of Missouri, commonly known as the Estates at Peine Lake (the "Project"), and the Partnership agreed to pay to Foundation and Gunapt a Development Fee in consideration of such services;

WHEREAS, effective as of April 29, 2005, Foundation was terminated as a developer in connection with the Project, and since such date has provided no development-related services to the Partnership, and as such, is no longer entitled to payment of any portion of the Development Fee hereunder;

WHEREAS, in connection with Foundation's termination as a developer, the parties hereto desire to restate the Initial Agreement in its entirety in order to more fully set forth the rights, duties, and obligations of the parties; and

WHEREAS, Related desires to give its acknowledgement and consent to the amendment and restatement of the Initial Agreement, which consent is required pursuant to Section 5.5 of that certain Amended and Restated Agreement of Limited Partnership of the Partnership, dated as of February 1, 2004.

NOW, THEREFORE, in consideration of the mutual promises and covenants contained herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto, intending to be legally bound, agreed to delete the Initial Agreement in its entirety and replace it with the following:

Section 1. **Obligations of the Developer**. The Developer shall have the following duties, to the extent they have not already been performed:

(a)    act on behalf of the Partnership in its relation with governmental agencies and authorities and construction lenders with respect to all matters relating to the construction and development of the Project;

409480.4

**EXHIBIT 2**

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

(b)     select the architect ("Architect"), coordinate the preparation of the plans and specifications (the "Plans and Specifications") and recommend alternative solutions whenever design details affect development feasibility or schedules;

(c)     ensure that the Plans and Specifications are in compliance with all applicable codes, laws, ordinances, rules and regulations;

(d)     select the contractor ("Contractor") and negotiate the Construction Contract (the "Construction Contract") and any necessary contracts and subcontracts for the construction and/or rehabilitation and development of the Project;

(e)     choose the products and materials necessary to equip the Project in a manner which satisfies all requirements of the Project mortgage loans and the Plans and Specifications, and oversee the processing of acquisition of materials;

(f)     monitor disbursement and payment of amounts owed the Architect, Contractor and the subcontractors;

(g)     ensure that the Project is constructed and/or rehabilitated free and clear of all mechanics' and materialmen's liens;

(h)     obtain an Architect's certificate that the work on the Project is substantially complete, and inspect Contractor's work;

(i)     secure all building code approvals and obtain certificates of occupancy for all of the units of the Project;

(j)     inspect and monitor construction and/or rehabilitation of the Project, and cause the same to be completed in a prompt and expeditious manner, consistent with good workmanship, and in compliance with the following:

(i)     the Plans and Specifications and Construction Contract (including any required off-site work), as they may be amended by the agreement of the parties hereto and with the consent of the Project mortgage lenders;

(ii)     any and all obligations of the Partnership under the Project mortgage loans; and

(iii)     any and all zoning regulations, county ordinances, including health, fire and safety regulations, and any other requirements of federal, state and local laws, rules, regulations and ordinances applicable to construction and/or rehabilitation of the Project;

(k)     cause to be performed in a diligent and efficient manner the following:

409400.4

Electronically Filed - St. Charles Circuit Div - November 12, 2020 - 04:00 PM

(i)     construction and/or rehabilitation of the Project pursuant to the Plans and Specifications; and

(ii)    general administration and supervision of development of the Project, including but not limited to activities of Contractor and subcontractors and their employees and agents, and others employed as to the Project in a manner which complies in all respects with the Project mortgage loans and the Plans and Specifications;

(l)     keep, or cause to be kept, accounts and cost records as to the acquisition of materials and construction and/or rehabilitation of the Project;

(m)     maintain, or cause to be maintained, at its expense, all office and accounting facilities and equipment necessary to adequately perform the foregoing functions;

(n)     make available to the Partnership, during normal business hours and upon the Partnership's written request, copies of all material contracts and subcontracts;

(o)     deliver to the Partnership dimensioned as-built surveys of the Property (locating only buildings) and as-built drawings of the Project construction and/or rehabilitation;

(p)     provide, and periodically update, the Project development time schedule, which shall coordinate and integrate Architect's and Contractor's services and material acquisition with development schedules;

(q)     investigate and recommend a schedule for purchase by the Partnership of all materials and equipment requiring long lead-time procurement, coordinate the schedule with Architect and Contractor and expedite and coordinate delivery of such purchases;

(r)     coordinate the work of Architect and Contractor to complete the Project in accordance with the objectives as to cost, time and quality, and provide sufficient personnel at the Project with authority to achieve such objectives;

(s)     provide a detailed schedule of realistic activity sequences and durations, allocation of labor and materials and processing of shop drawings and samples;

(t)     provide regular monitoring of the schedule as construction and/or rehabilitation progresses, identify potential variances between scheduled and probable completion dates, review the schedule for work not started or incomplete, recommend to the Partnership adjustments in the schedule to meet the probable completion date, provide summary reports of such monitoring, and document all changes in the schedule;

Electronically Filed - St. Charles Circuit Div - November 12, 2020 - 04:00 PM

(u)   recommend courses of action to the Partnership when requirements of the Construction Contract are not being fulfilled;

(v)   revise and refine the approved estimate of development cost, incorporate changes as they occur, and develop cash flow reports and forecasts as needed;

(w)   provide regular monitoring of the approved estimate of development cost, show actual costs for activities in process and estimates for uncompleted tasks, identify variances between actual and budgeted or estimated costs and advise the Partnership whenever projected costs exceed budgets or estimates;

(x)   develop and implement a system for review and processing of change orders as to construction and/or rehabilitation of the Project;

(y)   develop and implement a procedure for the review and processing of applications by Contractor and subcontractors for progress and final payments;

(z)   establish and implement procedures for expediting the processing and approval of progress and final payments; and

(aa)   record the progress of the construction and/or rehabilitation of the Project and submit written progress reports to the Partnership, including the percentage of completion and the number and amounts of change orders.

The Developer may retain the services of independent consultants, provided the Partnership shall have no responsibility to such independent parties.

Section 2.   Development Fee.   In consideration of the performance by the Developer of the Development services described herein, the Partnership shall pay to the Developer a development fee (the "Development Fee") in the amount set forth on Exhibit A attached hereto. The Partnership and the Developer acknowledge that $200,000.00 of the Development Fee has been previously funded, as of February 19, 2004, but in any event the balance of the Development Fee shall be earned upon the receipt by the Partnership of the final certificate of occupancy for the last building in the Project. All amounts due and payable hereunder shall be paid in accordance with the Second Amended and Restated Agreement of Limited Partnership of the Partnership dated January 13, 2006. Developer shall not be compensated for, and no portion of the Development Fee shall apply to, services in connection with the development of nonresidential improvements, the organization or syndication of the Partnership, the acquisition of land or existing buildings included in the Project, obtaining an allocation of Credits or securing Project financing other than construction financing, it being the understanding between the parties hereto that all such listed activities and services are the exclusive responsibility of the Partnership, the General Partner and/or consultants or others engaged by the Partnership.

Section 3.   Termination of Duties and Responsibilities of Developer.   The Developer shall have no further duties or obligations hereunder after receipt of a final certificate of occupancy for the last building in the Project and completion of all punch list items.   The

Electronically Filed - St. Charles Circuit Div - November 12, 2020 - 04:00 PM

Developer's duties, responsibilities, and rights hereunder shall not be terminated by the Partnership except for "cause" as finally determined by a court of competent jurisdiction. For purposes hereof, "cause" shall mean fraud, dishonesty, reckless disregard for customary practices, and intentional misconduct after at least thirty (30) days' prior notice and opportunity to cure.

### Section 4. Miscellaneous.

(a)     This Agreement shall be binding upon the parties hereto and their respective successors and permitted assigns. This Agreement may not be assigned by any of the parties hereto without the written consent of the other party, except that the Developer may assign its rights but not its duties under this Agreement.

(b)     The descriptive paragraph headings of this Agreement are inserted for convenience only and are not intended to and shall not be construed to limit, enlarge, or affect the scope or intent of this Agreement nor the meaning of any provision hereof.

(c)     This Agreement and the rights and obligations of the parties hereto shall be governed and construed and enforced in accordance with the laws of the State of Missouri. This Agreement may be executed in any number of counterparts, each when taken together shall constitute a single valid and binding instrument.

(d)     This Agreement embodies the entire agreement and understanding between the parties relating to the subject matter hereof and supersedes all prior agreements and understandings related to such subject matter, and it is agreed that there are no terms, understandings, representations or warranties, express or implied, other than those set forth herein.

(e)     This Agreement shall not be amended or modified in any respect without the prior written consent of each party hereto.

(f)     No party hereto shall file or attempt to file this Agreement of record.

(g)     This Agreement and the obligations of the Developer hereunder are solely for the benefit of the Partnership and its Partners and no benefits to third parties are intended.

(h)     In the event any provision hereof is deemed to be unenforceable or against public policy, then such provision shall be deemed omitted from this Agreement and to the extent possible such provision shall be replaced with an enforceable provision which corresponds with the spirit of the omitted provision, and no other provision of this Agreement shall be affected by such omission or unenforceability.

(i)     The parties agree that the prevailing party in any action or dispute involving litigation concerning the subject matter hereof shall be entitled to attorneys' fees and court costs.

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

(j)      The waiver by any party of any breach of this Agreement shall not operate or be construed to be a waiver of any subsequent breach.

(k)      All capitalized terms herein shall have the same meanings as set forth in the Operating Agreement, except as otherwise expressly set forth herein.

**Section 5. Notice.** Any notice required to be given hereunder shall be in writing and mailed by certified mail, postage prepaid, or hand delivered with receipt of service simultaneously to all parties at the addresses set forth in the Partnership Agreement. Each party shall have the right to change its address for the receipt of notices, upon the giving of proper notice to all other parties hereto. Whenever a period of time is to be computed from the date of receipt of an item of certified mail, such period shall be computed from the fifth day following the date of mailing if delivery of the certified mail item is refused by the party to whom it was directed.

**Section 6. Acknowledgement and Consent of Related.** By its signature hereto, Related hereby acknowledges and consents to this modification, amendment, and restatement of the Initial Agreement, in accordance with the requirements of Section 5.5 of the Amended and Restated Agreement of Limited Partnership of the Partnership.

**Section 7. Responsibilities of the Partnership.** In order for the Developer to perform duties described herein, the Partnership shall:

(a)      provide full information regarding its requirements for the Project;

(b)      designate a representative who shall be fully acquainted with the scope of the work and has authority to render decisions promptly and furnish information expeditiously; and

(c)      if the Partnership becomes aware of any fault or defect in the Project or nonconformance with any contract or other documents, it shall give prompt written notice thereof to the Developer.

**Section 8. Independent Contractor.** The parties hereto do not intend to create a partnership or any similar association for any purpose. The Developer shall be an independent contractor for all purposes.

[REMAINDER OF PAGE INTENTIONALLY BLANK]

[SIGNATURES ON FOLLOWING PAGE]

4784480.4

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

IN WITNESS WHEREOF, the parties hereto have executed this Amended and Restated Development Agreement as of the day and year first above written.

