UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| GUNAPT DEVELOPMENT, L.L.C., *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. 4:20-cv-1778-MTS |
| ) | |
| PEINE LAKES, L.P., *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendants' Motion to Dismiss, Doc. [52], Plaintiffs' Second Amended Complaint, Doc. [48], pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the Court denies Defendants' Motion.

**I.    BACKGROUND**[1]

Plaintiffs Gunapt Development, LLC ("Gunapt") and Gunapt I, LLC ("Gunapt I") (collectively, Plaintiffs) filed this lawsuit asserting claims against Defendants relating to the development of a construction project and the subsequent sale of that project.

In January 2006, Defendant Peine Lakes, L.P. (the "Partnership") was formed for the purpose of constructing and developing a multifamily apartment complex called the Estates of Peine Lakes in St. Charles County (the "Project"). The Partnership was governed by—among other documents—the Second Amended and Restated Agreement of Limited Partnership (the "Partnership Agreement"). Doc. [48-1]. The Partnership Agreement named Plaintiff Gunapt as Developer of the Project, as defined in the Partnership Agreement, responsible for overseeing all

---

[1] The Court draws these facts from Plaintiffs' allegations in the Second Amended Complaint, Doc. [48]. In so doing, the Court must liberally construe the complaint in favor of Plaintiffs and must grant all reasonable inferences in their favor. *Huggins v. FedEx Ground Package Sys., Inc.*, 592 F.3d 853, 862 (8th Cir. 2010); *Lustgraaf v. Behrens*, 619 F.3d 867, 872–73 (8th Cir. 2010); *Pederson v. Frost*, 951 F.3d 977, 979 (8th Cir. 2020).

1

aspects of the Project's construction and development.  Gunapt would receive a Development Fee for its services.  Gunapt's rights and obligations as Developer were set forth in the Amended and Restated Development Agreement (the "Development Agreement").  Doc. [48-2].  Gunapt's affiliate, Gunapt I, lent the Project $1,000,000 for the purpose of financing a portion of the development costs (the "Loan") pursuant to a Partnership Loan Agreement and Partnership Loan Promissory Note (collectively, the "Loan Agreements").  Docs. [48-3], [48-4].  When the Partnership was formed, Defendant Gunapt Peine GP, L.L.C. ("Gunapt Peine")—an affiliate of Plaintiffs—was the General Partner of the Partnership.  Under certain circumstances, as set forth in the Partnership Agreement, Loan Agreements, and Collateral Assignment of General Partner Interest and Deferred Development Fee (the "Collateral Agreement"), Doc. [56], the Special Limited Partner of the Partnership (here, Defendant Related Corporate XXVI SLP, LLC ("Related")) could remove the General Partner.  On January 13, 2006, the Partnership Agreement, Development Agreement, Loan Agreements, and Collateral Agreement were all executed.

In 2010, Plaintiffs allege they entered into an agreement whereby Gunapt Peine would agree to transfer its General Partnership interest in the Project to an affiliate of Related (the "2010 Agreement").  As a condition of the transfer of the General Partnership interest, the 2010 Agreement specifically stated that Gunapt's right to the Development Fee would not be assumed or transferred and that the Loan would remain in place and payable to Gunapt I by the Partnership according to the Loan Agreements.[2]  Doc. [48] ¶ 15.  Defendant 2010 Peine Road LLC ("2010 Peine") was formed to assume their role as the General Partner.  On September 22, 2010, Related removed Gunapt Peine as General Partner of the Partnership and made 2010 Peine General Partner, pursuant to the Amendment to Second Amended and Restated Agreement of Limited Partnership

---

[2] According to Plaintiffs, an essential element of the 2010 Agreement was that *only* the General Partnership interest in the Project would be assumed by or transferred to 2010 Peine or any other affiliate of Related.

2

("2010 Amendment"). Doc. [48-6]. Gunapt continued to perform and ultimately performed all of its obligations as Developer of the Project, at which point Gunapt earned the Development Fee. Doc. [48] ¶ 18.

Approximately four years later, in March 2018, Defendants served "notice" on Plaintiffs to forfeit the Development Fee and right to repayment of the Loan. Doc. [48-7]. Six months later, Defendants announced the sale of the Project for $19,360,000. At the time of the sale, in addition to proceeds from the sale, the Partnership had $739,099.00 in unrestricted cash on hand.[3] To date, Gunapt has not been paid its Development Fee and accrued interest, and Gunapt I has not been paid the principal and interest on the Loan. Plaintiffs assert the sale of the Project was in the works before the 2018 "notice" to Plaintiffs, in an effort to prevent Fee and Loan payment to Plaintiffs so that Defendants could steal the monies for themselves.[4] Doc. [48] ¶¶ 20, 23–25, 72–76.