**PARTNERSHIP:**

**PEINE LAKES, L.P.,**
a Missouri limited partnership

By:   **Gunapt Peine GP, L.L.C.,**
a Missouri limited liability company,
its general partner

By:   **Gunapt I, L.L.C.,**
a Missouri limited liability company,
its sole member

By: _____
Michael J. Hejna
Managing Member

**DEVELOPER:**

**GUNAPT DEVELOPMENT, L.L.C.,**
a Missouri limited liability company

By: _____
Michael J. Hejna
Managing Member

**RELATED (As Consenting Party):**

**RELATED CORPORATE XXVI SLP LLC,**
a Delaware limited liability company

By:   Related Asset Managers XXVI, L.L.C.,
its general partner

By: _____
Andrew J. Weil
Vice President

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

## EXHIBIT A
### TO
### AMENDED AND RESTATED DEVELOPMENT AGREEMENT

Total Development Fee: $2,800,000.00

Paid in accordance with the following schedule or earlier, if funds are available:

| | | |
|---|---|---|
| (a) | At Initial Closing: | $200,000.00 (previously paid, 2/19/2004) |
| (b) | Stabilization: | $586,147.00 |
| (c) | Cash Flow: | $2,013,853.00 |

409480.4

Electronically Filed - St. Charles Circuit Div - November 12, 2020 - 04:00 PM

AMENDMENT TO
SECOND AMENDED AND RESTATED AGREEMENT OF LIMITED PARTNERSHIP
OF
PEINE LAKES, L.P.

This Amendment ("Amendment") to the Second Amended and Restated Agreement of Limited Partnership of Peine Lakes, L.P. is made effective as of September 22, 2010 (the "Effective Date") by and among the undersigned partners and withdrawing general partner of Peine Lakes, L.P. (the "Partnership"). Capitalized terms used herein and not otherwise defined have the meanings ascribed to such terms in the Second Amended and Restated Agreement of Limited Partnership of Peine Lakes, L.P., dated as of January 13, 2006, as the same may have been amended prior to the date hereof (the "Partnership Agreement").

Whereas, pursuant to Section 11.4.A of the Partnership Agreement, the Special Limited Partner has the power and right to remove the General Partner upon the occurrence of any of the events specified in such section, and to appoint itself or any of its Affiliates to succeed such removed General Partner as the general partner of the Partnership; and

Whereas, pursuant to that certain notice (the "Notice") dated September 8, 2010 addressed to Gunapt Peine GP, L.L.C., which was at that time the General Partner of the Partnership, Related Corporate XXVI SLP LLC, in its capacity as the Special Limited Partner of the Partnership, exercised its right to remove Gunapt Peine GP, L.L.C. as the general partner of the Partnership, pursuant to Section 11.4.A of the Partnership Agreement, based on the occurrence of various events constituting grounds for removal pursuant to such Section 11.4.A, with such removal to be effective automatically on September 22, 2010 unless the "Major Defaults" described in such letter were cured prior to such date; and

Whereas, Gunapt Peine GP, L.L.C. did not cure or cause the Partnership to cure such defaults prior to September 22, 2010; and

Whereas, the Special Limited Partner has appointed its Affiliate, 2010 Peine Road LLC, as the replacement general partner of the Partnership, also effective as of September 22, 2010; and

Whereas, pursuant to Section 11.4.C of the Partnership Agreement the removal of Gunapt Peine GP, L.L.C. on the grounds specified in the Notice (which do not include Bankruptcy of Gunapt Peine GP, L.L.C.) constitutes a voluntary Withdrawal by Gunapt Peine GP, L.L.C.; and

Whereas, pursuant to Section 11.1.B of the Partnership Agreement, upon the voluntary Withdrawal of the General Partner, the interest of the General Partner immediately and automatically terminates; and

Whereas, pursuant to Section 11.2 of the Partnership Agreement, upon the Withdrawal of a General Partner the Partnership will be dissolved and terminated unless the remaining or replacement General Partner or the Special Limited Partner elects to continue the business of the Partnership; and

354155-2-W

**EXHIBIT 3**

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

Whereas, pursuant to Section 11.4.A of the Partnership Agreement, Gunapt Peine GP, L.L.C. and each other Partner granted the Special Limited Partner a power of attorney to execute, acknowledge, swear to, deliver, file, record and publish any documents which the Special Limited Partner deems reasonably necessary or appropriate to confirm and/or effect the removal of Gunapt Peine GP, L.L.C. as general partner of the Partnership and the appointment of 2010 Peine Road LLC as the replacement general partner of the Partnership;

Now, therefore, in consideration of the foregoing, the undersigned agree as follows:

1. Withdrawal of Gunapt Peine GP, L.L.C. Gunapt Peine GP, L.L.C. withdraws completely as general partner of the Partnership, and shall have no right, title or interest in or to the Partnership or any of the Partnership's assets, business, profits, losses or distributions. Gunapt Peine GP, L.L.C., however, remains liable to the Partnership and/or its Partners, as provided in the Partnership Agreement and other applicable agreements, including, without limitation, any guaranties executed by Gunapt Peine GP, L.L.C.

2. Admission of 2010 Peine Road LLC. 2020 Peine Road LLC is admitted as the new General Partner of the Partnership, having all the powers, obligations, rights, title and interest of the General Partner of the Partnership. 2020 Peine Road LLC hereby accepts and assumes the aforesaid powers, obligations, rights, title and interest as the new General Partner of the Partnership effective as of September 22, 2010.

3. Continuation of Business of the Partnership. 2020 Peine Road LLC, as the new General Partner of the Partnership, and the Special Limited Partner each elects to continue the business of the Partnership pursuant to Section 11.2 of the Partnership Agreement, and the Partnership shall not dissolve upon the withdrawal of Gunapt Peine GP, L.L.C.

4. Amendment of Article I. The definition of "Managing General Partner" is hereby amended by adding the following to the end thereof: "Notwithstanding anything in this Agreement to the contrary, so long as there is only one General Partner, that General Partner shall be the Managing General Partner."

5. Amendment of Section 2.2. The first sentence of Section 2.2 is hereby deleted and replaced in its entirety with the following: "The principal office of the Company shall be located at c/o Centerline Capital Group Inc., 625 Madison Avenue, New York, NY 10022."

6. Amendment of Section 2.3. The first sentence of Section 2.3 is hereby deleted and replaced in its entirety with the following: "The principal place of business of the Company shall be located at c/o Centerline Capital Group Inc., 625 Madison Avenue, New York, NY 10022."

7. New Schedule A. Schedule A of the Partnership Agreement is deleted and replaced in its entirety with the new Schedule A attached hereto.

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

8.  Ratification and Effectiveness.  The Partnership Agreement is unchanged except for the implementation of the changes specifically provided in this Amendment.  From and after the Effective Date hereof, the "Agreement" as used in the Partnership Agreement, shall mean the Agreement as amended through and including the Effective Date hereof, with the changes effected by this Amendment.  Each of the changes made by this Amendment shall be effective as of the Effective Date.

9.  Miscellaneous.  2020 Peine Road LLC as the new General Partner may do such further acts and things as may be required to carry out the intent and purposes of this Amendment, including without limitation the filing of any amendment to the Partnership's Certificate of Limited Partnership or other certificates or instruments with any governmental authority to reflect the termination of Gunapt Peine GP, L.L.C. as General Partner and its withdrawal as a Partner, and the admission of 2020 Peine Road LLC as the new General Partner of the Partnership.  This Amendment shall be governed by Missouri law and may be executed and delivered in counterparts and by facsimile or electronically in portable document format and as so executed and delivered shall be fully binding on the Partners.

[Signatures on next page.]

354159-2-W

3

Exhibit A - 141

Electronically Filed - St. Charles Circuit Div - November 12, 2020 - 04:00 PM

In witness whereof, the undersigned have executed and delivered this Amendment as of September 22, 2010.

**Withdrawing General Partner:**
Gimapt Peine GP, L.L.C., by Related Corporate XXVI SLP LLC, its attorney-in-fact

By:    Centerline Manager LLC, its Manager

       By:                        
            Name: Andrew J. Weil
            Title: Executive Managing Director

**Limited Partner:**
Centerline Corporate Partners XXVI LP, f/k/a Related Corporate Partners XXVI, L.P.

By:    RCC Asset Managers XXVI LLC, its general partner

       By:
            Name: Andrew J. Weil
            Title: Executive Managing Director

**State Limited Partner:**
Missouri Tax Partners V, L.P., by Related Corporate XXVI SLP LLC, its attorney-in-fact

By:    Centerline Manager LLC, its Manager

       By:
            Name: Andrew J. Weil
            Title: Executive Managing Director

**New General Partner:**
2020 Peine Road LLC

By:    Centerline Manager LLC, its Manager

       By:
            Name: Andrew J. Weil
            Title; Executive Managing Director

254159-2-W

Electronically Filed - St. Charles Circuit Div - November 12, 2020 - 04:00 PM

## SCHEDULE A TO
## THE SECOND AMENDED AND RESTATED
## AGREEMENT OF LIMITED PARTNERSHIP
## OF
## PEINE LAKES, L.P.

Effective as of September 22, 2010

| | Capital Contribution |
|---|---|
| **General Partner** | |
| 2020 Peine Road LLC | $      0 |
| c/o Centerline Capital Group Inc. | |
| 625 Madison Avenue | |
| New York, NY 10022 | |
| Attn: Andrew J. Weil | |
| Fax Number: (212) 751-3550 | |
| | |
| **Special Limited Partner** | |
| Related Corporate XXVI SLP LLC | $    10 |
| c/o Centerline Capital Group Inc. | |
| 625 Madison Avenue | |
| New York, NY 10022 | |
| Attn: Andrew J. Weil | |
| Fax Number: (212) 751-3550 | |
| | |
| **Limited Partner** | |
| Centerline Corporate Partners LP, f/k/a | $6,835,503 |
| Related Corporate Partners XXVI, L.P. | |
| c/o Centerline Capital Group Inc. | |
| 625 Madison Avenue | |
| New York, NY 10022 | |
| Attn: Andrew J. Weil | |
| Fax Number: (212) 751-3550 | |
| | |
| **State Limited Partner:** | |
| Missouri Tax Partners V, L.P. | $2,019,070 |
| c/o Cougar Capital, LLC | |
| 6434 Crooked Road | |
| Parkville, MO 64152 | |
| Attention: Robert N. Rousey | |

354159-2-W

**2011-CC01079**

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

**AT**

Bruce D. LeMoine

Direct T 314.259.4724  F 314.552.4813

blemoine@armstrongteasdale.com

MISSOURI KANSAS ILLINOIS NEVADA SHANGHAI

March 23, 2018

**VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED;**
**AND U.S. MAIL, POSTAGE PREPAID**

Gunapt Peine GP, L.L.C.
2458 Old Dorsett Road, Suite 311
St. Louis, Missouri 63043
Attention: Michael J. Hejna

Gunapt Peine GP, L.L.C.
c/o Registered Agent
100 Chesterfield Business Pkwy, Ste. 300
Chesterfield, Missouri 63005
Attn: Michael J. Hejna

Gunapt Peine GP, L.L.C.
c/o Gundaker Commercial Group, Inc.,
2458 Old Dorsett Road, Suite 110
Maryland Heights, Missouri 63043

Gunapt Development, L.L.C.
2458 Old Dorsett Road, Suite 311
St. Louis, Missouri 63043
Attention: Michael J. Hejna

Gunapt Development, L.L.C.
c/o Registered Agent
2458 Old Dorsett Road, Suite 311
St. Louis, Missouri 63043
Attn: Michael J. Hejna

Gunapt Development, L.L.C.
c/o Gundaker Commercial Group, Inc.,
2458 Old Dorsett Road, Suite 110
Maryland Heights, Missouri 63043

Gunapt I, L.L.C.
2458 Old Dorsett Road, Suite 311
St. Louis, Missouri 63043
Attention: Michael J. Hejna

Gunapt I, L.L.C.
c/o Registered Agent
2458 Old Dorsett Road, Suite 311
St. Louis, Missouri 63043
Attn: Michael J. Hejna

Gunapt I, L.L.C.
c/o Gundaker Commercial Group, Inc.,
2458 Old Dorsett Road, Suite 110
Maryland Heights, Missouri 63043

Exhibit A-1 144

**EXHIBIT 4**

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

March 23, 2018
Page 2

Re:     Ten (10) Day Notice of Assignment of Developer Fee and Cancellation of Contracts pursuant to that certain *Collateral Assignment of General Partner Interest and Deferred Development Fee* ("Collateral Assignment"), dated as of January 13, 2006, by and between Gunapt Peine GP, L.L.C. ("Prior General Partner")[1], Gunapt Development, L.L.C. ("Developer"), Related Corporate XXVI SLP LLC ("Special Limited Partner"), Centerline Corporate Partners XXVI, L.P. (f/k/a Related Corporate Partners XXVI, L.P.) ("Limited Partner") and Gunapt I, L.L.C. ("GP Members")

Dear Sir or Madam:

This firm represents the Limited Partner and Special Limited Partner of the Peine Lakes, L.P. (the "Partnership"). Section 4.6 of that certain *Second Amended and Restated Agreement of Limited Partnership* dated as of January 13, 2006 (the "Partnership Agreement") provides that Prior General Partner had the right to fund Additional Development Deficit Loans[2] or request that Limited Partner (or an Affiliate) share the funding of the Development Deficits by making loan(s) to the Partnership. Section 4.6 further states that "[i]f the General Partner declines to fund any such Development Deficit, then the provisions of the Collateral Assignment shall apply." Section 2 of the Collateral Assignment provides certain consequences if at any time Prior General Partner declines to fund any Additional Development Deficit Loans pursuant to Section 4.6 of the Partnership Agreement.