Plaintiffs filed this action asserting seven Counts against five Defendants for: breach of contract—the Development Fee (Count I); breach of contract—the Loan (Count II); accounting (Count III); unjust enrichment (Count IV); constructive trust (Count V); tortious interference (Count VI); and civil conspiracy (Count VII). Doc. [48]. Defendants now move to dismiss the Complaint in its entirety under Fed. R. Civ. P. 12(b)(6), arguing Plaintiffs failed to state a claim. Doc. [52].

**II.   LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim for

---

[3] Plaintiffs allege that in anticipation of the future sale of the Project, Peine Lakes and 2010 Peine failed and refused to use the unrestricted cash to pay down the Development Fee in 2016 and 2017, pursuant to Section 9.2A of the Partnership Agreement. By doing so, as Plaintiffs allege, Peine Lakes and 2010 Peine kept the affiliates' advances at high levels to prevent Gunapt from receiving the Development Fee and interest at the time of sale of the Project.

[4] As General Partner of the Partnership, 2010 Peine was obligated to distribute the sale proceeds and cash on hand pursuant to Section 9.2B of the Partnership Agreement, which would include distribution of the Development Fee and accrued interest thereon and to pay the amount owed under the Loan.

"failure to state a claim upon which relief can be granted." The purpose of such a motion is to test the legal sufficiency of a complaint. When considering a Rule 12(b)(6) motion, the Court "must liberally construe a complaint in favor of the plaintiff," *Huggins v. FedEx Ground Package System, Inc.*, 592 F.3d 853, 862 (8th Cir. 2010), and must grant all reasonable inferences in favor of the nonmoving party, *Lustgraaf v. Behrens*, 619 F.3d 867, 872–73 (8th Cir. 2010). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also* Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"). The Court "need not accept as true plaintiff's conclusory allegations or legal conclusions drawn from the facts." *Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019). "Where, as here, the claims relate to a written contract that is part of the record in the case, [the Court] considers the language of the contract when reviewing the sufficiency of the complaint." *Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014) (quoting *M.M. Silta, Inc. v. Cleveland Cliffs, Inc.*, 616 F.3d 872, 876 (8th Cir. 2010)). The Court does not decide whether the plaintiff will ultimately prevail, but rather whether the plaintiff is entitled to present evidence in support of the claim. *See Twombly*, 550 U.S. at 556.

### III.   DISCUSSION

#### A.   **Breach of Contract** (Counts I–II)

Plaintiff Gunapt asserts a breach of contract claim (Count I) against Peine Lakes and 2010 Peine for failure to pay the Development Fee and accrued interest. Plaintiff Gunapt I asserts a breach of contract claim (Count II) against Peine Lakes and 2010 Peine for failure to pay the Loan and accrued interest. While the Court has several extensive agreements before it, the Court does

4

not have all necessary agreements. *Stahl v. U.S. Dep't of Agric.*, 327 F.3d 697, 700 (8th Cir. 2003) ("In a case involving a contract, the court may examine the contract documents in deciding a motion to dismiss."); *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017) (explaining the court may examine documents when "contract documents not attached to the complaint refute a breach-of-contract claim"). Further, the surrounding circumstances of the alleged breach present fact-intensive questions inappropriate for resolution at this early stage of litigation. Based on the pleadings, exhibits, and briefings, the Court finds Plaintiff plausibly stated a claim that Gunapt has a right or interest in the Development Fee and that Gunapt I has a right to repayment of the Loan.[5]

### B. **Accounting** (Count III)

Plaintiffs assert a claim for accounting against all Defendants, which rests on the 2018 sale of the Project and subsequent distribution of the proceeds. Under Missouri law, a claim for accounting requires "a fiduciary or trust relationship between the parties." *Eckel v. Eckel*, 540 S.W.3d 476, 488 (Mo. Ct. App. 2018); *Shaner v. Sys. Integrators, Inc.*, 63 S.W.3d 674, 677 (Mo. Ct. App. 2001) (explaining "the existence of a fiduciary relationship is the most critical element" in an equitable accounting claim). Plaintiffs properly alleged a fiduciary or trust relationship that the Court can infer from the pleadings and the parties' agreements.