Under Section 2.A. of the Collateral Assignment, Special Limited Partner may terminate any contractual arrangements between the Partnership and/or the General Partner and any of the General Partner's or GP Members' Affiliates upon ten (10) days written notice to Prior General Partner and GP Members. The Partnership Agreement defines Affiliate (in part) as any Person that directly or indirectly controls or is controlled by or is under common control with the specified Person.

Under Section 2.B. of the Collateral Assignment, upon ten (10) days written notice to Developer, Special Limited Partner shall have the right to cause Developer to assign all of its right, title, and interest in and to the Development Fee to Special Limited Partner or its designee, to receive the entire unpaid amount of the Development Fee, including unpaid interest on any Deferred Development Fee. For this purpose, Developer irrevocably constituted and appointed Special Limited Partner as Developer's true and lawful attorney-in-fact and agent with full power and authority to act in Developer's name, place, and stead to execute, acknowledge, swear to, deliver, file, record, and publish any documents which Special Limited Partner reasonably deems necessary or appropriate to confirm and/or effect the assignment of the Development Fees.

Under Section 2.C. of the Collateral Assignment, the Gundaker Loan is not repayable.

Prior General Partner declined to fund certain Additional Development Deficit Loans to the Partnership to enable the Partnership to pay in full each monthly installment of interest on its Mortgage Note for each month from April 2009 through and including August 2010 in the total amount of $1,319,895.50.

---

[1] Pursuant to Section 11.4.A. of the Partnership Agreement, Gunapt Peine GP, L.L.C. was removed as General Partner of the Partnership on September 22, 2010 due to its failure to cure multiple defaults under the Partnership Agreement within ten days after demand by the Special Limited Partner. 2010 Peine Road LLC, an Affiliate of the Special Limited Partner, was appointed as the successor General Partner of the Partnership.

[2] All capitalized terms not defined herein shall have the definitions set forth in the Partnership Agreement or the Collateral Assignment.

ARMSTRONG TEASDALE LLP

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

March 23, 2018
Page 3

Accordingly, the Special Limited Partner sent a notice of default, dated September 8, 2010, notifying the Prior General Partner that, unless the Major Defaults were cured within ten days, the Prior General Partner would be removed as the general partner of the Partnership on September 22, 2010.

Upon the removal of the Prior General Partner, the Limited Partner made substantial loans to the Partnership in the amount of $1,740,207.00 to enable the Partnership to cure the debt defaults and stabilize the Bonds. In the absence of the Additional Development Deficit Loans by the Limited Partner, the Partnership would not have been able to continue to conduct business or retain the affordable housing Apartment Complex.

Due to the Prior General Partner's failure and refusal to fund the Additional Development Deficit Loans set forth above, **NOTICE IS HEREBY GIVEN** pursuant to Section 2 of the Collateral Assignment that Special Limited Partner will cause the Developer to assign all of Developer's right, title, and interest in the Development Fee, including unpaid interest, to 2010 Peine Road LLC on a date not less than ten (10) days after the date of this notice. In addition, **NOTICE IS ALSO HEREBY GIVEN** pursuant to Section 2 of the Collateral Assignment, that all surviving contractual arrangements between the Partnership and Prior General Partner, or the Affiliates of Prior General Partner or GP Members, if any, will be cancelled ten (10) days after the date of this notice.

Pursuant to Section 6 of the Collateral Assignment, the Prior General Partner, Developer and GP Members have agreed to indemnify and hold the Limited Partner and Special Limited Partner harmless from and against all losses, costs and expenses incurred and paid to third parties in connection with the exercise of the remedies under the Collateral Assignment, including, without limitation, all reasonable legal fees and other expenses.

Please contact me with any questions regarding these matters.

Respectfully,

*Bruce L. Moine*

Bruce D. LeMoine,
Counsel for Limited Partner and Special Limited Partner

cc:    Rosenblum Goldenhersh, P.C. a/k/a Rosenblum Goldenhersh Silverstein & Zafft
       7733 Forsyth, 4th Floor
       Clayton, Missouri 63105
       Attention: David T. Woods

       Missouri Tax Partners V, L.P.
       c/o Corporate Tax Credit Advisors, LLC
       1100 Main Street, Suite 2700
       Kansas City, Missouri 64105
       Attention: Robert N. Rousey

       Holland &Knight LLP
       10 St. James Avenue
       Boston, Massachusetts 02116
       Attention: Douglas Clapp

ARMSTRONG TEASDALE LLP

**2011-CC01079**

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM



**IN THE ELEVENTH JUDICIAL CIRCUIT, ST CHARLES COUNTY, MISSOURI**

| Judge or Division: | Case Number: |
|---|---|
| Plaintiff:  Gunapt Development, L.L.C. | Defendant:  Peine Lakes, L.P., et al. |
| | (Date File Stamp) |

## REQUEST FOR APPOINTMENT OF SPECIAL PROCESS SERVER

Comes now _____ Plaintiff _____, pursuant to Local Court Rule 4.2.1 and at

his/her/its own risk, requests the appointment of:

| Jack Eisen | 1601 Orchard Lakes Drive, St. Louis, MO 63146 | (314) 993-1988 |
|---|---|---|
| Name of Process Server | Address | Telephone |

| | | |
|---|---|---|
| Name of Process Server | Address | Telephone |

a person(s) of lawful age to serve the summons and petition in this cause on the below named parties.

This appointment as special process server does not include the authorization to carry a concealed

weapon in the performance thereof.

**SERVE:**                                              **SERVE:**

Peine Lakes, L.P., c/o CT Corporation System, Reg. Agent      2010 Peine Road LLC, c/o CT Corporation System, Reg. Agent

Name                                                   Name

120 S. Central                                         120 S. Central

Address                                                Address

Clayton, MO 63105                                      Clayton, MO 63105

City/State/Zip                                         City/State/Zip

**Appointed as requested:**

**Judy Zerr, Circuit Clerk**

By _____     Date _____

            Deputy Clerk

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM

**2011-CC01079**

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM



### IN THE ELEVENTH JUDICIAL CIRCUIT, ST CHARLES COUNTY, MISSOURI

| Judge or Division: | Case Number: |
|---|---|
| Plaintiff:<br><br>Gunapt Development, L.L.C. | Defendant:<br><br>Peine Lakes, L.P., et al.<br><br><br>(Date File Stamp) |

## REQUEST FOR APPOINTMENT OF SPECIAL PROCESS SERVER

Comes now _____ Plaintiff _____, pursuant to Local Court Rule 4.2.1 and at

his/her/its own risk, requests the appointment of:

| Jack Eisen | 1601 Orchard Lakes Drive, St. Louis, MO 63146 | (314) 993-1988 |
|---|---|---|
| Name of Process Server | Address | Telephone |

| | | |
|---|---|---|
| Name of Process Server | Address | Telephone |

a person(s) of lawful age to serve the summons and petition in this cause on the below named parties.

This appointment as special process server does not include the authorization to carry a concealed

weapon in the performance thereof.

| **SERVE:** | **SERVE:** |
|---|---|
| Peine Lakes, L.P., c/o CT Corporation System, Reg. Agent | 2010 Peine Road LLC, c/o CT Corporation System, Reg. Agent |
| Name | Name |
| 120 S. Central | 120 S. Central |
| Address | Address |
| Clayton, MO 63105 | Clayton, MO 63105 |
| City/State/Zip | City/State/Zip |

**Appointed as requested:**

**X̶X̶X̶X̶X̶X̶X̶X̶, Circuit Clerk**

ALL RISKS TO
REQUESTING PARTY
SO APPOINTED:

/S/  Cheryl Crowder  9:44 am, Nov 13, 2020

**By** _____   **Date** _____

Deputy Clerk

Electronically Filed - St Charles Circuit Div - November 12, 2020 - 04:00 PM



## IN THE 11TH JUDICIAL CIRCUIT, ST. CHARLES COUNTY, MISSOURI

| Judge or Division:<br>TED HOUSE | Case Number:  2011-CC01079 |
|---|---|
| Plaintiff/Petitioner:<br> GUNAPT DEVELOPMENT, L.L.C.<br><br>vs. | Plaintiff's/Petitioner's Attorney/Address<br>JOHN JOSEPH GAZZOLI JR<br>7733 FORSYTH BLVD 4TH FL<br>ST. LOUIS, MO  63105 |
| Defendant/Respondent:<br> PEINE LAKES, L.P. | Court Address:<br>300 N 2nd STREET<br>SAINT CHARLES, MO  63301 |
| Nature of Suit:<br>CC Breach of Contract | (Date File Stamp) |

## Summons in Civil Case

The State of Missouri to:  PEINE LAKES, L.P.
                          **Alias:**

C/O CT CORPORATION SYSTEM, RA
120 S. CENTRAL
CLAYTON, MO  63105

*COURT SEAL OF*



*ST. CHARLES COUNTY*

**You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.**

_____11/13/2020_____       _____/S/  Cheryl Crowder_____
              Date                                      Clerk

Further Information:

### Sheriff's or Server's Return

**Note to serving officer**: Summons should be returned to the court within 30 days after the date of issue.

I certify that I have served the above summons by: (check one)

☐ delivering a copy of the summons and a copy of the petition to the defendant/respondent.

☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the defendant/respondent with _____, a person of the defendant's/respondent's family over the age of 15 years who permanently resides with the defendant/respondent.

☐ (for service on a corporation) delivering a copy of the summons and a copy of the complaint to: _____ (name) _____ (title).

☐ other: _____.

Served at _____ (address)

in _____ (County/City of St. Louis), MO, on _____ (date) at _____ (time).

_____       _____
        Printed Name of Sheriff or Server                           Signature of Sheriff or Server
**Must be sworn before a notary public if not served by an authorized officer:**

                          Subscribed and sworn to before me on _____ (date).
*(Seal)*

                          My commission expires: _____        _____
                                                        Date                           Notary Public

| **Sheriff's Fees, if applicable** | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Sheriff's Deputy Salary<br>Supplemental Surcharge | $_____10.00_____ |
| Mileage | $_____ (_____ miles @ $._____ per mile) |
| **Total** | $_____ |

A copy of the summons and a copy of the petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.