According to Plaintiffs, Defendants had control of unrestricted cash and sale proceeds and were entrusted with the duty to distribute the cash and proceeds to Gunapt and Gunapt I as agreed to by the parties (e.g.: that Plaintiffs were given superiority in the distribution process).[6] Whether

---

[5] Regarding Count I, Gunapt stated a claim relating to whether Gunapt was a party to the Partnership Agreement considering Gunapt's signature in the Partnership Agreement as well as the several other agreements executed on the same day. Regarding Count II, Gunapt I stated a claim relating to 2010 Peine's liability, if any, for failing to remit payment.

[6] Of course, if Plaintiffs were not entitled to the Development Fee or Loan repayment (as this is a disputed question of fact), Plaintiffs' accounting claim fails too because there would no longer be a relationship between the parties.

the sale proceeds provision in the Partnership Agreement created a debt owed to Plaintiffs or whether it established that the sale proceeds automatically became the property of Plaintiffs is a close call, which must be resolved in favor of Plaintiffs. Overall, important unanswered questions remain as to the nature of the relationship of Plaintiffs and Defendants, including whether the parties were more than an ordinary lender-borrower relationship. *See Shaner*, 63 S.W.3d at 677–79 (finding creditor-debtor relationship insufficient to establish requisite fiduciary relationship to support an equitable action for an accounting). Even if Gunapt will not ultimately prevail, the Court finds Plaintiffs are entitled to discover evidence in support of their claims. *See Twombly*, 550 U.S. at 556.

    C. **Unjust Enrichment** (Count IV)

Gunapt filed an unjust enrichment claim against all Defendants on the basis that Gunapt provided services to Defendants as Developer of the Project with the expectation Gunapt would be paid the Development Fee. As a preliminary matter, Gunapt's claim for unjust enrichment is asserted in the *alternative* to its claim for breach of contract. *Hiscox Ins. Co. Inc. v. Warden Grier, LLP*, 474 F. Supp. 3d 1004, 1009 (W.D. Mo. 2020) (applying Missouri law and denying motion to dismiss the plaintiff's alternative claims for breach of contract and unjust enrichment); *see also HHCS Pharmacy, Inc. v. Express Scripts, Inc.*, 4:16-cv-1169-CEJ, 2016 WL 7324968, at *3 (E.D. Mo. Dec. 16, 2016) (allowing alternative claims of breach of contract and unjust enrichment to remain at motion to dismiss stage under Missouri law). The Federal Rules of Civil Procedure permit pleading in the alternative. *See* Fed. R. Civ. P. 8(d).

Indeed, Defendants are correct that Gunapt cannot recover under an unjust enrichment theory under Missouri law when it "has entered into an express contract for the very subject matter for which [it] seeks to recover." *Lowe v. Hill*, 430 S.W.3d 346, 349 (Mo. Ct. App. 2014); *Steelhead*

*Townhomes, L.L.C. v. Clearwater 2008 Note Program, LLC*, 537 S.W.3d 855, 860 (Mo. Ct. App. 2017) ("[I]f the plaintiff has entered into an express contract for the very subject matter for which he seeks recovery, unjust enrichment does not apply, for the plaintiff's rights are limited to the express terms of the contract."). But, the fact that Gunapt cannot simultaneously recover damages for both breach of an express contract and unjust enrichment does not preclude it from pleading both theories in its Complaint. Truly, a rule allowing for alternative pleading would be meaningless if the assumption of facts in favor of a plaintiff at the motion to dismiss stage of a lawsuit could foreclose mutually exclusive theories.

Moreover, what express contract, or contracts, do "limit" Gunapt is contested. To be sure, Defendants allocate majority of the briefing denying that Gunapt is a party to several agreements (*e.g.* Partnership Agreement) and disavowing the existence of other agreements (*e.g.* 2010 Agreement). Defendants cannot have it both ways. Defendants' arguments, like the arguments in Section A, ultimately rest on a dispute of fact—whether the 2010 Agreement validly exists, and if so, what does it say. As an example, although the Collateral Agreement governs the very subject matter in which Gunapt seeks to recover, which would preclude unjust enrichment, the facts alleged by Plaintiff relating to the 2010 Agreement plausibly give rise to the inference that Defendants took on obligations outside of the plain terms of the express contracts. *Hiscox*, 474 F. Supp. 3d at 1010 (distinguishing *Lowe*). But, whether the 2010 Agreement is also an express contract, or even exists, is not appropriate to determine on a motion to dismiss.