## IN THE 11TH JUDICIAL CIRCUIT, ST. CHARLES COUNTY, MISSOURI

| | |
|---|---|
| Judge or Division:<br>TED HOUSE | **Case Number:  2011-CC01079** |
| Plaintiff/Petitioner:<br> GUNAPT DEVELOPMENT, L.L.C.<br><br>                     vs. | Plaintiff's/Petitioner's Attorney/Address<br>JOHN JOSEPH GAZZOLI JR<br>7733 FORSYTH BLVD 4TH FL<br>ST. LOUIS, MO  63105 |
| Defendant/Respondent:<br> PEINE LAKES, L.P. | Court Address:<br>300 N 2nd STREET<br>SAINT CHARLES, MO  63301 |
| Nature of Suit:<br>CC Breach of Contract | |
| | (Date File Stamp) |

## Summons in Civil Case

The State of Missouri to:  2010 PEINE ROAD LLC
                           **Alias:**

C/O CT CORPORATION SYSTEM, RA
120 S. CENTRAL
CLAYTON, MO  63105

*COURT SEAL OF*

*ST. CHARLES COUNTY*

**You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.**

_____11/13/2020____      _____/S/  Cheryl Crowder_____
          Date                                                       Clerk

Further Information:

### Sheriff's or Server's Return

**Note to serving officer**: Summons should be returned to the court within 30 days after the date of issue.

I certify that I have served the above summons by: (check one)

☐ delivering a copy of the summons and a copy of the petition to the defendant/respondent.

☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the defendant/respondent with _____, a person of the defendant's/respondent's family over the age of 15 years who permanently resides with the defendant/respondent.

☐ (for service on a corporation) delivering a copy of the summons and a copy of the complaint to: _____ (name) _____ (title).

☐ other: _____.

Served at _____ (address)

in _____ (County/City of St. Louis), MO, on _____ (date) at _____ (time).

_____      _____
       Printed Name of Sheriff or Server                                     Signature of Sheriff or Server

                     **Must be sworn before a notary public if not served by an authorized officer:**

*(Seal)*            Subscribed and sworn to before me on _____ (date).

My commission expires: _____      _____
                                         Date                                 Notary Public

| **Sheriff's Fees, if applicable** | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Sheriff's Deputy Salary<br>Supplemental Surcharge | $_____10.00_____ |
| Mileage | $_____ (_____ miles @ $._____ per mile) |
| **Total** | **$_____** |

A copy of the summons and a copy of the petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

# <u>NOTICE TO ATTORNEYS AND LITIGANTS</u>

# <u>COURT PROCEDURES FOR IN-PERSON HEARINGS</u>

1. **YOU MUST BRING AND WEAR A MASK WHILE IN THE COURTHOUSE.**

2. You MUST be here and check in at the beginning of the hour you are assigned.

3. Only the Litigants and their Attorney are permitted in the Courthouse. No other family members are permitted in the Courthouse.

4. Only 2 persons may use an elevator at a time. The stairwells will be open for separate entry and exit with instructions.

5. A limited number of people are permitted in the courtroom at a time. If you are in the hallway waiting for your turn in court you MUST practice social distancing of 6 feet of separation. Follow the instructions of the bailiff at all times.

6. You are only permitted to be on the same floor of the Courthouse as the Courtroom to which you are assigned.

7. You MUST have all paperwork filed with the Court prior to the start of your court time.

8. You MUST have all plea agreements worked out with the Prosecuting Attorney's office and all paperwork filed with the Court prior to your Court date. No plea bargaining in Court will be permitted.

STATE OF MISSOURI                         )
                                          )  ss.
ST. CHARLES COUNTY, MISSOURI              )

IN THE CIRCUIT COURT OF ST. CHARLES COUNTY, MISSOURI


**NOTICE OF ALTERNATIVE DISPUTE RESOLUTION SERVICES**


Pursuant to Missouri Supreme Court Rule 17, the Circuit Court of St. Charles County, Missouri (Eleventh Judicial Circuit) has adopted a local rule to encourage voluntary alternative dispute resolution.  The purpose of the rule and the program it establishes is to foster timely, economical, fair and voluntary settlements of lawsuits without delaying or interfering with a party's right to resolve a lawsuit by trial.

This program applies to all civil actions other than cases in the small claims, probate and family court divisions of the Circuit Court, and you are hereby notified that it is available to you in this case.

The program encourages the voluntary early resolution of disputes through mediation. Mediation is an informal non-binding alternative dispute resolution process in which a trained mediator facilitates discussions and negotiations among the parties to help them resolve their dispute.  The mediator is impartial and has no authority to render a decision or impose a resolution on the parties.   During the course of the mediation, the mediator may meet with the parties together and separately to discuss the dispute, to explore the parties' interests, and to stimulate ideas for resolution of the dispute.

A list of mediators approved by the court and information regarding their qualifications is kept by the Circuit Clerk's Office.  If all parties to the suit agree to mediation, within ten days after they have filed the Consent to Mediation Form on the reverse side of this page with the Clerk of the Court, they shall jointly select from that list a mediator who is willing and available to serve.  If the parties cannot agree upon the mediator to be selected, the Court will make the selection.

The full text of the Circuit Court's local court rules, including Rule 38 Alternative Dispute Resolution, is available from the Clerk of the Circuit Court or at: http://www.courts.mo.gov/hosted/circuit11/Documents/LOCAL_COURT_RULES.pdf

A copy of this Notice is to be provided by the Clerk of the Circuit Court to each of the parties initiating the suit at the time it is filed, and a copy is to be served on each other party in the suit with the summons and petition served on that party.

STATE OF MISSOURI                  )
                                          ) ss.
ST. CHARLES COUNTY, MISSOURI   )

IN THE CIRCUIT COURT OF ST. CHARLES COUNTY, MISSOURI

_____ )
                     Plaintiff(s),  )
                               )
vs.                            )          Cause #_____
                               )
_____ )
                    Defendant(s).  )

## CONSENT TO MEDIATION FORM

       I, the undersigned counsel of record in this case, hereby certify that I have discussed the subject of mediation under the Court's Alternative Dispute Resolution Program with my client(s) in this case and that:

_____ We believe that mediation would be helpful in this case and consent to the referral of the case to mediation upon the filing of similar consents by all other parties in the case.

_____ We do not consent to the referral of this case to mediation.

                                         _____
                                         Signature

                                       _____
                                         (Print Name)

                                       Attorney for:

                                       _____
                                         (Party or Parties)

Date: _____



# IN THE 11TH JUDICIAL CIRCUIT, ST. CHARLES COUNTY, MISSOURI

| Judge or Division:<br>TED HOUSE | Case Number:  2011-CC01079 |
|---|---|
| Plaintiff/Petitioner:<br>GUNAPT DEVELOPMENT, L.L.C.<br><br>vs. | Plaintiff's/Petitioner's Attorney/Address:<br>JOHN JOSEPH GAZZOLI JR<br>7733 FORSYTH BLVD 4TH FL<br>ST. LOUIS, MO  63105 |
| Defendant/Respondent:<br>PEINE LAKES, L.P. | Court Address:<br>300 N 2nd STREET<br>SAINT CHARLES, MO  63301 |
| Nature of Suit:<br>CC Breach of Contract | (Date File Stamp) |

## Summons for Personal Service Outside the State of Missouri
### (Except Attachment Action)

The State of Missouri to:    **CENTERLINE CORPORATE PARTNERS XXVII LP**
**Alias:**
**SERVE: THE CORPORATION TRUST CO**
**CORPORATION TRUST CENTER**
**1209 ORANGE STREET**
**WILMINGTON, DE  19801**

*COURT SEAL OF*

*ST. CHARLES COUNTY*

You are summoned to appear before this court and to file your pleading to the petition, copy of which is attached, and to serve a copy of your pleading upon the attorney for the plaintiff/petitioner at the above address all within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to file your pleading, judgment by default will be taken against you for the relief demanded in this action.

_____11/13/2020____                    _____/S/  Cheryl Crowder___
Date                                                                           Clerk

Further Information:

## Officer's or Server's Affidavit of Service

I certify that:

1.   I am authorized to serve process in civil actions within the state or territory where the above summons was served.
2.   My official title is _____ of _____ County, _____ (state).
3.   I have served the above summons by:  (check one)
     ☐   delivering a copy of the summons and a copy of the petition to the defendant/respondent.
     ☐   leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the defendant/respondent with _____, a person of the defendant's/respondent's family over the age of 15 years who permanently resides with the defendant/respondent.
     ☐   (for service on a corporation) delivering a copy of the summons and a copy of the petition to _____ (name) _____ (title).
     ☐   other: _____.

Served at _____ (address)

in _____County, _____ (state), on _____ (date) at _____ (time).

_____                    _____
Printed Name of Sheriff or Server                                  Signature of Sheriff or Server

**Subscribed and sworn to** before me this _____ (day) _____ (month) _____ (year).

I am: (check one)  ☐  the clerk of the court of which affiant is an officer.

*(Seal)*
☐   the judge of the court of which affiant is an officer.
☐   authorized to administer oaths in the state in which the affiant served the above summons. (use for out-of-state officer)
☐   authorized to administer oaths.  (use for court-appointed server)

_____
Signature and Title

| **Service Fees** | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Mileage | $_____  (_____miles @ $ _____ per mile) |
| **Total** | $_____ |

**See the following page for directions to officer making return on service of summons.**

## Directions to Officer Making Return on Service of Summons

A copy of the summons and a copy of the motion must be served on each defendant/respondent. If any defendant/respondent refuses to receive the copy of the summons and motion when offered, the return shall be prepared accordingly so as to show the offer of the officer to deliver the summons and motion and the defendant's/respondent's refusal to receive the same.

Service shall be made: (1) On Individual. On an individual, including an infant or incompetent person not having a legally appointed guardian, by delivering a copy of the summons and motion to the individual personally or by leaving a copy of the summons and motion at the individual's dwelling house or usual place of abode with some person of the family over 15 years of age who permanently resides with the defendant/respondent, or by delivering a copy of the summons and petition to an agent authorized by appointment or required by law to receive service of process; (2) On Guardian. On an infant or incompetent person who has a legally appointed guardian, by delivering a copy of the summons and motion to the guardian personally; (3) On Corporation, Partnership or Other Unincorporated Association. On a corporation, partnership or unincorporated association, by delivering a copy of the summons and motion to an officer, partner, or managing or general agent, or by leaving the copies at any business office of the defendant/respondent with the person having charge thereof or by delivering copies to its registered agent or to any other agent authorized by appointment or required by law to receive service of process; (4) On Public or Quasi-Public Corporation or Body. Upon a public, municipal, governmental or quasi-public corporation or body in the case of a county, to the mayor or city clerk or city attorney in the case of a city, to the chief executive officer in the case of any public, municipal, governmental, or quasi-public corporation or body or to any person otherwise lawfully so designated.

Service may be made by an officer or deputy authorized by law to serve process in civil actions within the state or territory where such service is made.

Service may be made in any state or territory of the United States. If served in a territory, substitute the word "territory" for the word "state."

The office making the service must swear an affidavit before the clerk, deputy clerk, or judge of the court of which the person is an officer or other person authorized to administer oaths. This affidavit must state the time, place, and manner of service, the official character of the affiant, and the affiant's authority to serve process in civil actions within the state or territory where service is made.

Service must be made less than 10 days nor more than 30 days from the date the defendant/respondent is to appear in court. The return should be made promptly, and in any event so that it will reach the Missouri court within 30 days after service.

OSCA (07-18) SM60 (SMOS) *For Court Use Only*: **Document ID# 20-SMOS-206**    2 of 2    **(2011-CC01079)**         Rules 54.06, 54.07, 54.14, 54.20;
506.500, 506.510 RSMo

Exhibit A - 157



# IN THE 11TH JUDICIAL CIRCUIT, ST. CHARLES COUNTY, MISSOURI

| | |
|---|---|
| Judge or Division:<br>TED HOUSE | **Case Number:  2011-CC01079** |
| Plaintiff/Petitioner:<br>GUNAPT DEVELOPMENT, L.L.C.<br><br>vs. | Plaintiff's/Petitioner's Attorney/Address:<br>JOHN JOSEPH GAZZOLI JR<br>7733 FORSYTH BLVD 4TH FL<br>ST. LOUIS, MO  63105 |
| Defendant/Respondent:<br>PEINE LAKES, L.P. | Court Address:<br>300 N 2nd STREET<br>SAINT CHARLES, MO  63301 |
| Nature of Suit:<br>CC Breach of Contract | (Date File Stamp) |

## Summons for Personal Service Outside the State of Missouri
### (Except Attachment Action)

**The State of Missouri to:   CENTERLINE AFFORDABLE HOUSING ADVISORS LLC**
　　　　　　　　　　　　　　　**Alias:**
**SERVE: THE CORPORATION TRUST CO**
**CORPORATION TRUST CENTER**
**1209 ORANGE STREET**
**WILMINGTON, DE  19801**

**_COURT SEAL OF_**



**_ST. CHARLES COUNTY_**

You are summoned to appear before this court and to file your pleading to the petition, copy of which is attached, and to serve a copy of your pleading upon the attorney for the plaintiff/petitioner at the above address all within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to file your pleading, judgment by default will be taken against you for the relief demanded in this action.

_____11/13/2020_____　　　　　_____/S/ Cheryl Crowder_____
　　　　　　　Date　　　　　　　　　　　　　　　　　　　　　　Clerk
Further Information:

## Officer's or Server's Affidavit of Service

I certify that:

1.　I am authorized to serve process in civil actions within the state or territory where the above summons was served.
2.　My official title is _____ of _____ County, _____ (state).
3.　I have served the above summons by:  (check one)
　　☐　delivering a copy of the summons and a copy of the petition to the defendant/respondent.
　　☐　leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the
　　　　defendant/respondent with _____, a person of the defendant's/respondent's family
　　　　over the age of 15 years who permanently resides with the defendant/respondent.
　　☐　(for service on a corporation) delivering a copy of the summons and a copy of the petition to
　　　　_____ (name) _____ (title).
　　☐　other: _____.

Served at _____ (address)

in _____County, _____ (state), on _____ (date) at _____ (time).


_____　　　_____
　　　Printed Name of Sheriff or Server　　　　　　　　　　Signature of Sheriff or Server
　　　**Subscribed and sworn to** before me this _____ (day) _____ (month) _____ (year).
　　　　I am: (check one)　☐　the clerk of the court of which affiant is an officer.
　　　　　　　　　　　　　☐　the judge of the court of which affiant is an officer.
　　　　　　　　　　　　　☐　authorized to administer oaths in the state in which the affiant served the above
　　　　　　　　　　　　　　　summons. (use for out-of-state officer)
　　　　　　　　　　　　　☐　authorized to administer oaths.  (use for court-appointed server)
　　*(Seal)*
　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　Signature and Title

| **Service Fees** | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Mileage | $_____　(_____miles @ $ _____ per mile) |
| **Total** | $_____ |

**See the following page for directions to officer making return on service of summons.**

Exhibit A - 158

## Directions to Officer Making Return on Service of Summons

A copy of the summons and a copy of the motion must be served on each defendant/respondent. If any defendant/respondent refuses to receive the copy of the summons and motion when offered, the return shall be prepared accordingly so as to show the offer of the officer to deliver the summons and motion and the defendant's/respondent's refusal to receive the same.

Service shall be made: (1) On Individual. On an individual, including an infant or incompetent person not having a legally appointed guardian, by delivering a copy of the summons and motion to the individual personally or by leaving a copy of the summons and motion at the individual's dwelling house or usual place of abode with some person of the family over 15 years of age who permanently resides with the defendant/respondent, or by delivering a copy of the summons and petition to an agent authorized by appointment or required by law to receive service of process; (2) On Guardian. On an infant or incompetent person who has a legally appointed guardian, by delivering a copy of the summons and motion to the guardian personally; (3) On Corporation, Partnership or Other Unincorporated Association. On a corporation, partnership or unincorporated association, by delivering a copy of the summons and motion to an officer, partner, or managing or general agent, or by leaving the copies at any business office of the defendant/respondent with the person having charge thereof or by delivering copies to its registered agent or to any other agent authorized by appointment or required by law to receive service of process; (4) On Public or Quasi-Public Corporation or Body. Upon a public, municipal, governmental or quasi-public corporation or body in the case of a county, to the mayor or city clerk or city attorney in the case of a city, to the chief executive officer in the case of any public, municipal, governmental, or quasi-public corporation or body or to any person otherwise lawfully so designated.

Service may be made by an officer or deputy authorized by law to serve process in civil actions within the state or territory where such service is made.

Service may be made in any state or territory of the United States. If served in a territory, substitute the word "territory" for the word "state."

The office making the service must swear an affidavit before the clerk, deputy clerk, or judge of the court of which the person is an officer or other person authorized to administer oaths. This affidavit must state the time, place, and manner of service, the official character of the affiant, and the affiant's authority to serve process in civil actions within the state or territory where service is made.

Service must be made less than 10 days nor more than 30 days from the date the defendant/respondent is to appear in court. The return should be made promptly, and in any event so that it will reach the Missouri court within 30 days after service.

OSCA (07-18) SM60 (SMOS) *For Court Use Only*: **Document ID# 20-SMOS-207**   2 of 2   **(2011-CC01079)**   Rules 54.06, 54.07, 54.14, 54.20; 506.500, 506.510 RSMo

Exhibit A - 159



# IN THE 11TH JUDICIAL CIRCUIT, ST. CHARLES COUNTY, MISSOURI

| | |
|---|---|
| Judge or Division:<br>TED HOUSE | **Case Number:  2011-CC01079** |
| Plaintiff/Petitioner:<br>GUNAPT DEVELOPMENT, L.L.C.<br><br>vs. | Plaintiff's/Petitioner's Attorney/Address:<br>JOHN JOSEPH GAZZOLI JR<br>7733 FORSYTH BLVD 4TH FL<br>ST. LOUIS, MO  63105 |
| Defendant/Respondent:<br>PEINE LAKES, L.P. | Court Address:<br>300 N 2nd STREET<br>SAINT CHARLES, MO  63301 |
| Nature of Suit:<br>CC Breach of Contract | *(Date File Stamp)* |

## Summons for Personal Service Outside the State of Missouri
### (Except Attachment Action)

The State of Missouri to:   RELATED CORPORATE XXVI SLP, LLC
Alias:
**SERVE: THE CORPORATION TRUST CO**
**CORPORATION TRUST CENTER**
**1209 ORANGE STREET**
**WILMINGTON, DE  19801**

***COURT SEAL OF***

*ST. CHARLES COUNTY*

You are summoned to appear before this court and to file your pleading to the petition, copy of which is attached, and to serve a copy of your pleading upon the attorney for the plaintiff/petitioner at the above address all within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to file your pleading, judgment by default will be taken against you for the relief demanded in this action.

_____11/13/2020____                                  _____/S/  Cheryl Crowder_____
                Date                                                                Clerk
Further Information:

## Officer's or Server's Affidavit of Service

I certify that:
1. I am authorized to serve process in civil actions within the state or territory where the above summons was served.
2. My official title is _____ of _____ County, _____ (state).
3. I have served the above summons by:  (check one)
    ☐ delivering a copy of the summons and a copy of the petition to the defendant/respondent.
    ☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the defendant/respondent with _____, a person of the defendant's/respondent's family over the age of 15 years who permanently resides with the defendant/respondent.
    ☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to _____ (name) _____ (title).
    ☐ other: _____.

Served at _____ (address)
in _____County, _____ (state), on _____ (date) at _____ (time).

_____                    _____
Printed Name of Sheriff or Server                               Signature of Sheriff or Server
                   **Subscribed and sworn to** before me this _____ (day) _____ (month) _____ (year).
                   I am: (check one)  ☐ the clerk of the court of which affiant is an officer.
                                            ☐ the judge of the court of which affiant is an officer.
*(Seal)*                                      ☐ authorized to administer oaths in the state in which the affiant served the above summons. (use for out-of-state officer)
                                            ☐ authorized to administer oaths.  (use for court-appointed server)

                                                              _____
                                                              Signature and Title

| **Service Fees** | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Mileage | $_____  (_____miles @ $ _____ per mile) |
| **Total** | $_____ |

                   **See the following page for directions to officer making return on service of summons.**

## Directions to Officer Making Return on Service of Summons

A copy of the summons and a copy of the motion must be served on each defendant/respondent. If any defendant/respondent refuses to receive the copy of the summons and motion when offered, the return shall be prepared accordingly so as to show the offer of the officer to deliver the summons and motion and the defendant's/respondent's refusal to receive the same.

Service shall be made: (1) On Individual. On an individual, including an infant or incompetent person not having a legally appointed guardian, by delivering a copy of the summons and motion to the individual personally or by leaving a copy of the summons and motion at the individual's dwelling house or usual place of abode with some person of the family over 15 years of age who permanently resides with the defendant/respondent, or by delivering a copy of the summons and petition to an agent authorized by appointment or required by law to receive service of process; (2) On Guardian. On an infant or incompetent person who has a legally appointed guardian, by delivering a copy of the summons and motion to the guardian personally; (3) On Corporation, Partnership or Other Unincorporated Association. On a corporation, partnership or unincorporated association, by delivering a copy of the summons and motion to an officer, partner, or managing or general agent, or by leaving the copies at any business office of the defendant/respondent with the person having charge thereof or by delivering copies to its registered agent or to any other agent authorized by appointment or required by law to receive service of process; (4) On Public or Quasi-Public Corporation or Body. Upon a public, municipal, governmental or quasi-public corporation or body in the case of a county, to the mayor or city clerk or city attorney in the case of a city, to the chief executive officer in the case of any public, municipal, governmental, or quasi-public corporation or body or to any person otherwise lawfully so designated.

Service may be made by an officer or deputy authorized by law to serve process in civil actions within the state or territory where such service is made.

Service may be made in any state or territory of the United States. If served in a territory, substitute the word "territory" for the word "state."

The office making the service must swear an affidavit before the clerk, deputy clerk, or judge of the court of which the person is an officer or other person authorized to administer oaths. This affidavit must state the time, place, and manner of service, the official character of the affiant, and the affiant's authority to serve process in civil actions within the state or territory where service is made.

Service must be made less than 10 days nor more than 30 days from the date the defendant/respondent is to appear in court. The return should be made promptly, and in any event so that it will reach the Missouri court within 30 days after service.

# <u>NOTICE TO ATTORNEYS AND LITIGANTS</u>

# <u>COURT PROCEDURES FOR IN-PERSON HEARINGS</u>

1. **YOU MUST BRING AND WEAR A MASK WHILE IN THE COURTHOUSE.**

2. You MUST be here and check in at the beginning of the hour you are assigned.

3. Only the Litigants and their Attorney are permitted in the Courthouse. No other family members are permitted in the Courthouse.

4. Only 2 persons may use an elevator at a time. The stairwells will be open for separate entry and exit with instructions.

5. A limited number of people are permitted in the courtroom at a time. If you are in the hallway waiting for your turn in court you MUST practice social distancing of 6 feet of separation. Follow the instructions of the bailiff at all times.

6. You are only permitted to be on the same floor of the Courthouse as the Courtroom to which you are assigned.

7. You MUST have all paperwork filed with the Court prior to the start of your court time.

8. You MUST have all plea agreements worked out with the Prosecuting Attorney's office and all paperwork filed with the Court prior to your Court date. No plea bargaining in Court will be permitted.

STATE OF MISSOURI                  )
                                            ) ss.
ST. CHARLES COUNTY, MISSOURI     )

### IN THE CIRCUIT COURT OF ST. CHARLES COUNTY, MISSOURI

### NOTICE OF ALTERNATIVE DISPUTE RESOLUTION SERVICES

Pursuant to Missouri Supreme Court Rule 17, the Circuit Court of St. Charles County, Missouri (Eleventh Judicial Circuit) has adopted a local rule to encourage voluntary alternative dispute resolution.  The purpose of the rule and the program it establishes is to foster timely, economical, fair and voluntary settlements of lawsuits without delaying or interfering with a party's right to resolve a lawsuit by trial.

This program applies to all civil actions other than cases in the small claims, probate and family court divisions of the Circuit Court, and you are hereby notified that it is available to you in this case.

The program encourages the voluntary early resolution of disputes through mediation. Mediation is an informal non-binding alternative dispute resolution process in which a trained mediator facilitates discussions and negotiations among the parties to help them resolve their dispute.  The mediator is impartial and has no authority to render a decision or impose a resolution on the parties.   During the course of the mediation, the mediator may meet with the parties together and separately to discuss the dispute, to explore the parties' interests, and to stimulate ideas for resolution of the dispute.

A list of mediators approved by the court and information regarding their qualifications is kept by the Circuit Clerk's Office.  If all parties to the suit agree to mediation, within ten days after they have filed the Consent to Mediation Form on the reverse side of this page with the Clerk of the Court, they shall jointly select from that list a mediator who is willing and available to serve.  If the parties cannot agree upon the mediator to be selected, the Court will make the selection.

The full text of the Circuit Court's local court rules, including Rule 38 Alternative Dispute Resolution, is available from the Clerk of the Circuit Court or at: http://www.courts.mo.gov/hosted/circuit11/Documents/LOCAL_COURT_RULES.pdf

A copy of this Notice is to be provided by the Clerk of the Circuit Court to each of the parties initiating the suit at the time it is filed, and a copy is to be served on each other party in the suit with the summons and petition served on that party.

STATE OF MISSOURI                 )
                                             )  ss.
ST. CHARLES COUNTY, MISSOURI      )

IN THE CIRCUIT COURT OF ST. CHARLES COUNTY, MISSOURI

_____ )
                     Plaintiff(s),    )
                                      )
vs.                                    )          Cause #_____
                                      )
_____ )
                     Defendant(s).  )

## CONSENT TO MEDIATION FORM

        I, the undersigned counsel of record in this case, hereby certify that I have discussed the subject of mediation under the Court's Alternative Dispute Resolution Program with my client(s) in this case and that:

\_\_\_\_\_    We believe that mediation would be helpful in this case and consent to the referral of the case to mediation upon the filing of similar consents by all other parties in the case.

\_\_\_\_\_    We do not consent to the referral of this case to mediation.

                                               _____
                                               Signature

                                               _____
                                               (Print Name)

                                               Attorney for:

                                               _____
                                               (Party or Parties)

Date: _____

Electronically Filed - St Charles Circuit Div - November 17, 2020 - 11:34 AM

## IN THE 11TH JUDICIAL CIRCUIT, ST. CHARLES COUNTY, MISSOURI

| Judge or Division: TED HOUSE | Case Number: 2011-CC01079 |
|---|---|
| Plaintiff/Petitioner: GUNAPT DEVELOPMENT, L.L.C. vs. | Plaintiff's/Petitioner's Attorney/Address JOHN JOSEPH GAZZOLI JR 7733 FORSYTH BLVD 4TH FL. ST. LOUIS, MO 63105 |
| Defendant/Respondent: PEINE LAKES, L.P. | Court Address: 300 N 2nd STREET SAINT CHARLES, MO 63301 |
| Nature of Suit: CC Breach of Contract | (Date File Stamp) |

## Summons in Civil Case

The State of Missouri to: PEINE LAKES, L.P.
Alias:

C/O CT CORPORATION SYSTEM, RA
120 S. CENTRAL
CLAYTON, MO 63105

COURT SEAL OF

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

ST. CHARLES COUNTY

_____11/13/2020_____     /s/ Cheryl Crowder
Date                          Clerk

Further Information:

### Sheriff's or Server's Return

Note to serving officer: Summons should be returned to the court within 30 days after the date of issue.
I certify that I have served the above summons by: (check one)

☑ delivering a copy of the summons and a copy of the petition to the defendant/respondent.
☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the defendant/respondent with _____ a person of the defendant's/respondent's family over the age of 16 years who permanently resides with the defendant/respondent.
☐ (for service on a corporation) delivering a copy of the summons and a copy of the complaint to _____ (name) _____ (title).
☐ other _____

Served at _____ (address)
in _____ (County/City of St. Louis), MO, on _____ (date) at _____ (time).

_____          _____
Printed Name of Sheriff or Server          Signature of Sheriff or Server

Must be sworn before a notary public if not served by an authorized officer.
Subscribed and sworn to before me on _____ (date).

My commission expires: _____          _____
Date          Notary Public

ANN MAYER ESPEN
Notary Public - Notary Seal
State of Missouri
Commissioned for St. Louis County
My Commission Expires: August 03, 2022
Commission Number: 14428979

| Sheriff's Fees, if applicable | |
|---|---|
| Summons | $ |
| Non Est | $ |
| Sheriff's Deputy Salary Supplemental Surcharge | $ 10.00 |
| Mileage | $ _____ ( _____ miles @ $ _____ per mile) |
| Total | $ |

A copy of the summons and a copy of the petition must be served on each defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

Exhibit A - 165

Electronically Filed - St Charles Circuit Div - November 17, 2020 - 11:34 AM

## AFFIDAVIT OF SERVICE

Comes now JACK EISEN, and being duly sworn upon his oath states as follows his Return on a Summons in Civil Case (Case No: 2011-CC01079) directed to Peine Lakes, L.P. c/o CT Corporation System, RA.

1.  That he served Peine Lakes, L.P. by personally handing a copy of said Summons in Civil Case (Case No: 2011-CC01079) to Amanda Brandon, CT Corporation System, RA.

2.  That said service was made at 11:00am on the 16 day of November, 2020 within the County of St. Louis, State of Missouri, at 120 S. Central Ave., Clayton, MO 63105.

3.  That the information given herein is true and accurate to Affiant's best knowledge, information and belief.

_____

JACK EISEN, Affiant

STATE OF MISSOURI
COUNTY OF ST. LOUIS

On this ___16___ day of ___November___ 2020 personally appeared before me, the person who signed the foregoing Affidavit, that same was executed as Affiant's free act a Notary Public, the above named Affiant, who being duly sworn, declared that Affiant is and deed and that the statements therein are true and correct to the best of the Affiant's knowledge, information & belief.

_____

Ann Mayer Eisen, Notary Public

My Commission Expires:

ANN MAYER EISEN
Notary Public - Notary Seal
State of Missouri
Commissioned for St. Louis County
My Commission Expires: August 09, 2022
Commission Number: 14438270

Electronically Filed - St Charles Circuit Div - November 17, 2020 - 11:36 AM

 IN THE 11TH JUDICIAL CIRCUIT, ST. CHARLES COUNTY, MISSOURI

| Judge or Division: TED HOUSE | Case Number: 2011-CC01079 |
|---|---|
| Plaintiff/Petitioner: GUNAPT DEVELOPMENT, L.L.C. vs. | Plaintiff's/Petitioner's Attorney/Address JOHN JOSEPH GAZZOLI JR 7733 FORSYTH BLVD 4TH FL ST LOUIS, MO 63105 |
| Defendant/Respondent: PEINE LAKES, L.P. | Court Address: 300 N 2nd STREET SAINT CHARLES, MO 63301 |
| Nature of Suit: CC Breach of Contract | (Date File Stamp) |

## Summons in Civil Case

The State of Missouri to:  2010 PEINE ROAD LLC
Alias:
C/O CT CORPORATION SYSTEM, RA
120 S CENTRAL
CLAYTON, MO 63105

**COURT SEAL OF**

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

**ST. CHARLES COUNTY**

_____11/13/2020_____            /S/ Cheryl Crawford
Date                                           Clerk

Further Information:

### Sheriff's or Server's Return
Note to serving officer: Summons should be returned to the court within 30 days after the date of issue.
I certify that I have served the above summons by: (check one)
☑ delivering a copy of the summons and a copy of the petition to the defendant/respondent.
☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the defendant/respondent with _____, a person of the defendant's/respondent's family over the age of 15 years who permanently resides with the defendant/respondent.
☐ (for service on a corporation) delivering a copy of the summons and a copy of the complaint to: _____ (name) _____ (title).
☐ other: _____

Served at _____ (address)
_____ (County/City of St. Louis), MO, on _____ (date) at _____ (time).

_____                              _____
Printed Name of Sheriff or Server                      Signature of Sheriff or Server

**Must be sworn before a notary public if not served by an authorized officer:**

ANN MAYER EISEN
Notary Public - Notary Seal
State of Missouri
Commissioned for St. Louis County
My Commission Expires: August 08, 2022
Commission Number: 14336478

Subscribed and sworn to before me on _____ (date).
My commission expires _____                  _____
Date                                                    Notary Public

**Sheriff's Fees, if applicable**

| | |
|---|---|
| Summons | $ |
| Non Est | $ |
| Sheriff's Deputy Salary Supplemental Surcharge | $   10.00 |
| Mileage | $ _____ ( _____ miles @ $._____ per mile) |
| Total | $ |

A copy of the summons and a copy of the petition must be served on each defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

Exhibit A - 167

Electronically Filed - St Charles Circuit Div - November 17, 2020 - 11:36 AM

## AFFIDAVIT OF SERVICE

Comes now JACK EISEN, and being duly sworn upon his oath states as follows his Return on a Summons in Civil Case (Case No: 2011-CC01079) directed to 2010 Peine Rd LLC, c/o CT Corporation System, RA.

1.      That he served 2010 Peine Rd LLC by personally handing a copy of said Summons in Civil Case (Case No: 2011-CC01079) to Amanda Brandon, CT Corporation System, RA.

2.      That said service was made at 11:00am on the 16 day of November, 2020 within the County of St. Louis, State of Missouri, at 120 S. Central Ave., Clayton, MO 63105.

3.      That the information given herein is true and accurate to Affiant's best knowledge, information and belief.

_____

JACK EISEN, Affiant

STATE OF MISSOURI
COUNTY OF ST. LOUIS

On this ___16___ day of ___November___, 2020 personally appeared before me, the person who signed the foregoing Affidavit, that same was executed as Affiant's free act a Notary Public, the above named Affiant, who being duly sworn, declared that Affiant is and deed and that the statements therein are true and correct to the best of the Affiant's knowledge, information & belief.

_____

Ann Mayer Eisen, Notary Public

My Commission Expires:

ANN MAYER EISEN
Notary Public - Notary Seal
State of Missouri
Commissioned for St. Louis County
My Commission Expires: August 08, 2022
Commission Number: 14468270



**Office of the Sheriff**
**New Castle County, Delaware**

**Scott T. Phillips**
**Sheriff**

Louis L. Redding City/County Bldg.
800 N. French Street
Wilmington, DE 19801
Office: 302-395-8450, Fax: 302-395-8460

11/24/2020

### AFFIDAVIT OF SERVICE

STATE OF DELAWARE)
              ) SS
NEW CASTLE COUNTY)

Court Case # 2011-CC01079
Sheriff # 20-006224

### GUNAPT DEVELOPMENT, L.L.C
### vs
### PEINE LAKES, L.P., ET AL

Ronald Fioravanti, being duly sworn, deposes that he/she is a Deputy Sheriff and avers that he/she served upon and left personally upon Registered Agent Representative **Amy McLaren** at **CORPORATION TRUST COMPANY 1209 N. ORANGE STREET WILMINGTON, DE 19801** on 11/20/2020 at 10:17 AM a copy of SUMMONS AND PETITION for **RELATED CORPORATE XXVI SLP, LLC**.

The Deponent further avers that he/she knew the person so served to be the same person as mentioned in the Out of State document.

Fees Paid:  $5.00

_____
**Ronald Fioravanti, Deputy Sheriff**

STATE OF DELAWARE)
              ) SS
NEW CASTLE COUNTY)

    **BE IT REMEMBERED** that on 11/24/2020 personally came before me, the Subscriber, a Notary Public of the State of Delaware, Ronald Fioravanti, a Deputy Sheriff of New Castle County and State of Delaware and stated that the facts stated above are true and correct.

    **SWORN AND SUBSCRIBED** before me, the date and year aforesaid.

_____
**Notary Public**

Exhibit A - 169

Electronically Filed - St Charles Circuit Div - December 08, 2020 - 02:18 PM

Electronically Filed - St Charles Circuit Div - December 08, 2020 - 02:18 PM



# IN THE 11TH JUDICIAL CIRCUIT, ST. CHARLES COUNTY, MISSOURI

| Judge or Division:<br>TED HOUSE | Case Number:  2011-CC01079 |
|---|---|
| Plaintiff/Petitioner:<br>GUNAPT DEVELOPMENT, L.L.C.<br><div align="right">vs.</div> | Plaintiff's/Petitioner's Attorney/Address:<br>JOHN JOSEPH GAZZOLI JR<br>7733 FORSYTH BLVD 4TH FL<br>ST. LOUIS, MO  63105 |
| Defendant/Respondent:<br>PEINE LAKES, L.P. | Court Address:<br>300 N 2nd STREET<br>SAINT CHARLES, MO  63301 |
| Nature of Suit:<br>CC Breach of Contract | (Date File Stamp) |

## Summons for Personal Service Outside the State of Missouri
### (Except Attachment Action)

**The State of Missouri to:  RELATED CORPORATE XXVI SLP, LLC**
**Alias:**

**SERVE: THE CORPORATION TRUST CO**
**CORPORATION TRUST CENTER**
**1209 ORANGE STREET**
**WILMINGTON, DE  19801**

***COURT SEAL OF***

You are summoned to appear before this court and to file your pleading to the petition, copy of which is attached, and to serve a copy of your pleading upon the attorney for the plaintiff/petitioner at the above address all within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to file your pleading, judgment by default will be taken against you for the relief demanded in this action.

***ST. CHARLES COUNTY***

_____11/13/2020_____          _____/S/ Cheryl Crowder_____
Date                                                        Clerk

Further Information:

## Officer's or Server's Affidavit of Service

I certify that:
1. I am authorized to serve process in civil actions within the state or territory where the above summons was served.
2. My official title is _____ of _____ County, _____ (state).
3. I have served the above summons by:  (check one)
   - [ ] delivering a copy of the summons and a copy of the petition to the defendant/respondent.
   - [ ] leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the defendant/respondent with _____, a person of the defendant's/respondent's family over the age of 15 years who permanently resides with the defendant/respondent.
   - [x] (for service on a corporation) delivering a copy of the summons and a copy of the petition to _Amy Mc Lanen_ (name) _____ (title).
   - [ ] other: _____ .

Served at _1209 N. Orange St. Wilmington DE 19807_ (address)
in _New Castle_ County, _DE_ (state), on _11/20/20_ (date) at _10:17_ (time).

_R. Fioraventi_
Printed Name of Sheriff or Server                      Signature of Sheriff or Server

**Subscribed and sworn to** before me this _____ (day) _____ (month) _____ (year).
I am: (check one)
- [ ] the clerk of the court of which affiant is an officer.
- [ ] the judge of the court of which affiant is an officer.
- [ ] authorized to administer oaths in the state in which the affiant served the above summons. (use for out-of-state officer)
- [ ] authorized to administer oaths.  (use for court-appointed server)

*(Seal)*

_____
Signature and Title

| Service Fees | | |
|---|---|---|
| Summons | $_____ | |
| Non Est | $_____ | |
| Mileage | $_____ ( _____ miles @ $ _____ per mile) | |
| **Total** | $_____ | |

See the following page for directions to officer making return on service of summons.

OSCA (07-18) SM60 (SMOS) *For Court Use Only:* **Document ID# 20-SMOS-208**          1 of 2  **(2011-CC01079)**          Rules 54.06, 54.07, 54.14, 54.20;<br>506.500, 506.510 RSMo

Exhibit A - 170

Electronically Filed - St Charles Circuit Div - December 08, 2020 - 02:18 PM

### Directions to Officer Making Return on Service of Summons

A copy of the summons and a copy of the motion must be served on each defendant/respondent. If any defendant/respondent refuses to receive the copy of the summons and motion when offered, the return shall be prepared accordingly so as to show the offer of the officer to deliver the summons and motion and the defendant's/respondent's refusal to receive the same.

Service shall be made: (1) On Individual. On an individual, including an infant or incompetent person not having a legally appointed guardian, by delivering a copy of the summons and motion to the individual personally or by leaving a copy of the summons and motion at the individual's dwelling house or usual place of abode with some person of the family over 15 years of age who permanently resides with the defendant/respondent, or by delivering a copy of the summons and petition to an agent authorized by appointment or required by law to receive service of process; (2) On Guardian. On an infant or incompetent person who has a legally appointed guardian, by delivering a copy of the summons and motion to the guardian personally; (3) On Corporation, Partnership or Other Unincorporated Association. On a corporation, partnership or unincorporated association, by delivering a copy of the summons and motion to an officer, partner, or managing or general agent, or by leaving the copies at any business office of the defendant/respondent with the person having charge thereof or by delivering copies to its registered agent or to any other agent authorized by appointment or required by law to receive service of process; (4) On Public or Quasi-Public Corporation or Body. Upon a public, municipal, governmental or quasi-public corporation or body in the case of a county, to the mayor or city clerk or city attorney in the case of a city, to the chief executive officer in the case of any public, municipal, governmental, or quasi-public corporation or body or to any person otherwise lawfully so designated.

Service may be made by an officer or deputy authorized by law to serve process in civil actions within the state or territory where such service is made.

Service may be made in any state or territory of the United States. If served in a territory, substitute the word "territory" for the word "state."

The office making the service must swear an affidavit before the clerk, deputy clerk, or judge of the court of which the person is an officer or other person authorized to administer oaths. This affidavit must state the time, place, and manner of service, the official character of the affiant, and the affiant's authority to serve process in civil actions within the state or territory where service is made.

Service must be made less than 10 days nor more than 30 days from the date the defendant/respondent is to appear in court. The return should be made promptly, and in any event so that it will reach the Missouri court within 30 days after service.

OSCA (07-18) SM60 (SMOS) *For Court Use Only*: **Document ID# 20-SMOS-208**      2 of 2  **(2011-CC01079)**          Rules 54.06, 54.07, 54.14, 54.20; 506.500, 506.510 RSMo

Exhibit A - 171

Electronically Filed · St Charles Circuit Div · December 08, 2020 · 02:20 PM



**Office of the Sheriff**
**New Castle County, Delaware**

**Scott T. Phillips**
**Sheriff**

Louis L. Redding City/County Bldg.
800 N. French Street
Wilmington, DE 19801
Office: 302-395-8450, Fax: 302-395-8460

11/24/2020

### AFFIDAVIT OF SERVICE

**STATE OF DELAWARE)**
                                      ) SS
**NEW CASTLE COUNTY)**

**Court Case # 2011-CC01079**
**Sheriff # 20-006224**

### GUNAPT DEVELOPMENT, L.L.C
#### vs
### PEINE LAKES, L.P., ET AL

Ronald Fioravanti, being duly sworn, deposes that he/she is a Deputy Sheriff and avers that he/she served upon and left personally upon Registered Agent Representative **Amy McLaren** at **CORPORATION TRUST COMPANY 1209 N. ORANGE STREET WILMINGTON, DE 19801** on 11/20/2020 at 10:17 AM a copy of SUMMONS AND PETITION for **CENTERLINE CORPORATE PARTNERS XXVII LP**.

The Deponent further avers that he/she knew the person so served to be the same person as mentioned in the Out of State document.

Fees Paid: $75.00

_____
**Ronald Fioravanti, Deputy Sheriff**

**STATE OF DELAWARE)**
                                      ) SS
**NEW CASTLE COUNTY)**

   **BE IT REMEMBERED** that on 11/24/2020 personally came before me, the Subscriber, a Notary Public of the State of Delaware, Ronald Fioravanti, a Deputy Sheriff of New Castle County and State of Delaware and stated that the facts stated above are true and correct.

   **SWORN AND SUBSCRIBED** before me, the date and year aforesaid.

_____
**Notary Public**

ELIZABETH BURNS
MY COMMISSION
EXPIRES ON
08-09-2021
NOTARY PUBLIC
STATE OF DELAWARE

Exhibit A - 172

Electronically Filed - St Charles Circuit Div - December 08, 2020 - 02:20 PM



## IN THE 11TH JUDICIAL CIRCUIT, ST. CHARLES COUNTY, MISSOURI

| Judge or Division:<br>TED HOUSE | Case Number:  2011-CC01079 |
|---|---|
| Plaintiff/Petitioner:<br>GUNAPT DEVELOPMENT, L.L.C.<br><br>vs. | Plaintiff's/Petitioner's Attorney/Address:<br>JOHN JOSEPH GAZZOLI JR<br>7733 FORSYTH BLVD 4TH FL<br>ST. LOUIS, MO  63105 |
| Defendant/Respondent:<br>PEINE LAKES, L.P. | Court Address:<br>300 N 2nd STREET<br>SAINT CHARLES, MO  63301 |
| Nature of Suit:<br>CC Breach of Contract | (Date File Stamp) |

### Summons for Personal Service Outside the State of Missouri
### (Except Attachment Action)

The State of Missouri to:  **CENTERLINE CORPORATE PARTNERS XXVII LP**
**Alias:**

**SERVE: THE CORPORATION TRUST CO**
**CORPORATION TRUST CENTER**
**1209 ORANGE STREET**
**WILMINGTON, DE  19801**

*COURT SEAL OF*

*ST. CHARLES COUNTY*

You are summoned to appear before this court and to file your pleading to the petition, copy of which is attached, and to serve a copy of your pleading upon the attorney for the plaintiff/petitioner at the above address all within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to file your pleading, judgment by default will be taken against you for the relief demanded in this action.

_____11/13/2020_____          _____/S/ Cheryl Crowder___
Date                                          Clerk

Further Information:

### Officer's or Server's Affidavit of Service

I certify that:
1. I am authorized to serve process in civil actions within the state or territory where the above summons was served.
2. My official title is _____ of _____ County, _____ (state).
3. I have served the above summons by:  (check one)
   - ☐ delivering a copy of the summons and a copy of the petition to the defendant/respondent.
   - ☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the defendant/respondent with _____, a person of the defendant's/respondent's family over the age of 15 years who permanently resides with the defendant/respondent.
   - ☒ (for service on a corporation) delivering a copy of the summons and a copy of the petition to _Amy McLaren_ (name) _____ (title).
   - ☐ other:

Served at _1209 N. Orange St. Wilmington DE 19801_ (address)
in _New Castle_ County, _DE_ (state), on _11/20/20_ (date) at _10:17_ (time).

_R. Fioraventi_
Printed Name of Sheriff or Server                    Signature of Sheriff or Server

**Subscribed and sworn to** before me this _____ (day) _____ (month) _____ (year).

I am: (check one) ☐ the clerk of the court of which affiant is an officer.
☐ the judge of the court of which affiant is an officer.
☐ authorized to administer oaths in the state in which the affiant served the above summons. (use for out-of-state officer)
☐ authorized to administer oaths.  (use for court-appointed server)

*(Seal)*

_____
Signature and Title

| Service Fees | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Mileage | $_____ ( _____ miles @ $ _____ per mile) |
| **Total** | $_____ |

See the following page for directions to officer making return on service of summons.

OSCA (07-18) SM60 (SMOS) *For Court Use Only*: **Document ID# 20-SMOS-206**          1 of 2  **(2011-CC01079)**          Rules 54.06, 54.07, 54.14, 54.20;<br>506.500, 506.510 RSMo

Exhibit A - 173

Electronically Filed - St. Charles Circuit Div - December 08, 2020 - 02:20 PM

### Directions to Officer Making Return on Service of Summons

A copy of the summons and a copy of the motion must be served on each defendant/respondent. If any defendant/respondent refuses to receive the copy of the summons and motion when offered, the return shall be prepared accordingly so as to show the offer of the officer to deliver the summons and motion and the defendant's/respondent's refusal to receive the same.

Service shall be made: (1) On Individual. On an individual, including an infant or incompetent person not having a legally appointed guardian, by delivering a copy of the summons and motion to the individual personally or by leaving a copy of the summons and motion at the individual's dwelling house or usual place of abode with some person of the family over 15 years of age who permanently resides with the defendant/respondent, or by delivering a copy of the summons and petition to an agent authorized by appointment or required by law to receive service of process; (2) On Guardian. On an infant or incompetent person who has a legally appointed guardian, by delivering a copy of the summons and motion to the guardian personally; (3) On Corporation, Partnership or Other Unincorporated Association. On a corporation, partnership or unincorporated association, by delivering a copy of the summons and motion to an officer, partner, or managing or general agent, or by leaving the copies at any business office of the defendant/respondent with the person having charge thereof or by delivering copies to its registered agent or to any other agent authorized by appointment or required by law to receive service of process; (4) On Public or Quasi-Public Corporation or Body. Upon a public, municipal, governmental or quasi-public corporation or body in the case of a county, to the mayor or city clerk or city attorney in the case of a city, to the chief executive officer in the case of any public, municipal, governmental, or quasi-public corporation or body or to any person otherwise lawfully so designated.

Service may be made by an officer or deputy authorized by law to serve process in civil actions within the state or territory where such service is made.

Service may be made in any state or territory of the United States. If served in a territory, substitute the word "territory" for the word "state."

The office making the service must swear an affidavit before the clerk, deputy clerk, or judge of the court of which the person is an officer or other person authorized to administer oaths. This affidavit must state the time, place, and manner of service, the official character of the affiant, and the affiant's authority to serve process in civil actions within the state or territory where service is made.

Service must be made less than 10 days nor more than 30 days from the date the defendant/respondent is to appear in court. The return should be made promptly, and in any event so that it will reach the Missouri court within 30 days after service.

OSCA (07-18) SM60 (SMOS) *For Court Use Only*: **Document ID# 20-SMOS-206**      2  of  2  **(2011-CC01079)**      Rules 54.06, 54.07, 54.14, 54.20; 506.500, 506.510 RSMo

Exhibit A - 174

Electronically Filed - St Charles Circuit Div - December 08, 2020 - 02:23 PM



**Office of the Sheriff**
**New Castle County, Delaware**

**Scott T. Phillips**
**Sheriff**

Louis L. Redding City/County Bldg.
800 N. French Street
Wilmington, DE 19801
Office: 302-395-8450, Fax: 302-395-8460

11/24/2020

### AFFIDAVIT OF SERVICE

**STATE OF DELAWARE)**
                              ) SS
**NEW CASTLE COUNTY)**

**Court Case # 2011-CC01079**
**Sheriff # 20-006224**

#### GUNAPT DEVELOPMENT, L.L.C
#### vs
#### PEINE LAKES, L.P., ET AL

Ronald Fioravanti, being duly sworn, deposes that he/she is a Deputy Sheriff and avers that he/she served upon and left personally upon Registered Agent Representative **Amy McLaren** at **CORPORATION TRUST COMPANY 1209 N. ORANGE STREET WILMINGTON, DE 19801** on 11/20/2020 at 10:17 AM a copy of SUMMONS AND PETITION for **CENTERLINE AFFORDABLE HOUSING ADVISORS LLC**.

The Deponent further avers that he/she knew the person so served to be the same person as mentioned in the Out of State document.

Fees Paid:  $5.00

_____
**Ronald Fioravanti, Deputy Sheriff**

**STATE OF DELAWARE)**
                              ) SS
**NEW CASTLE COUNTY)**

        **BE IT REMEMBERED** that on 11/24/2020 personally came before me, the Subscriber, a Notary Public of the State of Delaware, Ronald Fioravanti, a Deputy Sheriff of New Castle County and State of Delaware and stated that the facts stated above are true and correct.

        **SWORN AND SUBSCRIBED** before me, the date and year aforesaid.

_____
**Notary Public**

Electronically Filed - St Charles Circuit Div - December 08, 2020 - 02:23 PM



## IN THE 11TH JUDICIAL CIRCUIT, ST. CHARLES COUNTY, MISSOURI

| Judge or Division:<br>TED HOUSE | Case Number:  2011-CC01079 |
|---|---|
| Plaintiff/Petitioner:<br>GUNAPT DEVELOPMENT, L.L.C.<br><br>vs. | Plaintiff's/Petitioner's Attorney/Address:<br>JOHN JOSEPH GAZZOLI JR<br>7733 FORSYTH BLVD 4TH FL<br>ST. LOUIS, MO  63105 |
| Defendant/Respondent:<br>PEINE LAKES, L.P. | Court Address:<br>300 N 2nd STREET<br>SAINT CHARLES, MO  63301 |
| Nature of Suit:<br>CC Breach of Contract | (Date File Stamp) |

### Summons for Personal Service Outside the State of Missouri
#### (Except Attachment Action)

| The State of Missouri to:   **CENTERLINE AFFORDABLE HOUSING ADVISORS LLC** |
|---|

Alias:
**SERVE: THE CORPORATION TRUST CO**
**CORPORATION TRUST CENTER**
**1209 ORANGE STREET**
**WILMINGTON, DE 19801**

*COURT SEAL OF*

You are summoned to appear before this court and to file your pleading to the petition, copy of which is attached, and to serve a copy of your pleading upon the attorney for the plaintiff/petitioner at the above address all within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to file your pleading, judgment by default will be taken against you for the relief demanded in this action.

*ST. CHARLES COUNTY*

_____11/13/2020_____          _____/S/ Cheryl Crowder____
Date                                                   Clerk

Further Information:

### Officer's or Server's Affidavit of Service

I certify that:
1. I am authorized to serve process in civil actions within the state or territory where the above summons was served.
2. My official title is _____ of _____ County, _____ (state).
3. I have served the above summons by:  (check one)
   - [ ] delivering a copy of the summons and a copy of the petition to the defendant/respondent.
   - [ ] leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the defendant/respondent with _____, a person of the defendant's/respondent's family over the age of 15 years who permanently resides with the defendant/respondent.
   - [x] (for service on a corporation) delivering a copy of the summons and a copy of the petition to *Amy McLaren* (name) _____ (title).
   - [ ] other: _____.

Served at *1209 N. Orange St. Wilmington DE 19801* (address)
in *New Castle* County, *DE* (state), on *11/20/20* (date) at *10:17* (time).

*R. Fioravanti*
Printed Name of Sheriff or Server                           Signature of Sheriff or Server

**Subscribed and sworn to** before me this _____ (day) _____ (month) _____ (year).
I am: (check one)
- [ ] the clerk of the court of which affiant is an officer.
- [ ] the judge of the court of which affiant is an officer.
- [ ] authorized to administer oaths in the state in which the affiant served the above summons. (use for out-of-state officer)
- [ ] authorized to administer oaths.  (use for court-appointed server)

*(Seal)*

_____
Signature and Title

| **Service Fees** | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Mileage | $_____  (_____ miles @ $_____ per mile) |
| **Total** | $_____ |

See the following page for directions to officer making return on service of summons.

OSCA (07-18) SM60 (SMOS) *For Court Use Only*: Document ID# 20-SMOS-207          1 of 2  **(2011-CC01079)**          Rules 54.06, 54.07, 54.14, 54.20;<br>506.500, 506.510 RSMo

Exhibit A - 176

Electronically Filed - St Charles Circuit Div - December 08, 2020 - 02:23 PM

### Directions to Officer Making Return on Service of Summons

A copy of the summons and a copy of the motion must be served on each defendant/respondent. If any defendant/respondent refuses to receive the copy of the summons and motion when offered, the return shall be prepared accordingly so as to show the offer of the officer to deliver the summons and motion and the defendant's/respondent's refusal to receive the same.

Service shall be made: (1) On Individual. On an individual, including an infant or incompetent person not having a legally appointed guardian, by delivering a copy of the summons and motion to the individual personally or by leaving a copy of the summons and motion at the individual's dwelling house or usual place of abode with some person of the family over 15 years of age who permanently resides with the defendant/respondent, or by delivering a copy of the summons and petition to an agent authorized by appointment or required by law to receive service of process; (2) On Guardian. On an infant or incompetent person who has a legally appointed guardian, by delivering a copy of the summons and motion to the guardian personally; (3) On Corporation, Partnership or Other Unincorporated Association. On a corporation, partnership or unincorporated association, by delivering a copy of the summons and motion to an officer, partner, or managing or general agent, or by leaving the copies at any business office of the defendant/respondent with the person having charge thereof or by delivering copies to its registered agent or to any other agent authorized by appointment or required by law to receive service of process; (4) On Public or Quasi-Public Corporation or Body. Upon a public, municipal, governmental or quasi-public corporation or body in the case of a county, to the mayor or city clerk or city attorney in the case of a city, to the chief executive officer in the case of any public, municipal, governmental, or quasi-public corporation or body or to any person otherwise lawfully so designated.

Service may be made by an officer or deputy authorized by law to serve process in civil actions within the state or territory where such service is made.

Service may be made in any state or territory of the United States. If served in a territory, substitute the word "territory" for the word "state."

The office making the service must swear an affidavit before the clerk, deputy clerk, or judge of the court of which the person is an officer or other person authorized to administer oaths. This affidavit must state the time, place, and manner of service, the official character of the affiant, and the affiant's authority to serve process in civil actions within the state or territory where service is made.

Service must be made less than 10 days nor more than 30 days from the date the defendant/respondent is to appear in court. The return should be made promptly, and in any event so that it will reach the Missouri court within 30 days after service.

OSCA (07-18) SM60 (SMOS) *For Court Use Only*: **Document ID# 20-SMOS-207**      2 of 2  **(2011-CC01079)**           Rules 54.06, 54.07, 54.14, 54.20;
506.500, 506.510 RSMo

Exhibit A - 177