D. **Constructive Trust** (Count V)

Plaintiffs assert a claim for constructive trust against all Defendants. "A constructive trust is an equitable device employed by courts of equity to remedy a situation where a party has been wrongfully deprived of some right, title or interest in property as a result of fraud or violation of

7

confidence or faith reposed in another." *Birkenmeier v. Keller Biomedical, LLC*, 312 S.W.3d 380, 392 (Mo. Ct. App. 2010).  According to the Complaint, Plaintiffs have a right to monies that Defendants hold and have wrongfully withheld.[7] *Ralls Cty. Mut. Ins. Co. v. RCS Bank*, 314 S.W.3d 792, 795 (Mo. Ct. App. 2010) (defining constructive trust "as the device used by chancery to compel one who unfairly holds a property interest to convey that interest to another to whom it justly belongs" (quoting *Brown v. Brown,* 152 S.W.3d 911, 916 (Mo. App. Ct. 2005))).  Thus, Plaintiffs have pleaded sufficient facts that Defendants unjustly violated Plaintiffs' confidence in faith to deprive them of the Development Fee and repayment of the Loan.

Further, Plaintiffs identified the funds to place into a constructive trust with the required specificity—the Development Fee and accrued interest amount from the sale proceeds, in the approximate amount of $4,500,000, and the principal and interest on the Loan.  *Ralls*, 314 S.W.3d at 795 (explaining the "very essence" of the remedy of a constructive trust is the "identification of specific property or funds as the res upon which the trust may be attached" (quoting *Blue Cross Health Services, Inc. v. Sauer,* 800 S.W.2d 72, 75 (Mo. Ct. App. 1990))).

E.  **Tortious Interference** (Count VI)

Gunapt filed a tortious interference claim against Defendants Related, 2010 Peine, Centerline Corporate Partners XXVI LP ("Centerline Corporate"), and Centerline Affordable Housing Advisors LLC ("Centerline Affordable").  According to the Complaint, three contracts are at issue here: the Development Agreement, the Partnership Agreement, and the 2010 Agreement.  A cause of action for tortious interference is premised on the tortious behavior of a defendant *not* a party to the contract.  *See, e.g.*, *Jurisprudence Wireless Commc'ns, Inc. v. CyberTel*

---

[7] Defendants argue that Plaintiffs had no property interest of which they could be deprived.  But, as previously explained, Plaintiffs claimed that they were owed the Development Fee and Loan, and Defendants' denial of these rights is a question of fact that is resolved in favor of Plaintiffs.

8

*Corp.*, 26 S.W.3d 300, 302 (Mo. Ct. App. 2000). Thus, Gunapt's claim will fail if all four Defendants are parties to each of the three contracts.

As to the Partnership Agreement, Centerline Corporate and Centerline Affordable were *not* parties to the contract.[8] As to the Development Agreement, Centerline Corporate and Centerline Affordable were *not* parties to the contract, and there is a dispute whether 2010 Peine was later made part of this agreement. As to the 2010 Agreement, Plaintiffs pleaded that Defendants entered into the 2010 Agreement and "thereafter, 2010 Peine was formed." Doc. [48] ¶ 14. Thus, it appears that 2010 Peine was *not*, and could not be, a party to the 2010 Agreement. Thus, at this stage in the proceedings, Gunapt's tortious interference claim based on all three agreements withstands Defendants' motion to dismiss.[9]

    F.  **Civil Conspiracy** (Count VII)

For reasons already discussed, Plaintiffs have stated valid claims for relief as to Defendants underlying conduct; thus, the Court will not dismiss Plaintiffs' conspiracy claim or undergo a separate analysis. *Cf. Envirotech, Inc. v. Thomas*, 259 S.W.3d 577, 586 (Mo. Ct. App. 2008) ("If the underlying wrongful act alleged as part of a civil conspiracy fails to state a cause of action, the civil conspiracy claim fails as well.").

## Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss is denied.

Accordingly,

---

[8] As the Court previously noted, Gunapt stated a plausible claim that it was a party to the Partnership Agreement; thus, this answer will necessarily affect the outcome of its tortious interference claim based on the Partnership Agreement.

[9] Additionally, a dispute remains regarding whether Defendants had a contractual right to assign the Development Fee. *See, e.g.*, *Baldwin Properties, Inc. v. Sharp*, 949 S.W.2d 952, 956 (Mo. Ct. App. 1997) (noting that among the elements of tortious interference, a plaintiff must claim and prove "absence of justification"); *Stehno v. Sprint Spectrum, L.P.*, 186 S.W.3d 247, 252 (Mo. banc 2006) ("No liability arises for interfering . . . if the action complained of was an act which the defendant had a definite legal right to do without any qualification.").

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss, Doc. [52], is **DENIED**.

Dated this 29th of April, 2022.

_____
MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE